James E. Cecchi
Lindsey H. Taylor
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
(212) 584-0700

Paul M. Weiss
Jeffrey A. Leon
Julie D. Miller
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dennis Lynch, on Behalf of Himself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Tropicana Products, Inc., a division of PepsiCo, Inc., <br><br> Defendant. | Civil Action No. <br><br><br> **COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff, by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.  This  class action lawsuit asserts that the leading producer and marketer of branded fruit juices, Tropicana Products, Inc., a division of PepsiCo, Inc., ("Tropicana") has been falsely claiming that its  heavily processed, designed and modified "not-from-concentrate" orange juice ("NFC juice") is 100% pure and natural orange juice.   Despite Tropicana's "100% pure and natural" claim, Tropicana's NFC juice is heavily processed and flavored – it is not 100% pure and natural.

2.  Mass marketed orange juice such as Tropicana's cannot be fresh squeezed as fresh squeezed orange juice is unstable and has a short shelf-life.  Mingua Jia, Q. Zhang, H., Min, D., *Pulsed Electric Field Processing Effects on Flavor Compounds and Microorganisms of Orange Juice*, 65 Food Chemistry 445-51 (1999).  Industrial processing and storage improves shelf life, but adversely affects the flavor, aroma, and nutritional qualities of orange juice.  Jordan, M. J., Goodner, K. L., Laencina, J. *Deaeration and Pasteurization Effects on the Orange Juice Aromatic Fraction*, 36 Lebensm-Wiss. U. Technol. 391-96 (2003).

3. Nonetheless,  to  extend  shelf-life,  Tropicana  NFC  juice  undergoes extensive processing which includes the addition of aromas and flavors to its NFC juice.  This extensive processing changes the essential nature of the NFC juice sold by Tropicana.   It is not natural orange juice.   It is instead a product that is scientifically engineered in laboratories, not nature, which explains its shelf-life of more than two months.

4. Tropicana is well aware that consumers want and demand natural products, and it seeks to take advantage of that consumer preference by deceptively promoting and marketing its NFC juice as "100% pure and natural" even though it has been pasteurized, deareated, stripped of its flavor and aroma, stored for long periods of time before it ever reaches consumers, and then flavored, before it is packaged directly into the carton. Some of the non-natural aspects of these processes include:

a. the removal of naturally present air from the intercellular spaces of the juice through the deareation process;

b. the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;

c. long term storage of dearated and pasteurized juices for a year or longer;

d. the addition of chemically engineered "flavor packs" to mimic the flavor that natural orange juice has, which because it is natural requires no flavor pack; and

e. the mixing of numerous types of oranges from Florida and Brazil that are then flavored to cover up the varietal and geographic differences.

5. Tropicana makes no mention of its use of or reliance upon added flavoring and aroma or the extent to which its processing alters the essential nature of the juice in its NFC juice advertisements or on its label.  Instead, Tropicana includes on its NFC juice packaging an illustration of an orange with a straw stuck into it,

which is meant to convey the message that its NFC juice is fresh from the orange. This reinforces the false message of the phrase "100% Pure & Natural Orange Juice" in large, prominent type.

6.  Tropicana's NFC juice costs more than the juice sold by its rivals that is made from reconstituted juice made from concentrate.  NFC juice is not fresher than reconstituted juice made from concentrate.

7.  Tropicana's ability to extract a premium for its product is a testament to the success of its deceptive marketing campaign.  Tropicana's market share is typically about 40 percent of all the orange juice sold each year.  Tropicana generated worldwide retail sales exceeding $5 billion in 2010 alone.

8.  Plaintiff seeks relief in this action individually, and as a class action on behalf of all purchasers of Tropicana NFC juice labeled and marketed as being "100% pure and natural orange juice", for unjust enrichment, breach of express warranty, fraudulent concealment, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 58:8-1, *et seq*.

