James E. Cecchi
Caroline F. Bartlett
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Jeffrey A. Leon
Julie D. Miller
COMPLEX LITIGATION GROUP LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Scott A. Bursor
L. Timothy Fisher
Sarah N. Westcot
BURSOR & FISHER, P.A.
1990 North California Blvd, Suite 940
Walnut Creek, California
(925) 300-4455

Christopher A. Seeger
Stephen A. Weiss
Parvin K. Aminolroaya
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
(212) 584-0700

Antonio Vozzolo
Jamie Mogil
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dennis Lynch, Michael Martinucci, Sandra Jablons, and Angelena Lewis, on Behalf of Themselves and all Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Tropicana Products, Inc., a division of PepsiCo, Inc., <br><br> Defendant. | Civil Action No. 11-07382-DMC-JAD <br><br><br> **AMENDED COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, by their attorneys, on behalf of themselves and all others similarly situated, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    This  class action lawsuit asserts that the leading producer and marketer of branded fruit juices, Tropicana Products, Inc., a division of PepsiCo, Inc., ("Tropicana") has been falsely claiming that its heavily processed, designed and modified "not-from-concentrate" orange juice ("NFC juice") is 100% pure and natural orange juice.  Despite Tropicana's "100% pure and natural" claim, Tropicana's NFC juice is heavily processed and flavored – it is not 100% pure or 100% natural.

2.    Mass marketed orange juice such as Tropicana's cannot be fresh squeezed as fresh squeezed orange juice is unstable and has a short shelf-life. Fresh squeezed orange juice has a shelf life of approximately ten days refrigerated and between three and six months frozen.  Industrial processing and storage improves shelf-life, but adversely affects the flavor, aroma, and nutritional qualities of orange juice.  Nonetheless, to extend shelf-life, Tropicana NFC juice undergoes extensive processing which includes the addition of aromas and flavors to its NFC juice.  This extensive processing changes the essential nature of the NFC juice sold by Tropicana.  It is not natural orange juice.  It is instead a product that is

extensively processed and manipulated, and engineered in laboratories, which explains its shelf-life of more than two months.

3.     Tropicana is well aware that consumers want and demand natural products, and it seeks to take advantage of that consumer preference by deceptively promoting and marketing its NFC juice as "100% pure and natural" even though it has been pasteurized, deaerated, stripped of its flavor and aroma, stored for long periods of time before it ever reaches consumers, and then flavored, before it is packaged directly into the carton. Some of the non-natural aspects of these processes include:

a.     the removal of naturally present air from the intercellular spaces of the juice through the deaeration process;

b.      the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;

c.     long term storage of deaerated and pasteurized juices for a year or longer;

d.     the addition of chemically engineered "flavor packs" derived from sources other than those used to make the juice including oils from the peels of oranges imported from Mexico, Brazil, and other foreign countries to mimic the flavor that natural orange juice has, which because it is natural requires no flavor pack; and

e.     the mixing of numerous types of oranges from Florida and Brazil that are then flavored to cover up the varietal and geographic differences.

4.      Rather than conveying a truthful message that NFC juice actually is a heavily processed, pasteurized, deaerated, and flavored beverage, Tropicana instead markets its NFC juice deceptively by stating simply that it is not reconstituted from concentrate.

5.      Tropicana falsely advertises its NFC juice as pure and natural and suggests that NFC juice is better than reconstituted juice made from concentrate ("Recon") and frozen concentrate.

6.      Through Tropicana's deception, consumers are left with the false belief that NFC juice is akin to fresh squeezed orange juice.  Tropicana NFC juice is not fresh orange juice.  It is, in reality, a heavily processed product.

7.      Due in part to their false belief of the purity and freshness of NFC juice, consumers are willing to pay approximately $1.50 more per carton for NFC juice over Recon.

8.      Additionally, Tropicana's ability to extract a premium for its NFC juice would not be possible without the flavoring provided by the flavor pack.

9.      Tropicana makes no mention in its NFC juice advertisements or on its label of its use of or reliance upon added flavoring and aroma, or the extent to which its processing alters the essential nature of the juice.  Instead, Tropicana includes on its NFC juice packaging an illustration of an orange with a straw stuck into it, which is meant to convey the message that its NFC juice is fresh from the orange. The carton also states that the juice "is squeezed from fresh oranges." These

misleading messages reinforce the phrase "100% Pure & Natural Orange Juice" in large, prominent type.

10.     Tropicana uses blending and flavor packs to maintain uniformity in quality of its NFC juice so that regardless of the season consumers purchase a uniform product with a uniform taste that would be impossible with a fresh squeezed natural orange juice.

11.     Tropicana's market share is typically about 40 percent of all the orange juice sold each year.   Tropicana generated worldwide retail sales exceeding $5 billion in 2010 alone.

12.     Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of Tropicana NFC juice labeled and marketed as being "100% pure and natural orange juice" ("the Class") at any time from December 2005 to the present (the "Class Period") for unjust enrichment, breach of express warranty, fraudulent concealment, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 58:8-1, *et seq*.   Pending completion of discovery, Plaintiffs may seek leave to amend the Class definitions.   Moreover, Plaintiffs seek relief individually and on behalf of subclasses of residents of their homes states of New Jersey, New York and California under the false advertising and unfair business practice laws of those states.

## THE PARTIES

13.     Plaintiff Dennis Lynch ("Lynch") is a citizen of the State of New Jersey, residing in Oakland, New Jersey.   Plaintiff Lynch purchased Tropicana

5

NFC juice in Oakland, New Jersey during the Class Period for personal, family, or household purposes, which was represented as being "100% pure and natural orange juice." Plaintiff Lynch saw and read Tropicana's misrepresentations that Tropicana NFC juice is "100% pure and natural orange juice," and relied on such misrepresentations in deciding to purchase Tropicana NFC juice. Plaintiff Lynch would not have purchased Tropicana NFC juice had Tropicana disclosed the true nature of its product on its packaging.

14.     Plaintiff Michael Martinucci ("Martinucci") is a resident of the State of New York. Plaintiff Martinucci purchased Tropicana NFC juice during the Class Period. Specifically, Plaintiff Martinucci purchased Tropicana NFC juice approximately once a week for personal, family or household purposes. Plaintiff Martinucci saw and read Tropicana's misrepresentations that Tropicana NFC juice was "100% pure and natural orange juice," and relied on such misrepresentations in deciding to purchase Tropicana NFC juice. Plaintiff Martinucci would not have purchased Tropicana NFC juice had Tropicana disclosed the true nature of its product on its packaging.