## THE PARTIES

9.  Plaintiff Dennis Lynch is a citizen of the State of New Jersey, residing in Oakland, New Jersey.  Plaintiff purchased Tropicana NFC juice, which was represented as being "100% pure and natural orange juice" from a retail store in Oakland, New Jersey.  Plaintiff saw and read Tropicana's misrepresentations that Tropicana NFC juice is "100% pure and natural orange juice," and relied on such misrepresentations in deciding to purchase Tropicana NFC juice.  Plaintiff would

not have purchased Tropicana NFC juice had he known that it was extensively processed and flavored.

10. Defendant Tropicana is a division of PepsiCo, Inc., a Delaware corporation with its principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577.  Tropicana manufactures, markets and sells NFC juice nationwide.

## JURISDICTION AND VENUE

11. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)  because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class members is a citizen of a state different from Defendant.

12. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.  Plaintiff Dennis Lynch, a citizen of New Jersey, purchased Tropicana NFC juice from a retail store in this District, and Defendant Tropicana distributed, advertised and sold NFC juice, which is the subject of the present complaint, in this District.

## FACTS COMMON TO ALL CLAIMS

**A.    Tropicana NFC Juice Is Not Pure, Fresh or Natural**

13. Tropicana realizes that consumers are increasingly aware of the relation between health and diet and that consumers are demanding fresh and natural products that are minimally processed.

14. Tropicana also recognizes the growing interest in premium quality juices, with very mild pasteurization, distributed refrigerated, and with a limited shelf-life. Vervoort, L., Van der Plancken, I., Grauwet, T., Timmermans, R., Mastwijk, H., Matser, A., Hendrickx, M., and Van Loey, A., *Comparing Equivalent Thermal, High Pressure and Pulsed Electric Field Processes for Mild Pasteurization of Orange Juice Part II: Impact on specific chemical and biochemical quality parameters*, 12 Innovate Food Science and Emerging Technologies  466-477 (2011).

15. Throughout Tropicana's marketing materials, advertising, website, labeling, packaging and point of sale materials, Tropicana represents that its NFC juice is "100% pure and natural orange juice."

16. The label for Tropicana NFC juice prominently features in large type "100% pure and natural orange juice."

17. Tropicana also maintains a website, YouTube, Facebook, and Twitter sites for the purposes of marketing Tropicana NFC juice and where it touts the purity, freshness, and health benefits of its NFC juice.

18. Tropicana recognizes that consumers are increasingly concerned about the types of foods they put into their bodies and the role of good nutrition and overall health and well-being.

19. While Tropicana claims that "making Tropicana orange juice is truly an art" it is far more a science.

20. Tropicana NFC juice is not 100% pure and natural orange juice, but rather is both extensively processed and flavored.

6

**B.**   **Tropicana NFC Juice Undergoes Deaeration**

21. "Air is naturally present in the intercellular spaces of fruits. During fruit maceration, homogenization, and juice extraction cells are crushed, the cell wall is disrupted and air is mixed in to the juice.  Air can be present as dissolved gas in solution or associated with the pulp particles, for example, in orange juice.  During cell disruption, metabolites and enzymes that are normally compartmentalized are mixed, producing chemical and biochemical reactions.  Oxygen in air, present in the spaces between the juice vesicles, and from the surroundings, saturates the juice producing oxidation reactions that often result in browning, changes in aroma, and loss of nutritional value.  These reactions are exacerbated by the increase in temperature during pasteurization and reduce the overall quality of the product during storage."  Garcia-Torres, R., Ponagandla, N. R., Rouseff, R. L., Goodrich-Schneider, R. M., and Reyes-De-Corcuera, J. I., *Effects of Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8 Comprehensive Rev. in Food Sci. & Food Safety, 409 (2009).

22. Because oxygen reduces the quality of stored orange juice, Tropicana uses deaeration to remove dissolved oxygen from the juice.

23. Tropicana deliberately fails to mention that after being squeezed from oranges, its NFC juice undergoes deaeration, which strips the juice of oxygen, so it doesn't oxidize.