15.     Plaintiff Sandra Jablons ("Jablons") is a resident of the State of New York. Plaintiff Jablons purchased NFC juice during the Class Period. Specifically, Plaintiff Jablons regularly purchased NFC juice in one-half gallon and eighty-nine ounce sizes throughout the Class Period for personal, family or household purposes. Plaintiff Jablons saw and read Tropicana's misrepresentations that NFC juice was "100% pure and natural orange juice," and relied on such misrepresentation in

deciding to make her purchase. Plaintiff Jablons would not have purchased NFC juice had Tropicana disclosed the true nature of its product on its packaging.

16. Plaintiff Angelena Lewis ("Lewis") is a resident of the State of California. Plaintiff Lewis purchased NFC juice during the Class Period. Specifically, Plaintiff Lewis regularly purchased NFC juice in one-half gallon and eighty-nine ounce sizes throughout the Class Period for personal, family or household purposes. Plaintiff Lewis saw and read Tropicana's misrepresentations that NFC juice was "100% pure and natural orange juice," and relied on such misrepresentations in deciding to make her purchase. Plaintiff Lewis would not have purchased NFC juice had Tropicana disclosed the true nature of its product on its packaging.

17. Defendant Tropicana is a division of PepsiCo, Inc., a Delaware corporation with its principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577. Tropicana manufactures, markets and sells NFC juice nationwide.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

19. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events, omissions and acts giving rise to the claims herein

occurred in this District.  Plaintiff Lynch, a citizen of New Jersey, purchased Tropicana NFC juice from a retail store in this District, and Defendant Tropicana distributed, advertised and sold NFC juice, which is the subject of the present complaint, in this District.

## FACTS COMMON TO ALL CLAIMS

A.  **Tropicana NFC Juice Is Not Pure, Fresh or Natural**

20.    The term "not-from-concentrate" is intended to denote juice that is fresh or close to just squeezed.

21.    While consumers may understand that Tropicana NFC juice is <u>not</u> from concentrate, consumers do not know what it actually <u>is</u>.

22.    Without a source of information other than Tropicana and the NFC label itself, consumers are left knowing very little about the actual contents of a carton of NFC juice because of the gap that exists between the reality of processed NFC juice and retail rhetoric.

23.    Tropicana understands that consumer perceptions of foods and in particular, natural foods, affect purchasing decisions and consumption.

24.    The term "natural" carries overtones of purity and health.

25.    For more than a quarter century, surveys have shown that consumers prefer to buy natural foods whenever possible and that they believe that natural foods taste better than other foods.

26.    Similarly, surveys have long shown that a majority of consumers expect that a "100% natural" food is healthier for you and would be more expensive.

27.    Consumers do not consider processed foods as nourishing as fresh, unprocessed foods.

28.    Natural was the number one descriptor consumers looked for when purchasing food and drinks at retail stores in 2010.

29.    Nearly 70% of consumers are extremely or very interested in and aware of natural foods generally and more than half of all consumers are extremely or very interested in natural beverages specifically.  At the same time, consumers eschew and deliberately avoid foods and beverages containing preservatives, added flavoring, added colors, and other chemical additives.

30.    Consumers consider safety, taste and purity more important than price when shopping for food and beverages, and will therefore, pay a premium for pure and natural products.

31.    Consumers' favorable views of natural beverages influence their behavior and – importantly for Tropicana – purchasing decisions.

32.    Tropicana understands the importance and value of descriptors and labels with the words "fresh," "natural" and "pure" to consumers when considering whether to buy foods and beverages.

33.    Tropicana also realizes that consumers are increasingly aware of the relationship between health and diet and that consumers are demanding fresh and natural products that are minimally processed.

34.    Tropicana also recognizes the growing interest in premium quality juices, with very mild pasteurization, distributed refrigerated and with a limited shelf-life.

35.    To generate greater sales of its NFC juice, the label for Tropicana NFC juice prominently features in large type "100% pure and natural orange juice."

36.    Growth of the NFC juice has been fueled by consumer perception that NFC juice is a more natural and premium product than Recon or frozen concentrate.

37.    Throughout Tropicana's marketing materials, advertising, website, labeling, packaging and point-of-sale materials, Tropicana represents that its NFC juice is "100% pure and natural orange juice."

38.    To further emphasize this point, each of the labels also graphically depicts an orange with a straw piercing the skin of the orange to convince consumers that they are purchasing pure and natural orange juice.



39.     In January 2009, Tropicana introduced a new package design, replacing the orange with a straw piercing the skin with a glass of orange juice. Sales of Tropicana NFC juice dropped 20% due to the packaging change and Tropicana returned to the earlier packaging.  Tropicana suffered an estimated loss in sales of $27.5 million in less than three months.  Jong-Ying Lee, Zhifeng Gao, Mark G. Brown, *A study of the impact of package changes on orange juice demand*, 17 J. Retailing & Consumer Serv. 487-91 (2010).  During this same period, overall orange juice sales remained relatively flat, as Tropicana's competitors picked up the Company's lost market share.[1]

---

[1]     Available at *See* http://adage.com/article/news/tropicana-line-s-sales-plunge-20-post-rebranding/135735/ (*last accessed* February 13, 2012).



40.     As a result of this failure, Tropicana is keenly aware of the importance of all words, labels and imagery that are placed on packages of NFC juice and the effect these have on consumers.

41.     Tropicana also maintains a website for the promotion of its NFC juice where Tropicana makes the following representations:[2]

> Tropicana Pure Premium is 100% pure and natural juice, with 16 fresh-picked oranges squeezed into each 59 oz. container.  No water, sugar, or preservatives are ever added and it is never from concentrate, so you get only the freshest, most delicious straight-from-the-orange taste.
>
> Tropicana Pure Premium is 100% juice that comes from the best real, fresh oranges.
>
> Our secret is right there on every carton or bottle of Tropicana Pure Premium: the juice is 100% pure and natural orange juice.
>
> Safety Always: Pasteurization makes the products like juice and milk safe to drink.

---

[2]   Available at http://www.tropicana.com/#/trop_products/productsLanding. swf (last accessed January 13, 2012).

> We're committed to using the best fruit to give you the great tasting juices you love and the nutrition your body needs.