24. Importantly, when orange juice is stripped of oxygen it is also stripped of important volatile compounds that provide flavor and aroma.   Jordan, M.J.,

Goodner, K.L., Laencina, J., *Deaeration and Pasteurization Effects on the Orange Juice Aromatic Fraction*, 35 Lebensmittel Wissenschaft und Technologie, 391-396 (2003).

25. To ensure a high elimination of dissolved oxygen, Tropicana preheats its NFC juice before deaeration.  Heating orange juice further alters its flavor and reduces its aromatic quality.

C.   **Tropicana NFC Juice Is Pasteurized and Stored For Up To One Year**

26. Tropicana NFC juice is also pasteurized to improve the shelf-life, but this also alters the delicate flavor and reduces the aromatic quality of the juice.

27. Pasteurization, a form of thermal processing, reduces, inactivates, or eliminates enzyme and microbial activity in orange juice to extend its shelf-life, but also further reduces aroma and flavor qualities, and produces undesirable off-flavor and off-odor compounds.

28. Pasteurization profoundly effects aroma composition and can create off-flavors or their precursors from Maillard, Strecker, and acid catalyzed hydration reactions.  *See* Perez-Cacho, P. R. and Rouseff, R., *Processing and Storage Effects on Orange Juice Aroma: A Review*, 56 J. Agric. Food Chem., 9785-9796 (2008).

29. Finally, aroma and flavor volatiles are further altered by storage.  In fact, increased storage time leads to a decrease in sweet odor, strength of the orange odor, sweet flavor, sour flavor, and orange aftertaste, and increases off-flavors and off-odors.  *See* Baxter, I. A., Easton, K, Schneebeli, K., Whitfield, F., *High*

*PressureProcessing of Australian Navel Orange Juices: Sensory Analysis and Volatile Flavor Profiling*, 6 Innovative Food Sci. & Emerging Tech., 372-387 (2005).

30. Tropicana advertises that its NFC juice is squeezed from fresh oranges, again pushing the freshness of the product, yet fails to disclose to consumers that its product may be made from orange juice that has been pasteurized and stored for as long as one year.

31. Tropicana understands that: pasteurization changes physical and chemical properties of orange juice; heat drives off volatiles altering the original flavor of the fresh orange juice; and increased storage time and temperature conditions of storage can cause orange juice to deteriorate in taste and nutritional value.

### D.    Tropicana Adds Aroma And Flavor To Its NFC Juice

32. The mixture of volatile compounds with aroma activity is responsible for the characteristic aroma of orange juice.  Garcia-Torres, R.., Ponagandla, N. R., Rouseff, R. L., Goodrich-Schneider, R. M., and Reyes-De-Corcuera, J. I., *Effects of Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8 Comprehensive Reviews in Food Sci. & Food Safety, 416 (2009).

33. Freshly squeezed orange juice tastes fresh naturally; however, after the volatiles are stripped from the orange juice and it is processed thermally the remaining liquid is essentially sugary, orange liquid that lacks the flavor and aroma of orange juice.

34. Without the addition of flavoring and aroma, Tropicana's NFC juice would be an unpleasant, sugary orange liquid that would not only be unappealing, but nearly undrinkable.

35. Tropicana adds aroma and flavoring to its NFC juice – the addition of which serves a technical function– to provide its processed orange juice an aromatic and flavor profile closer to fresh juice and to mask the affects of processing and storage.  The resulting product does not taste like fresh squeezed orange juice, but rather tastes like Tropicana.

36. Tropicana adds aroma and flavoring, referred to by some in the industry as flavor packs, designed by chemists and/or flavorists from processed orange oils and essence.

37. Flavor packs are unnatural and are products of science.

38. Flavor packs, not the grower in the grove or the fruit itself, give Tropicana NFC juice its distinctive taste.  Thus, the distinctive taste of Tropicana is a product of science (*i.e.*, flavor packs), not the fruit.