42.     In a page dedicated to the products' purported "Health Benefits For All," Tropicana makes the following promise to its customers: "our promise to you is that … Tropicana Pure Premium ... comes from the best real fresh oranges … with no water, sugar or preservatives added, you don't have to worry about anything but the goodness…[and]…we take every step possible to ensure that you get our freshest and best tasting juice." [3]

43.     Tropicana's website also promotes its "Safety Always" approach, explaining how its orange juice comes from "Grove to Glass."[4]

44.     To further the image that NFC juice is "100% pure and natural," Tropicana produces and distributes commercials, both on television and the internet that depict 16 fresh, ripe oranges being squeezed into a Tropicana Pure Premium bottle (with no room for anything else), while the announcer states "There are 16 fresh picked oranges squeezed into each bottle of Tropicana Pure Premium and absolutely no space for added sugar, water or preservatives."

45.     Along with emphasizing that its NFC juice is natural, Tropicana repeatedly touts its purity, freshness, and the various health benefits.

---

[3]   Available at http://www.tropicana.com/#/trop_healthbenefits/hbMain.swf (last accessed February 13, 2012).

[4]   Available at http://www.tropicana.com/#/trop_grovetoglass/grovetoglass.swf?safety_always (last accessed February 13, 2012).

46.    Tropicana recognizes that consumers are increasingly concerned about the types of foods they put into their bodies and the role of good nutrition and overall health and well-being.

47.    While Tropicana claims that "making Tropicana orange juice is truly an art," it is far more a science.

48.    Tropicana NFC juice is not "100% pure and natural orange juice," but rather is an extensively processed and flavored beverage.

49.    Tropicana unscrupulously capitalizes on consumers' heightened demand for natural products by deceptively marketing its NFC juice.

**B.    Tropicana NFC Juice Is Extracted At Massive Processing Plants**

50.    During the Class Period, Tropicana included juice extracted from various types of sweet oranges that were processed at massive orange juice processing plants in Florida and Brazil.    These orange juice processing plants utilized Brown International or FMC juice extraction systems, which are controlled by computers in an essentially automated process.

51.    Brown International Corporation (the Florida division is named Automatic Machinery & Electronics, Inc. and is located in Winter Haven, Florida near Tropicana) recovers orange juice by reaming.    The reamers and cups are mounted in a vertical plane.    The reamer heads are attached to turning shafts on the two faces of a revolving cylindrical drum.    A feed wheel transfers oranges past a knife, which halves each fruit, to a chain of cups.    The cups deliver the orange halves to the reamers, the juice is collected beneath the reamers, and the reamed

14

half-peels are ejected from the cups by a device called a kicker, which fits into a slot in the cups.  There are two product streams recovered at the juice extractor: the pulpy juice and the peel residue.  These streams are recovered beneath the extractor lines for further processing.  The extracted juice stream goes to a primary finisher with a larger-hole screen size to separate the pulpy juice from the membranes, rags, and seeds.  The pulpy juice stream goes to another finisher with a smaller screen to effect separation of the juice and pulp.

52.    FMC extractors operate on the principle of instantaneous separation by squeezing the juice from the fruit.  The extractors are arranged in linear rows. The upper and lower cups start to converge upon an orange held by the extractor. The upper and lower cups cut two holes in the fruit and continue converging until the peel is separated from the fruit.  Peeled fruit is then squeezed into a strainer tube, which separates juice from seeds and the rest of the fruit.

53.    Since the fruit must be peeled carefully before the juice is extracted to eliminate peel oil in the juice, which is not commercially possible at the massive facilities where Tropicana NFC juice is extracted, the usual industrial practice is to remove excess oil during a separate de-oiling step.

### C.    Natural Orange Juice Is Not De-Oiled

54.    Tropicana endeavors to maximize juice yield from its oranges. Consequently, the juice ends up with too much peel oil.

55.    Because peel oil can reduce the quality of NFC juice, Tropicana removes excess peel oil by vacuum stripping or de-oiling centrifuges.

56.   Tropicana, however, removes more oil than may otherwise be necessary so that it can add back its desired flavoring and standardize the NFC juice.

**D.   Natural Orange Juice Does Not Undergo Deaeration**

57.   "Air is naturally present in the intercellular spaces of fruits. During fruit maceration, homogenization, and juice extraction cells are crushed, the cell wall is disrupted and air is mixed into the juice.  Air can be present as dissolved gas in solution or associated with the pulp particles, for example, in orange juice. During cell disruption, metabolites and enzymes that are normally compartmentalized are mixed, producing chemical and biochemical reactions. Oxygen in air, present in the spaces between the juice vesicles, and from the surroundings, saturates the juice producing oxidation reactions that often result in browning, changes in aroma, and loss of nutritional value.  *These reactions are exacerbated by the increase in temperature during pasteurization* and reduce the overall quality of the product during storage."  R. Garcia-Torres, N.R. Ponagandla, R.L. Rouseff, R.M. Goodrich-Schneider & J.I. Reyes-De-Corcuera, *Effects of Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8 Comprehensive Rev. in Food Sci. & Food Safety 409 (2009) (emphasis added).

58.   Because oxygen reduces the quality of stored orange juice, Tropicana subjects its juice to a deaeration process that removes dissolved oxygen from the juice.

59.    Tropicana deliberately fails to mention that after being squeezed from oranges, its NFC juice undergoes deaeration, which strips the juice of oxygen, so it does not oxidize.

60.    Flash or vacuum deaeration is the most common method of deaeration in the citrus industry.  This method of deaeration "performs the dual role of removing oxygen and removing excess peel oil from orange juice before pasteurization.  This operation is called 'flash deaeration' because of the sudden decrease in pressure that preheated juice undergoes as it enters the deaeration tank, producing a practically instantaneous separation." *Effects of Dissolved Oxygen*, 8 Comprehensive Rev. in Food Sci. & Food Safety 417 (2009).

61.    Importantly, when orange juice is stripped of oxygen it is also stripped of important volatile compounds that provide flavor and aroma.

62.    To ensure a high elimination of dissolved oxygen, Tropicana preheats its NFC juice before deaeration.  Heating orange juice further alters its flavor and reduces its aromatic quality.

**E.    Natural Orange Juice Is Not Pasteurized and Then Stored For Up To One Year**

63.    Tropicana NFC juice is also pasteurized to improve its shelf-life, but the improved shelf life comes at the expense of the delicate flavor and aromatic quality of the juice.