39. Flavor packs, which are made from processed orange oil and essence, are not "processing aids" or "incidental additives" as those terms are defined by the United States Food and Drug Administration because they are added in significant levels and serve a technical function.

40. Flavorists design the flavor packs to emphasis and highlight certain aromas and flavors associated with orange juice by fractionating orange oil and essence into individual components, reformulating them, and blending them in

varying mixtures.  The aroma and flavoring added to the NFC juice bears little resemblance to the natural orange oil and essence that leaves the juice during deaeration or that is altered during pasteurization or storage.

41. Tropicana also uses flavor packs to improve the flavor and aroma of lower quality juice.

42. Ethyl butyrate is one of the chemicals found in high concentrations in the flavor packs added to Tropicana's NFC juice sold in North American markets.

43. The flavor packs used for Tropicana NFC juice sold in other markets use less ethyl butyrate and highlight other fragrances and flavors that are preferred in those markets, further revealing that NFC juice is not pure and natural.

44. Tropicana also adds orange essence to its NFC juice including water-soluble orange essence, which dilutes the NFC juice.

45. Tropicana adds water-soluble orange essence because it provides the "freshest" characteristics to the NFC juice.

46. Regardless of the time of year, Tropicana orange juice tastes the same even though it is made from different varieties and different blends of oranges that ripen at different times of the year because Tropicana uses added flavoring and aroma to maintain product consistency to address variations in the quality, variety, source, and ratios of oranges used (Valencia, Hamlin or Pera, for example).

47. Due to the use of flavor packs, the flavor and aroma of Tropicana's NFC juice is consistent all year long despite natural variations in the quality, variety or source of the orange juice.

48. By adding flavoring and aroma, Tropicana is able to make its NFC juice taste more like "fresh" Valencia (the most prized orange grown in Florida) even while it increases the ratio of Hamlin (the most heavily planted orange grown in Florida) or Pera (the most heavily planted orange grown in Brazil) included in the juice.

49. Tropicana fails to mention the use of flavor packs or that it is the addition of flavor packs to the NFC juice that makes it taste "fresh" and mask the effects of processing and storage.

50. Tropicana claims falsely that the "secret is right there on every carton or bottle of Tropicana Pure Premium: the juice is 100% pure and natural orange juice" while deliberately omitting any reference to Tropicana's use of or reliance upon flavor packs that are designed, not grown, by flavorists.

51. Tropicana does not disclose to consumers on its labeling or mention in its advertising that its NFC juice is dependent upon and enhanced by added flavoring and aroma.

52. Further, in its advertisements Tropicana suggests that there is no space for anything other than pure, fresh, natural orange juice in its cartons.   For example, in Tropicana's ad "Tropicana Pure Premium Puts The "Good" In Morning, it claims, "We squeeze 16 fresh-picked oranges into each 59-oz carton of Tropicana Pure Premium orange juice, and absolutely no space for added sugar, water or preservatives.  Tropicana, we put the good in morning."  This is false as Tropicana adds flavoring and aroma to its NFC juice.

53. Tropicana does, however, suggest on its website that the orange oil extracted from the same fruit that is juiced is reintroduced to the juice for "consistent quality and flavor," but then suggests that the flavor of the oranges is protected by gentle squeezing and that the handling of the oranges provides that "unique, straight-from-the-orange Tropicana taste." This is false and belies the importance of using flavoring and aroma created from orange oils and essence from different fruit (*i.e.*, fruit other than those that were squeezed and provided the orange pulp, cloud, and serum) that is reconfigured and recombined by flavorists and added to its NFC juice.

**E.    Tropicana's Misrepresentations That NFC Juice Is "100% Pure And Natural Orange Juice"**

54. Tropicana leaves out the details about how its NFC juice is produced, processed, and flavored in its advertisements and on its cartons and containers. Instead, Tropicana NFC juice is marketed as 100% pure and natural orange juice made from fresh squeezed oranges.