64.    Pasteurization, a form of thermal processing, reduces, inactivates, or eliminates enzyme and microbial activity in orange juice to extend its shelf-life, but

also further reduces aroma and flavor qualities, and produces undesirable off-flavor and off-odor compounds.

65.    Pasteurization profoundly effects aroma composition and can create off-flavors or their precursors from Maillard, Strecker, and acid-catalyzed hydration reactions.

66.    Heating causes irreversible damage to the flavor of orange juice.

67.    Numerous tests have revealed the effect of pasteurization on the aromatic composition of orange juice and the decrease in the amounts of important flavor and aroma compounds like acetaldehyde, ethyl butyrate, and hexanal. Finally, aroma and flavor volatiles are further altered by storage.    In fact, increased storage time leads to a decrease in sweet odor, strength of the orange odor, sweet flavor, sour flavor, and orange aftertaste, and increases off-flavors and off-odors.

68.    Tropicana advertises that its NFC juice is squeezed from fresh oranges, again pushing the freshness of the product, yet fails to disclose to consumers that its product may be made from orange juice that has been pasteurized and, with precise nitrogen blanketing and mixing, stored for a year or more at a temperature of 30 degrees in multi-million gallon tanks at a tank farm in Florida.  It has been reported that tanks have been used for over 4 years without being cleaned or re-sterilized.  This extended stopover between "grove and glass" is never mentioned in Tropicana's advertising.

69.    "There has been no technological breakthrough or identification of flavor constituents that would enable thermally pasteurized juice or reconstituted concentrate to taste exactly like fresh juice….It may be simply stated that heating irreversibly and negatively alters juice flavor, so that it no longer has the aroma and character of fresh juice."  Dan Kimball, Mickey E. Parish & Robert Braddock, *Oranges and Tangerines*, Processing Fruits, Science and Technology  630 (Diane M. Barret et al. eds., 2d ed., 2004).

70.    These are not sophisticated scientific tenets and Tropicana understands that: pasteurization changes physical and chemical properties of orange juice; heat drives off volatiles altering the original flavor of the fresh orange juice; and increased storage time and temperature conditions of storage can cause orange juice to deteriorate in taste and nutritional value.

71.    Pasteurization is neither the only, nor necessarily the most altering step of Tropicana's production of NFC juice.

72.    Prior to storage in the aseptic tanks NFC juice is often heated again and is regularly heated once more before it goes into the package.

73.    Tropicana knows that the more the NFC juice is heated the more its flavor is depleted.

**F.    Natural Orange Juice Is Not Processed with Flavor Packs**

74.    Freshly squeezed orange juice smells and tastes fresh naturally. However, after the volatiles are stripped away from the orange juice and it is processed, the remaining NFC juice is essentially an insipid, sugary, orange liquid that lacks the flavor and aroma of orange juice.

75.    "Unpasteurized orange juice that is quickly frozen until use may be more acceptable than pasteurized orange juice to a consumer that is looking [for] a fresh squeezed taste."    E.R. Farnworth, et al., *Thermal processing, storage conditions, and the composition and physical properties of orange juice*, 34 Food Research Int'l 25, 30 (2001).

76.    Orange volatile flavor components can be separated into one of two broad categories.  The first is the oil-soluble constituents in peel oil and in juice oil. The other flavor components consist of the water-soluble constituents present in the juice.

77.    The majority of the characteristic flavor of fresh squeezed orange juice comes from the water-soluble components found in the juice sacs.  These components are lost during processing, deaeration, pasteurization, and long term storage.

78.    Without the addition of flavoring and aroma, NFC juice would not only be unappealing to consumers, but would also be nearly undrinkable.

79.    To revive this liquid to a saleable product, and unbeknownst to reasonable consumers, Tropicana re-flavors the product to taste like natural orange juice through the addition of flavor packs.

80.    Flavor packs are unnatural and are scientifically produced and designed in laboratories by chemists, food scientists and flavorists from processed orange oils and essence.

81.    While some citrus industry members have suggested that adding flavor packs is akin to using orange zest in a recipe, nothing could be further from the truth.  Flavor packs are designed with a particular market in mind and created by experienced flavor companies with highly trained individuals to meet Tropicana's specific needs for its NFC juice.

82.    The process of creating an objective flavor by blending various natural and/or synthetic aromatic materials is called formulation.  Relying on olfaction and years of training and education, flavorists and perfumers select and blend numerous aromatic compounds for Tropicana in conformity with Tropicana's needs and product concepts to develop flavoring so that the NFC juice will have a flavor that includes three different building blocks:

    a.  Top Note – the top note of flavors is composed of aroma components that volatilize rapidly and have lower flavor retention.  Top note defines the first impression of the flavor.

b. Middle Note – the middle note of flavors consists of aroma components that subsequently volatilize and have moderate flavor retention, and also forms the main body of the flavor.

c. Base Note – the base note is a class of residual aroma components that volatilize very slowly and can linger for long periods of time.  The base note contributes to determine aroma properties of the flavor.

83.    During pasteurization and deaeration, the components that compose the top note and middle note are lost from NFC juice.  Tropicana understands that for its NFC juice to have a refreshing and juicy character, it needs to have a strong top note.

84.    Flavorists and flavor packs, not the grower in the grove or the fruit itself, give Tropicana NFC juice its distinctive taste.  Thus, the distinctive taste of Tropicana is a product of science (*i.e.*, flavor packs), not the fruit.

85.    The main purposes of the flavor packs are: to provide and intensify aromas and flavors; to supply flavors and aromas that are lost during processing; to suppress or mask undesired flavors that are created during processing and long-term storage; and also to enhance consumer acceptance.

86.    Flavorists process orange oils into various types of flavor materials with different levels of notes, flavor intensity, stability, and functionality, which enable Tropicana NFC juice to maintain its characteristic flavor 365 days a year.

87.    Flavorists use microbiological and enzymatic processes to convert limonene and other peel oil compounds into other, more valuable flavor compounds because of consumers' preference for "natural" flavors.

88.    Since both microbial and enzymatic bioconversions are natural processes, Tropicana and its flavorists view the resulting products from the bioconversion of orange peel oil components into more valuable flavor compounds as natural.

89.    Reasonable consumers would not view orange juice containing flavor compounds derived from microbial or enzymatic bioconversion as "100% pure and natural orange juice."

90.    Similarly, flavor components can be obtained by removing terpene hydrocarbons from the recovery essence oil by distillation or extraction. This process is also not natural.