55. Tropicana has engaged in a uniform marketing and advertising program representing that NFC juice is 100% pure and natural and made from fresh oranges to induce consumers to purchase NFC juice in reliance upon these representations. These representations were prominently displayed on Tropicana's label, and within Tropicana's advertisements, promotional materials and website.

56. Tropicana's commercials, print advertising, and on-line marketing is false and misleading in that it omits that: (a) NFC juice is extensively processed; (b) stored for as long as one year; and (c) that the flavor of the NFC juice is dependent

upon added flavoring and aroma, while indicating that the product is 100% pure and natural orange juice.

57. Tropicana leaves out the details about how its orange juice is produced, processed, and flavored in its advertisements and on its cartons and containers. Instead, Tropicana NFC juice is marketed as 100% pure and natural orange juice.

58. When Florida is not producing oranges, Tropicana's NFC juice is a mixture of Florida juice, some or all of which has been stored from previous seasons, and Pera orange juice processed in Brazil and shipped to the United States.

59. Processed NFC juice from Brazil is exported to ports in the United States in converted bulk carriers, tankers, and other massive shipping vessels. These orange juice tankers carry millions of gallons of orange juice cargo that is carried in cylindrical tanks. Tanker, Shipping & Trade, *Bulk Carrier is Transformed Into an Orange Juice Carrier*, June-July 2011, at 20-21.

60. Brazil is quickly becoming a larger supplier of orange juice to Tropicana and contributes more than 20% of the juice contained in Tropicana NFC juice at times during the year. This percentage is expected to grow overtime as Brazil ships more processed NFC juice to the United States.

61. While Tropicana provides videos and images of its groves in Florida, it has never advertised or shown pictures of massive orange juice tankers that carry millions of gallons of orange juice cargo in enormous cylindrical tanks, much less trumpeted its dependence upon them and their cargo.

62. For example, in its "Tropicana Orange Grove Tour" on its YouTube page, Tropicana invites consumers to: "Step into nature and see one of the groves where our 16 fresh-picked oranges squeezed in each 59-oz. of Tropicana Pure Premium come from. Watch the goodness!"

63. Tropicana's representations that NFC juice is 100% pure and natural pertain to the composition, attributes, characteristics, nutritional value, health qualities and value of its NFC juice. Therefore, Plaintiffs and members of the Class purchased products that they would not have purchased or paid more than they otherwise would have been willing to pay if the NFC juice they purchased had been labeled accurately.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2), and (b)(3) on behalf of all purchasers of Tropicana's NFC juice in the United States (the "Class").

65. Plaintiff Dennis Lynch also seeks to represent a subclass defined as all members of the Class who purchased NFC juice in New Jersey ("the New Jersey Subclass").

66. Members of the Class and New Jersey Subclass are so numerous that their individual joinder herein is impracticable. Members of each of these classes number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery. Class members may be notified of the pendency of this action by mail

and/or publication through the distribution records of Tropicana and third party retailers and vendors.

67. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

     (a)    whether Tropicana was unjustly enriched by its conduct;

     (b)    whether Tropicana breached an express warranty made to Plaintiff and the Class;

     (c)    whether Tropicana breached the implied warranty of merchantability made to Plaintiff and the Class;

     (d)    whether Tropicana advertises, or markets NFC juice in a way that is false or misleading;

     (e)    whether NFC juice fail to conform to the representations, which were published, disseminated and advertised to Plaintiff and the Class;

     (f)    whether Tropicana concealed from Plaintiff and the Class that NFC juice did not conform to its stated representations;

     (g)    whether, by the misconduct set forth in this Complaint, Tropicana has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of NFC juice;

     (h)    whether Tropicana violated the New Jersey Consumer Fraud Act;

     (i)    whether Class members suffered an ascertainable loss as a result of the Tropicana's misrepresentations;

     (j)    whether, as a result of Tropicana's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

68. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Tropicana's wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained economic injury arising out of Tropicana's violations of common and statutory law as alleged herein.