91.    Flavorists specially design flavor packs that include water-soluble liquid flavors or emulsified flavors to satisfy Tropicana's specific needs and requirements.

92.    Emulsified flavors are obtained by adding water and emulsifiers and stabilizers to a flavor base, followed by homogenization.  Emulsified flavors do not dissolve, but disperse.  To ensure their dispersion state for a long time, the specific gravity of the emulsified flavors is adjusted to a value comparable to NFC juice.

93.    The flavor industry is a service industry for Tropicana and as such, must be mindful of cost when developing flavor packs.  Consequently, flavorists

purchase and use lower cost orange oil, including orange oil from fruit grown in foreign countries, for use in flavor packs for NFC juice.

94.     Flavor packs also include orange oils that were not derived from fruit squeezed by Tropicana.

95.     During the Class Period, in addition to failing to disclose its use of flavor packs, Tropicana did not consider the origin of the orange oil and essence used in its flavor packs when declaring that its NFC juice is made from 100% Florida juice or 100% juice made from oranges grown in Florida and Brazil.

96.     When flavorists do receive orange oils from fruit squeezed by Tropicana, the flavor packs created by the flavorists are not necessarily added back to the same fruit that was juiced.

97.     Flavorists design the flavor packs to emphasize and highlight certain aromas and flavors associated with orange juice by fractionating orange oil and essence into individual components, reformulating them, and blending them in varying mixtures.  The aroma and flavoring added to the NFC juice bears little resemblance to the natural orange oil and essence that leaves the juice during deaeration or that is altered during pasteurization or storage because of flavor interactions that occur during flavoring.

98.     Tropicana hires outside fragrance and flavorist companies, including Firmenich, a Swiss company that maintains its U.S. headquarters in Plainsboro, New Jersey, to synthesize flavor packs for its NFC juice.  Firmenich's website touts its position as an "industry leader" in creating "flavor systems of unmatched taste

performance from an extensive range of citrus ingredients and compounds. These systems complement all types of beverages, such as clear flavored water, carbonated soft drinks, alcoholic beverages, *or even juices requiring that sought-after 'fresh squeezed' taste."*  http://www.firmenich.com/m/flavors/partnerships/citrus/index.lbl (last visited Feb. 13, 2012) (emphasis added).

99.    Firmenich also touts its "citrus solutions" including flavor technologies that produce the optimal flavor stability products need during their expected shelf-life and flavor systems that mask "unpleasant off-notes resulting from ingredients added to your base products." *Id.*

100.    Tropicana also uses flavor packs to improve the flavor and aroma of lower quality juice.

101.    Tropicana's distinctive taste is the product of a recipe on a "blend card" created by scientists and flavorists and not a product of nature.

102.    While no single volatile can be considered a character impact compound, it is generally accepted that fresh orange flavor and aroma are the result of a collection of aroma active volatiles present in low concentrations and it is fairly well accepted that total aldehydes and esters play an important role in orange juice flavor.

103.    Aldehydes are found at high concentration in fresh orange juice. Aldehydes are so chemically reactive that their concentrations are altered by thermal processing.

104.   For example, studies have shown that acetaldehyde is reduced by thermal processing.  Acetaldehyde is the major volatile aldehyde present in orange juice and studies have also shown that it is a major contributor to the fresh, pungent odor quality of freshly squeezed orange juice.

105.   Similarly, esters are another group of chemical compounds that provide important flavor and aroma components for freshly squeezed orange juice. Total ester concentration has also been suggested as a measure of orange aqueous essence strength and quality.

106.   Ethyl butyrate, also known as ethyl butanoate, is one of the most intense odorants in orange juice and it is fairly well accepted that it is the single most important ester in orange juice.   Ethyl butyrate is one of the chemical compounds found in high concentrations in the flavor packs added to Tropicana's NFC juice sold in North American markets.   Tropicana adds much more ethyl butyrate to its NFC than is naturally found in orange juice.

107.   The flavor packs used for Tropicana NFC juice sold in other markets use less ethyl butyrate and highlight other fragrances and flavors, such as decanol, that are preferred in those markets, further revealing that NFC juice is not pure and natural.  The flavor is engineered according to the tastes of the market in which the juice is sold.

108.   Tropicana adds ethyl butyrate to its NFC juice because it provides the "freshest" characteristics to NFC juice.   The addition of ethyl butyrate, which is water-soluble, dilutes the NFC juice.

109.   Hydrocarbons are another chemical compound whose concentration is low in freshly squeezed orange juice, but vastly greater in Tropicana's highly processed NFC juice.

110.   The simple addition of orange peel oil to NFC juice would not create Tropicana's distinctive flavor or mask the effects of the juice's extensive processing because more than 90% of the peel oil consists of terpene hydrocarbons, mainly limonene, but terpene hydrocarbons provide very limited flavor and aroma in orange juice.

111.   For example, limonene, the most prevalent terpene hydrocarbon, has little, if any, direct flavor or aroma impact because of its high odor thresholds.

112.   Moreover, while limonene is a major constituent in processed orange juice, including NFC juice, its concentration in freshly squeezed orange juice is much lower because of the elevated levels of peel oil that are introduced into the juice during commercial juice extraction.

113.   The mixture of volatile compounds with aroma activity is responsible for the characteristic aroma of orange juice.

114.   Tropicana adds aroma and flavoring to its NFC juice – the addition of which serves a technical function – to provide its processed orange juice an aromatic and flavor profile closer to fresh juice and to mask the effects of processing and storage.  The resulting product does not taste like fresh squeezed orange juice, but rather tastes like Tropicana.

115.    Ethyl butyrate is one of the chemicals found in high concentrations in the flavor packs added to Tropicana's NFC juice sold in North American markets.

116.    The flavor packs used for Tropicana NFC juice sold in other markets use less ethyl butyrate and highlight other fragrances and flavors, such as decanol, that are preferred in those markets, further revealing that NFC juice is not pure and natural.

117.    Regardless of the time of year, Tropicana orange juice tastes the same even though it is made from different varieties and different blends of oranges that ripen at different times of the year because Tropicana uses added flavoring to maintain product consistency to address variations in the quality, variety, source, and ratios of oranges used (e.g., Valencia, Hamlin or Pera).

118.    By adding flavoring and aroma, Tropicana is able to make its NFC juice taste more like "fresh" Valencia (the most prized orange grown in Florida) even while it increases the ratio of Hamlin (the most heavily planted orange grown in Florida) or Pera (the most heavily planted orange grown in Brazil) included in the juice.