69. Plaintiff is an adequate representative of the Class because his interest does not conflict with the interests of the Class members he seeks to represent, he has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

70. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Tropicana's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Tropicana's liability. Class treatment of the liability issues will

ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Unjust Enrichment)

71. Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

72. Plaintiff brings this claim individually and on behalf of the members of the Class and New Jersey Subclass against defendant Tropicana.

73. "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state."  *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009).

74. "Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58, New Jersey law applies to those claims.

75. Plaintiff and Class members conferred a benefit on Tropicana by purchasing NFC juice.

18

76. Tropicana has been unjustly enriched in retaining the revenues derived from Class members' purchases of NFC juice, which retention under these circumstances is unjust and inequitable because Tropicana misrepresented that NFC juice was 100% pure and natural orange juice when in fact it was not, which caused injuries to Plaintiff and Class members because: (a) they would not have purchased the NFC juice on the same terms if the true facts concerning its processing and actual composition had been known; and (b) they paid a price premium due to the mislabeling of the NFC juice.

77. Because Tropicana's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Tropicana must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT II

### (For Breach of Express Warranty)

78. Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

79. Plaintiff brings this claim on behalf of the nationwide Class and on behalf of the New Jersey Subclass under New Jersey law.

80. Tropicana, as the designer, manufacturer, marketer, distributor, or seller expressly warranted that the NFC juice was 100% pure and natural orange juice.

81. In fact, NFC juice undergoes extensive processing, lengthy storage, and is dependent upon added aroma and flavoring in a makeup not found in nature.

82. Plaintiff and Class Members were injured as a direct and proximate result of Tropicana's breach because:  (a) they would not have purchased the NFC juice on the same terms if the true facts had been known; (b) they paid a price premium due to the mislabeling of NFC juice; and (c) NFC juice did not have the composition, attributes, characteristics, nutritional value, health qualities or value as promised.

## COUNT III

### (Violation of the New Jersey Consumer Fraud Act)

83. Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

84. Plaintiff Dennis Lynch brings this claim on behalf of the New Jersey Subclass under New Jersey law.

85. Tropicana misrepresented that NFC juice was 100% pure and natural orange juice when in fact it was not.

86. Tropicana's misrepresentation that NFC juice was 100% pure and natural orange juice constitutes an unconscionable commercial practice, deception, fraud, false promise and/or misrepresentation as to the nature of the goods, in violation of the New Jersey Consumer Fraud Act.

87. Plaintiff and Class members suffered an ascertainable loss caused by Tropicana's misrepresentations because:  (a) they would not have purchased NFC juice on the same terms if the true facts concerning its processing and actual composition had been known; (b) they paid a price premium due to the mislabeling of the NFC juice.

20

## COUNT IV

### (For Injunctive and Declaratory Relief)

88. Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

89. As set forth above, through the improper practices described above, Tropicana has intentionally misrepresented the nature of NFC juice sold to Plaintiffs and other members of the Class.

90. Tropicana's practices described herein are unlawful and against public policy, and therefore, Tropicana should be prohibited and enjoined from engaging in these practices in the future and should be compelled to correct the harm caused by its conduct.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Tropicana, as follows:

A.      For an order certifying the nationwide Class and the New Jersey Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class members;

B.      For an order declaring the Tropicana's conduct violates the statutes referenced herein;

C.      For an order finding in favor of the Plaintiff, the nationwide Class and the New Jersey Subclass on all counts asserted herein;

D.      For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff, the nationwide Class and the New Jersey Subclass their reasonable attorneys' fees and expenses and costs of suit.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  December 19, 2011

Christopher A. Seeger
Stephen A. Weiss
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
(212) 584-0700

Paul M. Weiss
Jeffrey A. Leon
Julie D. Miller
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By:___/s/ James E. Cecchi_____
     JAMES E. CECCHI

Dated:  December 19, 2011