119.    Tropicana adds back a greater volume of volatile compounds and/or better quality volatile compounds to its NFC juice to: restore flavoring lost by the deleterious effects of processing and long-term storage; create its NFC juice's signature flavor; and ensure consistent taste and quality.

120.    Tropicana fails to mention the use of flavor packs or that it is the addition of flavor packs to the NFC juice that makes it taste "fresh" and masks the effects of processing and storage.

121.    Tropicana claims falsely that the "secret is right there on every carton or bottle of Tropicana Pure Premium: the juice is 100% pure and natural orange juice," while deliberately omitting any reference to Tropicana's use of or reliance upon flavor packs that are designed by flavorists, not grown in an orange grove.

122.    Tropicana does not disclose to consumers on its labeling or mention in its advertising that its NFC juice is dependent upon and enhanced by added flavoring and aroma.

123.    Tropicana does, however, suggest on its website that the orange oil extracted from the same fruit that is juiced is reintroduced to the juice for "consistent quality and flavor," but then suggests that the flavor of the oranges is protected by gentle squeezing, which is quite far from the reaming and extraction methods actually used, and that the handling of the oranges provides that "unique, straight-from-the-orange Tropicana taste."  This is false and belies the importance of using flavoring created from orange oils and essence from different fruit (*i.e.*, fruit other than those that were squeezed and provided the orange pulp, cloud, and serum) that is reconfigured and recombined by flavorists and added to its NFC juice.

124.    Reasonable consumers desirous of 100% Florida orange juice have been deceived into purchasing NFC juice because Tropicana does not declare its use of flavoring created from foreign orange oils.

125.    Flavor packs, which are made from processed orange oil and essence, are not "processing aids"[5] or "incidental additives" as those terms are defined by the United States Food and Drug Administration because they are added in significant levels and serve a technical function.

126.    A 1993 FDA ruling confirmed that orange oil and essence do not qualify as "incidental additives" under an exemption because oils and essence are added to fruit juice for the purposes of fulfilling certain technical functions such as achieving uniform quality and organoleptic properties, and the level of use of the added ingredients is not insignificant.  58 Fed. Reg. 2850 (Jan. 6, 1993).

127.    Flavor packs should not be added to NFC juice unless they are clearly identified on the product label.

---

[5] The FDA defines processing aids as:
  (a) Substances that are added during the processing of a food but are removed in some manner from the good before it is packaged in its finished form;
  (b) Substances that are added to a food during processing, are converted to constituents normally present in the food, and do not significantly increase the amount of constituents naturally found in the food; or
  (c) Substances that are added to a food for their technical or functional effect in the processing but are present in the finished food at insignificant levels and do not have a technical function effect in that food.
  http://www.fsis.usda.gov/pdf/determination_of_processing_aids.pdf (last visited Feb. 3, 2012)

128.   By failing to identify the inclusion of flavor packs while including descriptors such as "100% pure and natural," the labeling for NFC juice is deceptive and misleading.

**G.    Flavor Is The Most Important Quality Criteria For Consumers**

129.   Flavor has the strongest effect on quality impressions by consumers. Similarly, added flavorings are second only to colors in the disapproval they engender in consumers.

130.   Flavor, more than any other quality criteria for food or beverages, has a double meaning: it represents both substance content and physical properties.

131.   Flavor also relates to consumer perceptions.  As a result, flavor reflects the prototype of the modern concept of quality.

132.   Tropicana understands that flavor guides consumers' purchasing decisions and their willingness to pay for a product.

133.   Tropicana also understands that when flavor expectations are met or exceeded by experience it generates repeat sales and fosters consumer loyalty.

134.   Flavor plays a central role in enhancing the value and appeal of Tropicana's NFC juice.

135.   A clear, consistent product flavor is crucial for Tropicana to ensure consumer satisfaction and maintain the appeal of its NFC juice.

**H.    Tropicana's Misrepresentations That NFC Juice Is "100% Pure And Natural Orange Juice"**

136.   Tropicana leaves out the details about how its NFC juice is produced, processed, and flavored in its advertisements and on its cartons and containers.

Instead, Tropicana NFC juice is marketed as "100% pure and natural orange juice" that is "squeezed from fresh oranges."

137.  Tropicana has engaged in a uniform marketing and advertising program representing that NFC juice is 100% pure and natural and made from fresh oranges to induce consumers to purchase NFC juice in reliance upon these representations.  These representations are prominently displayed on Tropicana's label, and within Tropicana's advertisements, promotional materials and website.

138.  Tropicana's television commercials, print advertising, and on-line marketing is false and misleading in that it implies that the juice inside the carton is 100% pure and natural orange juice with nothing added.

139.  Tropicana leaves out material details about how its NFC juice is produced, processed, and flavored while marketing it as simply 100% pure and natural orange juice.

140.  When Florida is not producing oranges, Tropicana's NFC juice is a mixture of Florida juice, some or all of which has been stored from previous seasons, and Pera orange juice processed in Brazil and shipped to the United States.

141.  Processed NFC juice from Brazil is exported to ports in the United States in converted bulk carriers, tankers, and other massive shipping vessels. These orange juice tankers carry millions of gallons of orange juice cargo in cylindrical tanks.

142.  Brazil contributed as much 20% of the juice contained in Tropicana NFC juice at times during the year.

143.    While Tropicana provides videos and images of its groves in Florida, it has never advertised or shown pictures of massive orange juice tankers that carry millions of gallons of orange juice cargo in enormous cylindrical tanks, much less revealed its dependence upon them and their cargo.

144.    For example, in its "Tropicana Orange Grove Tour" on its YouTube page, Tropicana invites consumers to: "Step into nature and see one of the groves where our 16 fresh-picked oranges squeezed in each 59-oz. of Tropicana Pure Premium come from. Watch the goodness!"

145.    Tropicana's representations that NFC juice is 100% pure and natural pertain to the composition, attributes, characteristics, nutritional value, health qualities and value of its NFC juice.  Therefore, Plaintiffs and members of the Class purchased products that they would not have purchased or paid more than they otherwise would have been willing to pay if the NFC juice they purchased had not been mislabeled.

## CLASS ACTION ALLEGATIONS

146.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2), and (b)(3) on behalf of the following nationwide consumer class (the "Class"):

> All purchasers of Tropicana's NFC juice in the United States from December 2005 to the present (the "Class Period"). Excluded from the Class are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

147.   Plaintiff Lynch also seeks to represent a subclass defined as all members of the Class who purchased NFC juice in New Jersey ("the New Jersey Subclass").

148.   Plaintiff Martinucci and Jablons also seek to represent a subclass defined as all members of the Class who purchased NFC juice in New York ("the New York Subclass").

149.   Plaintiff Lewis also seeks to represent a subclass defined as all members of the Class who purchased NFC juice in California ("the California Subclass").

150.   Members of the Class and New Jersey, New York, and California Subclasses are so numerous that their individual joinder herein is impracticable. Members of each of these classes number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Tropicana and third party retailers and vendors.

151.   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.   Common legal and factual questions include, but are not limited to:

(a)    whether Tropicana was unjustly enriched by its conduct;

(b)    whether Tropicana breached an express warranty made to Plaintiffs and the Class;

(c)     whether Tropicana advertises, or markets NFC juice in a way that is false or misleading;

(d)     whether NFC juice failed to conform to the representations, which were published, disseminated and advertised to Plaintiffs and the Class;

(e)     whether Tropicana concealed from Plaintiffs and the Class that NFC juice did not conform to its stated representations;

(f)     whether, by the misconduct set forth in this Complaint, Tropicana has engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of NFC juice;

(g)     whether Tropicana violated the New Jersey Consumer Fraud Act;

(h)     whether Tropicana violated New York General Business Law, §§ 349 and 350;

(i)     whether Tropicana violated the California Consumer Legal Remedies Act, California Unfair Competition Law and California False Advertising Law;

(j)     whether, as a result of Tropicana's misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

152.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Tropicana's wrongful conduct. Plaintiffs have no interests antagonistic to the interests of the other members of the Class.   Plaintiffs and all members of the Class have sustained economic injury arising out of Tropicana's violations of common and statutory law as alleged herein.

153.    Plaintiffs are adequate representatives of the Class because their interest does not conflict with the interests of the Class members they seek to

represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

154.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Tropicana's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Tropicana's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Unjust Enrichment)

155.   Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

156.    Plaintiffs bring this claim individually and on behalf of the members of the Class against defendant Tropicana.

157.    Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, New Jersey law applies to those claims.

158.    Plaintiffs and Class members conferred a benefit on Tropicana by purchasing NFC juice.

159.    Tropicana has been unjustly enriched in retaining the revenues derived from Class members' purchases of NFC juice, which retention under these circumstances is unjust and inequitable because Tropicana misrepresented that NFC juice was 100% pure and natural orange juice when in fact it was not, which caused injuries to Plaintiffs and Class members because they paid *a price premium due* to the mislabeling of the NFC juice.

160.    Because Tropicana's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Tropicana must

pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT II

### (For Breach of Express Warranty)

161.   Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

162.   Plaintiffs bring this claim on behalf of the nationwide Class.

163.   Tropicana, as the designer, manufacturer, marketer, distributor, or seller expressly warranted that the NFC juice was 100% pure and natural orange juice.

164.   In fact, NFC juice undergoes extensive processing, lengthy storage, and is dependent upon added aroma and flavoring in a makeup not found in nature.

165.   Plaintiffs and Class Members were injured as a direct and proximate result of Tropicana's breach because:  (a) they paid a price premium due to the mislabeling of NFC juice and (b) NFC juice did not have the composition, attributes, characteristics, nutritional value, health qualities or value as promised.

## COUNT III

### (Violation of the New Jersey Consumer Fraud Act)

166.   Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

167.   Plaintiff Lynch brings this claim on behalf of the New Jersey Subclass under New Jersey law.

168.    Tropicana misrepresented that NFC juice was 100% pure and natural orange juice when in fact it was not.

169.    Tropicana's misrepresentation that NFC juice was 100% pure and natural orange juice constitutes an unconscionable commercial practice, deception, fraud, false promise and/or misrepresentation as to the nature of the goods, in violation of the New Jersey Consumer Fraud Act.

170.    Plaintiffs and all Class members suffered an ascertainable loss caused by Tropicana's misrepresentations because they were induced to purchase or paid a price premium due to the descriptors and labeling on the NFC juice and Tropicana's failure to disclose the degree of processing for NFC juice and its dependence upon added flavoring.

## COUNT IV

### (Violation of N.Y. Gen. Bus. Law § 349)

171.    Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

172.    Plaintiffs Martinucci and Jablons bring this claim on behalf of the New York Subclass under New York law.

173.    Tropicana engaged in a false and misleading marketing and advertising claim, representing that NFC juice contained "100% pure and natural orange juice."

174.   As set forth above, by advertising, marketing, distributing and/or selling its NFC juice to Plaintiffs and the New York Subclass, Tropicana engaged in, and continues to engage in, deceptive acts and practices.

175.   Plaintiffs and other members of the New York Subclass further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the members of the New York Subclass will be irreparably harmed unless the unlawful actions of Tropicana are enjoined in that Tropicana will continue to falsely and misleadingly advertise NFC juice as being "100% pure and natural orange juice." Therefore, Plaintiffs and the New York Subclass request an order granting them injunctive relief ordering appropriate labeling and disclosures in the advertising, marketing and promotion of NFC juice.

176.   Absent such injunctive relief, Tropicana will continue to falsely advertise, market and sell Tropicana NFC juice as "100% pure and natural orange juice" to the detriment of consumers.

177.   In this regard, Tropicana has violated, and continues to violate, N.Y. Gen. Bus. Law § 349, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Tropicana's violation of N.Y. Gen. Bus. Law. § 349 as alleged above, Plaintiffs and other members of the New York Subclass have suffered damages.

## COUNT V

### (Violation of N.Y. Gen. Bus. Law § 350)

178.   Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

179.   Plaintiffs Martinucci and Jablons bring this claim on behalf of the New York Subclass under New York law.

180.   Tropicana engaged in a false and misleading marketing and advertising claim, representing that its NFC juice contained "100% pure and natural orange juice," when in fact it was a heavily processed and flavored product.

181.   N.Y. Gen. Bus. Law § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

182.   As set for above, by advertising, marketing, distributing and/or selling NFC juice to Plaintiffs and the New York Subclass, Tropicana engaged in, and continues to engage in, false advertising.

183.   Plaintiffs and other members of the New York Subclass further seek to enjoin such false advertising as described above.  Each of the members of the New York Subclass will be irreparably harmed unless the unlawful actions of Tropicana are enjoined in that Tropicana will continue to falsely and misleadingly advertise and market NFC juice as containing "100% pure and natural orange juice." Therefore, Plaintiffs and the New York Subclass request an order granting them

injunctive relief ordering appropriate disclosures and/or disclaimers in the advertising, marketing and promotion of NFC juice.

184.   Absent such injunctive relief, Tropicana will continue to advertise, market and sell NFC juice as "100% pure and natural orange juice" to the detriment of consumers.

185.   In this regard, Tropicana has violated, and continues to violate, N.Y. Gen. Bus. Law § 350, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Tropicana's violation of N.Y. Gen. Bus. Law § 350 as alleged above, Plaintiffs and other members of the New York Subclass have suffered damages.

## COUNT VI

### (Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et. seq.*)

186.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

187.    Plaintiff Lewis brings this claim on behalf of the California Subclass under California law.

188.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Defendant violated this provision by representing its NFC juice as 100% pure and natural when the juice is actually heavily processed and flavored.

189.  Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant violated this provision by representing its NFC juice as 100% pure and natural when the juice is actually heavily processed and flavored.

190.  Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendant violated this provision by representing its NFC juice as 100% pure and natural when the juice is actually heavily processed and flavored.

191.  Plaintiff Lewis and the California Subclass members suffered injuries caused by Defendant's misrepresentations because: (a) they were induced to purchase a product they would not have otherwise purchased if they had known that Tropicana's NFC juice was heavily processed and flavored; (b) they paid a price premium due to the mislabeling of the NFC juice as "100% pure and natural."

192.  On January 6, 2012, prior to the filing of this Complaint, a CLRA notice letter was served on Defendant Tropicana which complies in all respects with California Civil Code §1782(a).  Plaintiff Lewis sent Tropicana a letter via certified mail, return receipt request, advising Tropicana that it is in violation of §1770. Tropicana was further advised that in the even the relief requested has not been provided within thirty (30) days, Lewis would file this Complaint.  A true and correct copy of Plaintiff Lewis' CLRA letter is attached hereto as Exhibit A.

193.   Wherefore, Plaintiff Lewis seeks damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT VII

**(Violation of the Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq*.)**

**(Injunctive Relief and Restitution Only)**

194.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

195.   Plaintiff Lewis brings this claim on behalf of the California Subclass under California law.

196.   Tropicana is subject to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

197.   Throughout the Class Period, Tropicana committed acts of unfair competition, as defined by Cal. Bus. & Prof. Code § 17200, by using false and misleading statements to promote the sale of NFC juice, as described above.

198.   Tropicana's conduct is unfair in that the harm to Plaintiff Lewis and the Class arising from Tropicana's conduct outweighs the utility, if any, of those practices.

199.   Tropicana's conduct, described herein, violated the "fraudulent" prong of the UCL by representing that its NFC juices were "100% pure and natural" when in fact they were not.

200.    Plaintiff Lewis and California Subclass members have suffered injury and actual out-of-pocket losses as a result of Tropicana's UCL violations because: (a) Plaintiff Lewis and the Class were induced to purchase a product they would not have otherwise purchased had they known its true composition; and (b) Plaintiff Lewis and the Class were induced to pay substantially more for Tropicana NFC juice than they would have paid if its true characteristics had not be concealed or misrepresented.

201.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class are therefore entitled to: (a) an Order requiring Tropicana to cease the acts of unfair competition alleged herein; (b) an Order requiring corrective disclosures; (c) full restitution of all monies paid to Tropicana as a result of their deceptive practices; (d) interest at the highest rate allowable by law; and (e) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code §1021.5.

## COUNT VIII

### (Violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*)

202.    Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

203.    Plaintiff Lewis brings this claim on behalf of the California Subclass under California law.

204.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising

device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

205.    Throughout the Class Period, Tropicana committed acts of false advertising, as defined by Cal. Bus. & Prof. Code §17500, by using false and misleading statements to promote the sale of NFC juice, as described above.

206.    Tropicana knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

207.    Tropicana's actions in violation of Cal. Bus. & Prof. Code § 17500 were false and misleading such that the general public is and was likely to be deceived.

208.    Plaintiff Lewis and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because: (a) Plaintiff and the Class were induced to purchase a product they would not have otherwise purchased had they known its true composition; and (b) Plaintiff Lewis and the Class were induced to pay substantially more for Tropicana NFC juice than they would have paid if its true characteristics had not be concealed or misrepresented.

209.    Plaintiff Lewis brings this action pursuant to Cal. Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Tropicana to issue corrective disclosures to consumers.

## COUNT IX

### (For Injunctive and Declaratory Relief)

210.  Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

211.  As set forth above, through the improper practices described above, Tropicana has intentionally misrepresented the nature of NFC juice sold to Plaintiffs and other members of the Class.

212.  Tropicana's practices described herein are unlawful and against public policy, and therefore, Tropicana should be prohibited and enjoined from engaging in these practices in the future and should be compelled to correct the harm caused by its conduct.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Tropicana, as follows:

A.    For an order certifying the nationwide Class and the New Jersey, New York, and California Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class Representative and their attorneys as Class Counsel to represent the Class members;

B.    For an order declaring the Tropicana's conduct violates the statutes referenced herein;

C.    For an order finding in favor of the Plaintiffs, the nationwide Class and the New Jersey, New York, and California Subclasses on all counts asserted herein;

D.      For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs, the nationwide Class and the New Jersey, New York, and California Subclasses their reasonable attorneys' fees and expenses and costs of suit.

> CARELLA, BYRNE, CECCHI,
> OLSTEIN, BRODY & AGNELLO
> Attorneys for Plaintiff
>
>
> By:___/s/ James E. Cecchi_____
>           JAMES E. CECCHI

Dated:  February 15, 2012

Christopher A. Seeger
Stephen A. Weiss
Parvin K. Aminolroaya
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
(212) 584-0700

Paul M. Weiss
Jeffrey A. Leon
Julie D. Miller
COMPLEX LITIGATION GROUP LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Scott A. Bursor

L. Timothy Fisher
Sarah N. Westcot
BURSOR & FISHER, P.A.
1990 North California Blvd, Suite 940
Walnut Creek, California
(925) 300-4455

Antonio Vozzolo
Jamie Mogil
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all claims so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  February 15, 2012

50