**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE:  TROPICANA ORANGE JUICE MARKETING AND SALES PRACTICES LITIGATION | MDL 2353 <br><br> Master Docket No. 2:11-cv-07382 (DMC)(JAD) |

---

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

---

*Attorneys for Plaintiffs*

James E. Cecchi
Caroline F. Bartlett
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700
[Additional Counsel for Plaintiffs
Listed on Signature Page]

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

    A.    The Federal Regulatory Scheme ............................................ 2

        1.    The Food, Drug and Cosmetic Act ................................. 3

        2.    The NLEA's Express Preemption Provision ..................... 5

        3.    The FDA Recognizes The Potential For "Natural" And "Pure" Claims In Food Marketing To Be Misleading, But Has Not Regulated These Terms ................................ 6

ARGUMENT ................................................................................. 7

    I.    Plaintiffs' Claims Are Not Preempted ................................. 8

        A.    The NLEA Allows Recovery For False Advertising ........... 9

            1.    Failure to Label Flavor Packs, Orange Essence and Orange Oil as "Ingredients" ................................. 10

            2.    Failure to Disclose Presence of Natural Flavors ........... 12

            3.    "100 Percent Pure and Natural Orange Juice" Representations Are not Preempted ......................... 13

            4.    Plaintiffs' Misrepresentation by Omission Claims Survive ........................................................... 14

            5.    Plaintiffs' Remaining Claims Survive ....................... 15

        B.    Tropicana Is Not Shielded From Liability By State Safe Harbor Laws ................................................................. 16

    II.    Plaintiffs Adequately Allege A Reasonable Expectation That Tropicana NFC Juice Was "100% Pure and Natural Orange Juice" ............ 16

    III.    The Complaint Satisfies Rule 9(b) .................................. 19

        A.    Plaintiffs Allege An Ascertainable Loss ......................... 22

i

B.        Plaintiffs' Omnibus Claim Is Well Pled ...............................................23

IV.    Plaintiffs' Unjust Enrichment Claim Is Well Pled.........................................25

V.     Plaintiff Simic Adequately Pleads A Claim For Punitive Damages..............26

VI.    Plaintiff Simic Adequately States A Claim For Unfair Trade Practices Under
       Wisconsin Law...................................................................................27

VII.   Plaintiff Simic Adequately States  A Claim For Breach Of Express Warranty
       Under Wisconsin Law......................................................................28

CONCLUSION.................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Ackerman v. Coca-Cola Co.*,
   2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) .........................................15

*Am. Frozen Food Institute v. Mathews*,
   413 F. Supp. 548 (D.D.C. 1976) ...........................................................................3

*Astiana* v. *Ben & Jerry's Homemade*, *Inc.*,
   2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................................................9, 21, 22

*Ball v. Sony Electronics Inc.*,
   2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) ......................................................28

*Bildstein v. MasterCard Int'l Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004)...................................................................23

*Bildstein v. MasterCard Int'l, Inc.*,
   2005 WL 1324972 (S.D.N.Y. June 6, 2005) .........................................................15

*Callano v. Oakwood Park Homes Corp.*,
   219 A. 2d 332 (N.J. App. Div. 1966)...................................................................25, 26

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) ...........................................................................................23

*Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*,
   450 U.S. 311 (1981)..........................................................................................9

*Cipillone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992).........................................................................................9

*Dorr v. Sacred Heart Hosp.*,
   597 N.W.2d 462 (Wis. Ct. App. 1999) ................................................................27

*Fed. Sec. Adm'r v. Quaker Oats Co.*,
   318 U.S. 218 (1943)..........................................................................................3

*Federico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)...............................................................................19, 22

*Florida Avocado Growers v. Paul*,
   373 U.S. 132 (1963).........................................................................................9

iii

*Gallego v. Wal-Mart Stores, Inc.,*
    707 N.W.2d 539 (Wis. Ct. App. 2005) ....................................................................27

*Hemy v. Perdue Farms, Inc.,*
    2011 WL 6002463 (D.N.J. Nov. 30, 2011) ..........................................................17, 19

*Holk v. Snapple Beverage Corp.,*
    575 F.3d 329 (3d Cir. 2009)...................................................................................9

*In re Bayer Combination Aspirin Products Marketing and Sales Practices Litig.,*
    2010 WL 1268196 (E.D.N.Y. Mar. 30, 2010)..........................................................24

*In re Sony HDTV Television Litig.,*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010)...................................................................17

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.,*
    2009 WL 2940081 (D.N.J. Sept. 11, 2009) ............................................................17

*Lieberson v. Johnson & Johnson Consumer Cos.,*
    2011 U.S. Dist. LEXIS 107596 (D.N.J. Sept. 21, 2011) ...........................................21

*McDonald v. North Shore Yacht Sales, Inc.,*
    513 N.Y.S.2d 590 (N.Y. Sup. Ct. 1987) .................................................................23

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996).........................................................................................8, 9

*Michael v. Shiley, Inc.,*
    46 F.3d 1316 (3d Cir. 1995).................................................................................15

*Mills v. Giant of Md., LLC,*
    441 F. Supp. 2d 104 (D.D.C. 2006)..................................................................11, 12

*Nat'l Confectioners Ass'n v. Califano,*
    569 F.2d 690 (D.C. Cir. 1978)...............................................................................4

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,*
    514 U.S. 645 (1995)...........................................................................................8

*N.Y. State Rest. Ass'n v. N.Y City Bd. of Health,*
    509 F. Supp. 2d. 351 (S.D.N.Y. 2007).....................................................................5

*People v Gagnon Bus Co., Inc.,*
    30 Misc. 3d 1225 (N.Y. Sup. Ct. 2011) ..................................................................23

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008)..................................................................................7

iv

*Plumley v. Massachusetts,*
    155 U.S. 461 (1894)............................................................................9

*Ramirez v. STI Prepaid LLC,*
    644 F. Supp. 2d 496 (D.N.J. 2009) ..............................................24

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947)............................................................................9

*Rooney v. Cumberland Packing Crop.,*
    2012 WL 1512106 (S.D. Cal. Apr. 16, 2012)...............................17

*Smajlaj v. Campbell Soup Co.,*
    782 F. Supp. 2d 84 (D.N.J. 2011) ........................................*passim*

*Small v. Lorillard Tobacco Co.,*
    94 N.Y.2d 43 (N.Y. 1999) ...............................................................23

*Stewart v. Beam Global Spirits & Wine, Inc.,*
    2012 WL 2523039 (D.N.J. June 29, 2012).............................25, 26

*Stewart v. Smart Balance, Inc.,*
    2012 U.S. Dist. LEXIS 138454 (D.N.J. June 25, 2012) ............15

*Talalai v. Cooper Tire & Rubber Co.,*
    360 N.J. Super. 547 (Law Div. 2001) ...........................................23

*Tennessee Valley Ham Co. v. Bergland,*
    493 F. Supp. 1007 (W.D. Tenn. 1980)............................................3

*Turek v. Gen. Mills, Inc.,*
    754 F. Supp. 2d 956 (N.D. Ill. 2010) ..............................................9

*Twin Disc, Inc. v. Big Bud Tractor, Inc.,*
    582 F. Supp. 208 (E.D. Wis. 1984)................................................29

*Unified Catholic Sch. of Beaver Dam Educ. Ass'n v. Universal Card Services Corp.,*
    34 F. Supp. 2d 714 (E.D. Wis. 1999)............................................27

*Union Ink Co. v. AT&T Wireless,*
    352 N.J. Super. 617 (App. Div. 2002) ..........................................23

*Van's Realty & Const. of Appleton, Inc. v. Blount Heating and Air Conditioning, Inc.,*
    397 N.W.2d 156 (Wis. Ct. App. 1986) ..........................................29

*Von Koenig v. Snapple Bev. Corp.,*
    713 F. Supp. 2d 1066 (E.D. Cal. 2010)..........................................21

*VRG Corp. v. GKN Realty Corp.*,
    135 N.J. 539 (1994) ...................................................................25

*Williams v. Gerber Products Co.,*
    552 F.3d 934 (9th Cir. 2008) ...............................................18

*Wyeth v. Levine,*
    129 S. Ct. 1187 (2009) .........................................................9

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C. D. Cal. 2010) ........................18, 20

*Zimmerman v. HBO Affiliate Group*,
    834 F.2d 1163 (3d Cir. 1987) .............................................24

**Statutes**

21 U.S.C. § 301 ....................................................................................2

21 U.S.C. § 341 ....................................................................................3

21 U.S.C. § 342(a)(1)-(4) ....................................................................4

21 U.S.C. § 343(a)(1) ....................................................................5, 13

21 U.S.C. § 343-(1)(a) .........................................................................5

21 U.S.C. § 371(a) ...............................................................................4

N.Y. Stat. §§ 349, 350 .......................................................................23

Wis. Admin. Code ATCP § 90.02(1) ...........................................27, 28

Wis. Stats. §100.20(1) .......................................................................27

Wis. Stats. § 402.313 .........................................................................29

Wis. Stats. § 895.043(3) .....................................................................26

**Regulations**

21 C.F.R. § 101 ..................................................................................12

21 C.F.R. § 101.22 ........................................................................6, 12

21 C.F.R. § 130 ...........................................................................*passim*

21 C.F.R. § 146.140 ....................................................................*passim*

28 Fed. Reg. 10903 (1963) ................................................................11

vi

28 Fed. Reg. 10904 (1963) ................................................................................11

56 Fed. Reg. 60421 (1991) ...............................................................................6

56 Fed. Reg. 60466 (1991) ...............................................................................6

58 Fed. Reg. 2302 (1993) .................................................................................6

58 Fed. Reg. 2407 (1993) .................................................................................6

58 Fed. Reg. 2850 (1993) ..............................................................................4,11

58 Fed. Reg. 2852 (1993) ..........................................................................4, 11, 14

58 Fed. Reg. 2897 (1993) ............................................................................ 7, 14

58 Fed. Reg. 2915 (1993) .............................................................................13, 14

58 Fed. Reg. 44059 (1993) ...............................................................................7

58 Fed. Reg. 44061 (1993) ...............................................................................7

60 Fed. Reg. 57076 (1995) ...............................................................................7

60 Fed. Reg. 57099 (1995) ...............................................................................7

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................7

## INTRODUCTION

Tropicana Products, Inc., a division of PepsiCo, Inc., ("Tropicana") is well aware that consumers want and demand natural products, and it seeks to take advantage of that preference by deceptively promoting and marketing its "not-from-concentrate" orange juice ("NFC Juice") as "100% pure and natural" even though it adds scientifically engineered flavor packs prepared by outside flavor companies to enhance the aroma, taste and color of its NFC Juice.  The flavor packs added to Tropicana's NFC Juice contain specific volatile compounds (*e.g.*, ethyl butyrate) in levels significantly in excess of those found in the raw juice from which the NFC Juice is derived[1] and emphasize and highlight certain aromas and flavors to create Tropicana's signature taste.

In essence, Tropicana argues that its added flavor packs do not need to be labeled and that it may conceal its reliance upon added coloring, flavoring and fragrance.  The plain language of the regulations and the cases cited below make clear that the law is exactly the opposite: Tropicana must identify all ingredients added to its NFC Juice, and must otherwise speak accurately and completely about the ingredients it does or does not add to its NFC Juice.  By failing to identify the inclusion of flavor packs and misrepresenting the extensive processing that its NFC Juice undergoes, Tropicana's advertising and labeling for its NFC Juice is deceptive and misleading.

Remarkably, a common theme throughout Tropicana's motion is the refrain that its NFC Juice is made from oranges and that Plaintiffs do not allege that it is anything other than orange juice.  Plaintiffs, in the Consolidated Amended Complaint ("CAC"), plainly contend that

---

[1]  The addition of ethyl butyrate, which is water-soluble, also dilutes the NFC Juice.

1

Tropicana flouts the "recipe" for pasteurized orange juice established in the standard of identity by adding its flavor packs in secret.  Tropicana dances around the allegations and attempts to paint a picture where Plaintiffs somehow agree that Tropicana's NFC Juice is actually 100% pure and natural orange juice.  Tropicana cannot simply sidestep the allegations.  The CAC makes clear that Tropicana's NFC Juice is not simply orange juice.  Further, it is absurd to argue, as Tropicana does, that the secret addition of coloring, flavoring and fragrance to its NFC Juice is permitted and even more so to attempt to escape liability based on a conscious effort to exploit Plaintiffs' lack of discovery from Tropicana or its outside flavor companies.

Plaintiffs bring claims under state consumer protection and deceptive trade practices laws.  To the extent that a given state may require, the allegations that Plaintiffs would not have purchased Tropicana's NFC Juice, or would have paid less if disclosure had been made, establish both reliance and causation.  Plaintiffs have also properly stated claims for nondisclosure because Tropicana concealed material information concerning its added flavoring that it had a duty to disclose.

Plaintiffs have alleged valid express warranty claims that arise from Tropicana's advertising and labeling, which made specific promises of purity that were not mere puffery.  Plaintiffs have also stated a valid unjust enrichment claim.  For the reasons discussed more fully below, Tropicana's effort to end this litigation before it has truly begun must be denied.

## A.    The Federal Regulatory Scheme.

Tropicana's motion focuses on the express preemption provision found in the Nutrition Labeling Education Act of 1990 ("NLEA"), which was an amendment to the 1938 federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, as amended.  Tropicana, however,

2

gets the law wrong, and in any event, misses the point.  The NLEA regulates nutrient labeling and health claims, but those claims are not at issue in this litigation.

### 1.    The Food, Drug and Cosmetic Act.

Neither Congress, through the legislative text and legislative history of the FDCA, nor the Food and Drug Administration ("FDA") through its regulations, has expressed any intent to supersede the States' concurrent or more stringent regulation of food and beverages.  Indeed, the very text of the FDCA and regulations contradicts the suggestion of any intent to broadly preempt consumer protection laws.  *Tennessee Valley Ham Co. v. Bergland*, 493 F. Supp. 1007, 1011 (W.D. Tenn. 1980) (citations omitted).

The FDCA authorizes the FDA to establish "definitions and standards of identity for foods."  *Am. Frozen Food Institute v. Mathews*, 413 F. Supp. 548, 550 (D.D.C. 1976), aff'd on other grounds, 555 F.2d 1059 (D.C. Cir. 1977).   In examining the legislative history, the Supreme Court found that the authority to "promulgate definitions and standards of identity" was conferred to prevent economic adulteration – the erosion of food "integrity" and the sale of products inferior to those which the consumer expected to receive.  *Fed. Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 230 (1943).   This congressional purpose underlies the provisions authorizing promulgation of the standard of identity for pasteurized orange juice and all other standards of identity, which are meant to "promot[e] honesty and fair dealing in the interest of consumers."  21 U.S.C. § 341.

After engaging in an extensive notice and comment period and hearing testimony, including testimony from Tropicana, the FDA established the standards of identity for pasteurized orange juice, canned orange juice, orange juice from concentrate and several other orange juice products.   Each standard of identity is unique.   The standard of identity for

3

pasteurized orange juice provides for the adjustment of orange oil in accordance with good manufacturing practices,[2] the adjustment of pulp, and the inclusion of two optional ingredients: concentrated orange juice and certain sweeteners.  21 C.F.R. § 146.140(a)-(c).  If an optional ingredient is added, the label must identify its inclusion.  *Id.* § 146.140(e)(1)-(2).  Finally, the standard requires that any other ingredients in the food, including added flavoring and coloring, be declared on the label.  *Id.* § 146.140(g).

In 1993, in connection with the standards of identity and labeling for orange juice, the FDA explained that "incidental additives," which are substances that are present in a food at insignificant levels and that do not have any "technical or functional effect in that food," do not need to be identified on the label.  58 Fed. Reg. 2850, 2852 (1993).  The FDA also clarified that "oil, pulp, and essence are not incidental additives" because they are "added to fruit juice products to accomplish specific technical functions in the manufactured juice products and are, therefore, not processing aids."  Finally, the FDA "advised" that:

> only if pulp, oil, or essence are added at levels significantly in excess of those found in the raw juice from which the juice is derived, or if they are obtained from an extraneous source, *i.e.*, from sources other than the fruit from which the juice is obtained (*e.g.*, produced synthetically or purchased through a flavor supplier for artificially adding flavor or texture to the juice), would they be ingredients subject to the ingredient labeling requirements for standardized foods, as set forth in part 130.

*Id*.  The CAC alleges that Tropicana adds flavor packs "supplied by a flavor company" to "artificially" add flavor – and create a signature flavor – to its NFC Juice and that these flavor

---

[2] Good Manufacturing Practices are established by the FDA pursuant to the agency's rulemaking authority of Sections 402 (unsanitary conditions prohibitions) and 701(a) (general rulemaking authority) of the FDCA.  21 U.S.C. §§ 342(a)(4) and 371(a).  *See also Nat'l Confectioners Ass'n v. Califano*, 569 F.2d 690 (D.C. Cir. 1978).

packs contain specific flavoring compounds in "levels significantly in excess of those found in the raw juice." Thus, flavor packs are an optional ingredient that Tropicana must disclose on the label.

### 2.    The NLEA's Express Preemption Provision.

The NLEA provides the basis for FDA regulation of nutrition labels and expressly preempts state laws that are narrowly directed at nutrition labeling and health claims only and "explicitly forecloses the possibility that state law would be impliedly preempted." *N.Y. State Rest. Ass'n v. N.Y City Bd. of Health*, 509 F. Supp. 2d. 351, 355 (S.D.N.Y. 2007). Under the express preemption section, states may not impose a standard of identity on a food subject to an FDA standard of identity, unless the state standard is identical to the federal standard and states may not impose requirements related to nutrition labeling (the statement of serving size, calories, etc., required on food packages) or requirements regarding labeling that characterizes the level of nutrients or makes health claims related to nutrients, unless those state requirements are identical to federal requirements. 21 U.S.C. § 343-(a)(1), (4)-(5).

Aside from these clearly delineated areas, the NLEA left in place the ability of the States to protect consumers from misleading labeling and deceptive advertising. Underscoring the point that the new labeling laws would "otherwise preserv[e] State regulatory authority," Congress added a statutory provision limiting the preemptive effect of the NLEA to state laws that fall within the NLEA's express preemption provision: The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343-1(a)] of the Federal Food, Drug, and Cosmetic Act. Pub. L. No. 101-535, § 6(c), 104 Stat. 2535, 2364 (21 U.S.C. § 343-1 note).

5

Both the legislative text and the legislative history point in the opposite direction of the far-reaching preemption Tropicana advocates.  Plaintiffs' claims simply do not fit the limited express preemption provision and Tropicana's arguments to the contrary distort the words of the statute and its primary purpose:   to provide greater clarity for consumers and additional protection – not to stand as a shield against state law liability for food manufacturers that engage in deceptive conduct to the detriment of consumers.

> **3.**    **The FDA Recognizes The Potential For "Natural" And "Pure" Claims In Food Marketing To Be Misleading, But Has Not Regulated These Terms.**

Two related aspects of FDA regulation, or non-regulation, are relevant here:  the agency's view regarding use of the terms "natural" and "pure" in food and beverage labeling.  The FDA does not define or regulate use of the terms "natural" or "pure."  However, the FDA recognizes that "natural" is used to convey that a food is somehow "more wholesome" and that "'natural' claims are confusing and misleading to consumers and frequently breach the public's legitimate expectations about their meaning."  56 Fed. Reg. 60421, 60466 (1991); *see also* 58 Fed. Reg. 2302, 2407 (1993).  "[B]ecause of resource limitations and other agency priorities," the FDA has not defined "natural" or "all natural," although the agency recognizes that doing so could "abate" "the ambiguity" that "results in misleading claims." 58 Fed. Reg. at 2407.

Although the FDA has no definition, it follows a policy of not taking enforcement action charging that a product labeled as "natural" is misbranded (*i.e.*, deceptively labeled) as long as the product has no added color, synthetic substances, or flavors.  *Id*.  (Natural and artificial flavors are defined in 21 C.F.R. § 101.22).  Under the agency's policy, "natural" means that "nothing artificial or synthetic has been included in, or added to, a food that would not normally be expected to be in the food." *Id*.

6

Similarly, the FDA has repeatedly stated that it is not regulating the term "pure."  *See* 58 Fed. Reg. 44059, 44061 (1993).  Notwithstanding its lack of regulation of the term, FDA has warned against using the term stating:

> With respect to the use of the term "pure" in the labeling of juices, the agency stated in [58 Fed. Reg. 2897, 2903] that comments to the July 2, 1991 juice labeling proposal (56 Fed. Reg. 30452) presented opinions on the word "pure," but they did not provide sufficient information on which to base a regulation. *FDA concluded that while there is no specific prohibition against the use of the terms "pure" and "natural," it has discouraged the use of these terms because they are ambiguous and may be misleading . . . However, the agency concluded that the juice labeling final rule was not the appropriate vehicle to consider whether terms such as "pure" and "natural" should be permitted on juice product labels.  The agency continues to hold this position.*

58 Fed. Reg. 44059 at 44061 (emphasis added).  Two years later, the FDA repeated its position that it continues to discourage use of the term "pure" on labeling.  *See* 60 Fed. Reg. 57076, 57099 (1995) ("The agency is not convinced that it should use its resources to define the term 'pure' at this time but will continue to discourage its use.").

## ARGUMENT

Dismissal is only appropriate where a defendant shows that there is "no material issue of fact to be resolved and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion to dismiss, a court assumes the factual allegations are true and construes them in the light most favorable to Plaintiff.  *Phillips v. County of Allegheny*, 515 F.3d 224, 333 (3d Cir. 2008).  Because Tropicana fails to meet this burden its motion must be denied.

Tropicana moves to dismiss Plaintiffs' claims on four grounds, each of which fails as a matter of law, fact, or both.  First, Plaintiffs' state law claims are not preempted by federal law, nor could they be as they fall outside the NLEA's express preemption provision.  Second, since Tropicana's conduct is prohibited by federal law, it cannot be shielded from liability by the safe

harbor doctrines of the various states.  Third, Plaintiffs have alleged that Tropicana has misled consumers and provided far less than what was promised to all consumers.  Fourth, Plaintiffs have adequately pled that Tropicana's statements are false and misleading to reasonable consumers and have pled the existence of an injury in fact by alleging that they would not have purchased the products at issue but for Tropicana's failure to properly label its products and its misleading claims.

## I.       Plaintiffs' Claims Are Not Preempted.

The touchstone of preemption under the NLEA is whether Plaintiffs' claims are grounded in concerns about nutrient labeling or health claims.  Tropicana disregards the gravamen of Plaintiffs' claims (which do not concern nutrient labeling or health claims), as well as the text and purpose of the FDCA and NLEA.  Under Tropicana's reading, consumers should never attempt to bring any claim regarding false advertising and misleading labeling for foods and beverages.  But neither the NLEA nor the authorities Tropicana cites support its argument. Rather, the text of the FDCA and NLEA, their legislative history, and their stated objectives reveal that they arose out of a deep congressional concern to protect consumers from economic adulteration and deception – not expose them to it and deny them redress.  Indeed, Tropicana's construction of the FDCA and NLEA would "have the perverse effect of granting complete immunity from . . .  liability to an entire industry that, in the judgment of Congress, needed more stringent regulation."  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996) (plurality opinion).

Tropicana falls far short of surmounting the "starting presumption that Congress does not intend to supplant state law,"  *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995), which is particularly strong in fields which the

states have traditionally occupied. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Wyeth v. Levine*, 129 S. Ct. 1187, 1196, n.3 (2009)

When considering the preemptive scope of federal law, courts recognize a strong presumption against preemption that may be overcome only by "clear and manifest" congressional intent to the contrary. *Medtronic,* 518 U.S. at 485. Thus, the starting point of any preemption analysis is the presumption that Congress did not intend to preempt state law. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("[W]e must begin our analysis by applying a presumption against preemption.") (citing *Cipillone v. Liggett Grp. Inc.*, 505 U.S. 504, 516 (1992)). This is particularly true in areas of traditional state regulation such as the sale of food. *Florida Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("[T]he States have always possessed a legitimate interest in 'the protection of [their] people against fraud and deception in the sale of food products at retail markets within their borders.").[3] A party seeking preemption of state law thus bears a heavy burden. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963)).

### A.      The NLEA Allows Recovery For False Advertising.

Tropicana flouts the standard of identity for pasteurized orange juice and federal regulations by injecting its NFC Juice with flavor packs while concealing their inclusion from consumers. *See* 21 C.F.R. § 146.140(g). The labeling and advertising of Tropicana's NFC Juice

---

[3] *See also Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010) ("food labeling has been an area historically governed by state law"); *accord Astiana* v. *Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) (citing *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the States ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products.").

as "100% Pure and Natural Orange Juice" coupled with Tropicana's failure to disclose these added ingredients dupes consumers.  Plaintiffs bring claims for violations of state consumer protection and deceptive trade practices acts, misrepresentations, omissions, breach of warranty, and unjust enrichment, none of which are foreclosed by, or run afoul of, the NLEA because they are not inconsistent with and do not add any requirement that is different from those requirements imposed by the NLEA.  Accordingly, Plaintiffs' claims are not preempted.

### 1.    Failure to Label Flavor Packs, Orange Essence and Orange Oil as "Ingredients."

Tropicana argues that its processing is appropriate and that it does not add back orange oil and orange essence compounds in levels significantly in excess of the orange oil and orange essence that has been intentionally removed or unavoidably lost.  Def. Br. at 8-12.  Plaintiffs allege that Tropicana's flavor packs saturate its NFC Juice with specific volatile components creating an overabundance of these compounds, CAC ¶¶ 8-12, to achieve a signature flavor.  *Id.* ¶¶ 155-161.

Contrary to Tropicana's suggestion, the standard of identity for pasteurized orange juice ***does not*** allow for the addition of flavor packs or the adjustment of orange essence for any purpose.  *See* 21 C.F.R. § 146.140(a)-(c) (allowing for the addition of pulp and orange oil in accordance with good manufacturing practices, which are established by the FDA, the optional addition of concentrated orange juice and frozen concentrated orange juice, and the optional addition of a sweetening ingredient).  To the extent that a manufacturer adds optional ingredients to the juice, the optional ingredients must be disclosed on the label.  *See* 21 C.F.R. § 146.140(e)(1)-(2).  Furthermore, because the flavor packs are added to the NFC Juice to "adjust[] the organoleptic characteristics of the juice" and "to achieve uniform quality and organoleptic

properties in the finished products," they have a technical or functional effect in the juice and must be labeled an ingredient.  58 Fed. Reg. 2850, 2852 (Jan. 6, 1993).

Tropicana corrupts the FDA's Finding of Facts in an attempt to convince this Court that it is free to secretly add flavor packs because orange oil and orange essence are lost during the processing of its NFC Juice.[4]  58 Fed. Reg. at 2852.  In doing so, Tropicana ignores that the FDA concluded in Finding of Fact 21 that there is "rarely a need for such addition" to pasteurized orange juice, 28 Fed. Reg. 10903 (Oct. 11, 1963), and that the FDA found that orange essence is only "unavoidably removed in the production of ***concentrated*** orange juice by evaporation."  28 Fed. Reg. 10904 (emphasis added).  There is no support for the undisclosed addition of orange essence to ***pasteurized*** orange juice, much less support for the hidden addition of flavor packs. *See* generally Regulatory Appendix and Request for Judicial Notice at Exhibit A.  Accordingly, Tropicana's arguments should be rejected.

Additionally, the cases that Tropicana cites purportedly supporting preemption of Plaintiffs' claims for failure to label the addition of added flavoring miss the mark.[5]  Each of those cases concerned attempts to impose ***additional*** labeling requirements on manufacturers.

---

[4]  As the standard of identity for pasteurized orange juice does not permit the adjustment of orange essence, this provision must refer to essence that is added to from concentrate oranges. *See* 146.146(a) (standard of identity for frozen concentrated orange juice permits "orange essence . . . to be added to adjust the final composition.").

[5]  In *In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008), the labeling of bottled water was in conformity with the FDA's standard of identity for purified water, and was thus preempted.  Here, the labeling is not in conformity with the standard of identity for pasteurized orange juice and therefore, cannot be preempted as it is not imposing requirements "beyond or different from" those required by the FDA's standard of identity.  *See also Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) where preemption existed when Plaintiffs imposed lactose intolerant disclosures on milk products that would "exceed the labeling requirements mandated by the standard of identity."  Again, Plaintiffs in this matter are not imposing any disclosures that are not already required under the FDA's standard of identity for pasteurized orange juice.

*See* Def. Br. at 12 (citing *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ("Plaintiff's argument would effectively allow plaintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards which includes avoiding a patchwork of different state standards."); *Id.* at 14 (citing *Pom Wonderful LLC v. The Coca Cola Co.*, 679 F.3d 1170, 1177 (9th Cir. 2012) (concerning disclosures not required by the FDA); *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108 n.5 (D.D.C. 2006) (noting that "Plaintiffs seek to supplement" labeling requirements)).   In contrast, Plaintiffs' claims concern the disclosure of ingredients (*i.e.*, flavor packs) that Tropicana must disclose under federal law. Therefore, those claims are not preempted.

### 2.   Failure to Disclose Presence of Natural Flavors.

Tropicana speciously argues that disclosure of its added flavoring may be misleading to because its added flavoring is made from oranges.   Def. Br. at 16.   Tropicana is not free to remove one unit of orange oil and replace it with one unit of whatever flavoring its outside flavor companies can create so long as the raw material for the added flavor packs was once an orange. Def. Br. at 7-11.   This is a red herring.   As the CAC alleges, flavor companies isolate, process, distill, and extract flavor compounds from oranges and chemically create additional flavor compounds not found in oranges and also inundate the juice with specific compounds in excess of the natural levels.   Further, contrary to what Tropicana suggests, the standard of identity for pasteurized orange juice makes clear that "each of the ingredients used" must be "declared on the label as required by" sections 21 C.F.R. §§ 101 and 130, and 21 C.F.R. § 146.140(g).   Thus, Tropicana must disclose the addition of its added flavoring in the statement of ingredients, whether or not that added flavoring is made from orange oil, orange essence, orange peels, or any combination of orange byproducts.   *See* 21 C.F.R. § 101.22(h).   Tropicana ignores these

regulations.  Indeed, Tropicana's interpretation of the federal regulations would render 21 C.F.R. § 146.140(g) meaningless.

Tropicana cannot:  (1) add a cocktail of selected flavor compounds; (2) ignore the federal regulations requiring the disclosure of added flavoring; and (3) deliberately mislead consumers. While Tropicana is free to add whatever ingredients it chooses to doctor its orange juice, if it does so, it must disclose the addition of flavoring.  *See* 21 C.F.R. § 146.140(g) (requiring that each ingredient be declared on the label).

### 3. "100 Percent Pure and Natural Orange Juice" Representations Are Not Preempted.

Plaintiffs' claims are premised, in part, on Tropicana's voluntary and misleading use of a "100% Pure and Natural Orange Juice" declaration on the front panel of its NFC Juice, which also violates the FDA's food labeling regulations concerning 100 percent juice products.  *See generally* 21 C.F.R. § 101.30.  Specifically, the FDA has explained that it defines a "100 percent juice" product in terms of volume as containing "1 part juice and no water."  58 Fed. Reg. 2915 (1993).  Plaintiffs allege that Tropicana adds flavor packs with high concentrations of water soluble liquids such as ethyl butyrate to its NFC Juice that have the effect of diluting, (*i.e.*, adding water to) these products.  CAC ¶¶ 95-154.  Tropicana's labeling is deceptive because it fails to consider – much less disclose – the water content in its flavor packs.  *See* 21 C.F.R. § 343(a) ("A food shall be deemed to be misbranded if its labeling is false or misleading in any particular.");  *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 90 (D.N.J. 2011) (denying motion to dismiss NJFCA claim based on representations on product label);  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (Cal. 2011) (false and misleading statements on product labels are actionable under California's UCL.).  Plaintiffs' claims seek to enforce state law

requirements prohibiting Tropicana from falsely representing that its NFC Juice is "100% Pure and Natural Orange Juice" when it is not — requirements that are identical to the federal requirements in Section 101.30(b)(1).

Even if its NFC Juice were "100% juice" — which Plaintiffs allege it is not — Tropicana's use of a "100 percent juice" declaration on the front panel of the NFC Juice without an accompanying disclosure of the presence of additional non-juice ingredients such as flavoring violates the federal regulations in Section 101.30.   Because Tropicana adds flavor packs, designed by flavor companies, to its NFC Juice to achieve a signature flavor — a technical function — the flavor packs constitutes an "ingredient."  *See* 58 Fed. Reg. 2852.  The FDA requires that such an ingredient be labeled as part of a 100 percent juice declaration.  *See* 21 C.F.R. § 101.30(b)(3).

As the FDA explained in the Final Rule enacting Section 101.30(b)(3), "[t]he [FDA] has advised repeatedly for a number of years that an unqualified 100 percent juice declaration on the principal display panel *is misleading* when the juice also contains non-juice ingredients."  58 Fed. Reg. 2897, 2915 (1993) (emphasis added) (citing Food and Drug Administration, State Cooperation Information Letter No. 48, June 26, 1950; Martin J. Stutsman, letter to City of Los Angeles Department of Aging, April 18, 1989; Marc J. Scheineson, letter to Bob Graham, United States Senator, May 14, 1992).  Plaintiffs' claims, similarly, seek to prevent Tropicana from misleading consumers.

### 4. Plaintiffs' Misrepresentation By Omission Claims Survive.

Plaintiffs' misrepresentation by omission claims endure for the same reason that their consumer protection act claims survive:  Tropicana's conduct violated federal requirements by failing to identify – misrepresenting by omission – the ingredients in its NFC Juice.  In so doing,

Tropicana's conduct also constituted misrepresentation by omission under various States' laws and is actionable.  *See, e.g.*, *Bildstein v. MasterCard Int'l, Inc.*, 2005 WL 1324972, at *10-11 (S.D.N.Y. June 6, 2005) (finding it "well-established" that omission-based claims under NY GBL 349 are appropriate "where the business alone possesses material information that is relevant to the consumer and fails to provide this information"); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1173 (C.D. Cal. 2011) ("[A] fraudulent omission is a basis for a CLRA claim.").

### 5.      Plaintiffs' Remaining Claims Survive.

Tropicana made explicit and voluntary representations about its NFC Juice, which consumers relied upon in selecting and paying for Tropicana's NFC Juice.  Plaintiffs allege Tropicana breached those warranties through its fraudulent and deceptive conduct.  Numerous courts have held that warranty claims like Plaintiffs' are not preempted because they arise from a voluntary contractual commitment undertaken by Tropicana, rather than the independent operation of state law.  *See, e.g.*, *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1325-27 (3d Cir. 1995), cert. den., 516 U.S. 815 (1995) (enforcement of statement on FDA approved label involves voluntary commitment and in any event, amounts to parallel requirement); *Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454 at *18, (D.N.J. June 25, 2012) (breach of warranty claim under the NLEA is "not preempted because the claim does not relate to requirements 'imposed under State law,' but rather imposed by the warrantor"); *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156 at *23-24 (E.D.N.Y. July 21, 2010) (same).

Plaintiffs assert that Tropicana has been unjustly enriched.  The NLEA does not preempt unjust enrichment claims as unjust enrichment claims impose no requirements, different or

additional, on Tropicana.  *See McLemore v. Regions Bank*, 682 F.3d 414, 428 (6th Cir. 2012)

("The principles underlying unjust enrichment do not interfere with ERISA.").

### B.      Tropicana Is Not Shielded From Liability By State Safe Harbor Laws.

Tropicana argues that if its express preemption claims fail, its representations concerning

its NFC Juice should be granted "safe harbor" because its alleged compliance with the FDCA

immunizes it from liability for making false or misleading claims.  This is nothing more than a

recycled implied preemption argument, which is barred by the NLEA.  Plaintiffs do not disagree

with the proposition that a safe harbor protects a defendant if it *has followed* the regulations.  But

this misses the point.  The CAC alleges that Tropicana *did not* follow the regulations as it failed

to declare added ingredients on its NFC Juice labels and then made false and misleading claims

about them.  Therefore, Tropicana is not entitled to any safe harbor.

### II.      Plaintiffs Adequately Allege A Reasonable Expectation That Tropicana NFC Juice Was "100% Pure And Natural Orange Juice."

Tropicana incorrectly argues that "Plaintiffs fail to allege any facts showing that they had

a 'reasonable expectation' . . . that was 'induced by a misrepresentation, and that this expectation

was not met.'"  Def. Br. at 18.  Plaintiffs relied on Tropicana's misrepresentations that its NFC

Juice was "100% pure and natural orange juice" in deciding to it at a price premium over less

expensive products."  CAC ¶¶ 18-24.  Plaintiffs' CAC also demonstrates how Tropicana failed to

meet the expectations induced by the misrepresentations–, which satisfies the pleading standards.

*Smajlaj*, 782 F. Supp. 2d at 99.  For example, the *Smajlaj* case*, cited by Tropicana, involved a

claim that "Campbell's 25% Less Sodium Tomato Soup" did not contain 25% less sodium than

Campbell's regular soup.  *Id*. at 100.  Many of the cans of soup were labeled "25% LESS

SODIUM THAN REGULAR CONDENSED SOUP," along with a picture of the defendant's

regular soup, which the plaintiffs relied upon in their belief that the soup had 25% less sodium

than Campbell's regular soup.  *Id*. at 89.   After noting that "[a] consumer has not experienced any injury if the consumer merely has some [unreasonable] expectation about a product that is not met," the court ultimately found that the defendant's misrepresentations *were* sufficient to form a basis, since "it was reasonable for [p]laintiffs to expect that the soups they were receiving had 25%...less sodium than the regular tomato soup."  *Id*. at 99-100.  Similarly, here, Plaintiffs "saw and read Tropicana's misrepresentations that Tropicana NFC Juice was '100% pure and natural orange juice,' and relied on such misrepresentations in deciding to purchase NFC Juice. *See* CAC ¶¶ 18-24.   Plaintiffs reasonably expected NFC Juice to be "100% pure and natural orange juice."   What they received, however, was juice that was heavily processed, colored, and flavored – a far cry from the "100% pure and natural orange juice" they reasonably expected.  By contrast, every other case cited by Tropicana involves unreasonable expectations that go significantly above and beyond any representations made by Tropicana.[6]   As noted, Plaintiffs' expectations in the present case were exactly what Tropicana represented – that Tropicana's NFC Juice would be "100% pure and natural orange juice."  Such expectations do not go above

---

[6] *In re Sony HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (defendant's claims that its televisions were of "high" or "superior" quality were "mere puffery" and insufficient for plaintiffs to reasonably expect that they would remain free from defects beyond the term of their express warranty); *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) (defendant's representations that its chickens were "humanely raised" was insufficient basis for plaintiffs' expectations that the chickens were humanely slaughtered); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) (defendant's representations "that HD DVD was format for today, tomorrow and beyond" was "mere puffery" and was an insufficient basis for plaintiffs' expectations that defendant was committed to producing HD DVD Players indefinitely); *Rooney v. Cumberland Packing Crop.*, 2012 WL 1512106 at *4 (S.D. Cal. Apr. 16, 2012) (plaintiffs were not reasonable in their expectations that defendant's product was unprocessed and unrefined sugar where the box "repetitively and clearly indicate[d] that the product contain[ed] pure natural cane turbinado sugar").

and beyond what Tropicana represented its product to be, and they do not require any interpretation of Tropicana's words.  They merely take Tropicana's representations at face value.

Tropicana also mischaracterizes Plaintiffs' expectations that Tropicana's NFC Juice was "freshly squeezed," that it "underwent no processing other than pasteurization," and that it was "less heavily processed than Recon."  Def. Br. at 19-21.  Tropicana incorrectly claims that Plaintiffs could not reasonably expect that the juice was "fresh squeezed" because they labeled their products as "pasteurized" as per FDA mandate.  Tropicana claims that "[t]he FDA requires this statement so that consumers can distinguish pasteurized orange juice from . . . fresh squeezed orange juice."  Def. Br. at 2.  With regard to FDA regulations however, courts have ruled that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth."  *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C. D. Cal. 2010) (plaintiff's expectation that the product did not have trans fat based on representations that it was "cholesterol free" and "healthy" was reasonable despite the fact that the nutritional label listed that it contained trans fat).  The fact that Tropicana labeled its NFC Juice as "pasteurized" should not "provide a shield for liability for the deception" that its product has no added flavoring or is "100% pure and natural orange juice."  *Williams,* 552 F.3d at 939.

Further, Tropicana makes unfounded assertions that Plaintiffs could not reasonably expect that the product was "fresh squeezed" or that it "underwent no processing other than pasteurization" due to necessities concerning the shelf life and processing of orange juice.

18

Tropicana has not and cannot cite to any authority holding that in order to form a reasonable expectation about a product, consumers must be well-versed in the intricacies of juice production. Tropicana's inability to deliver on its misrepresentations should not shield it from liability to consumers who reasonably took its misrepresentations at face value.

Likewise, Tropicana's efforts to contrast NFC Juice with Recon reasonably gave Plaintiffs the expectation that they were purchasing a product that was akin to fresh-squeezed orange juice. Plaintiffs and other consumers were reasonably justified in taking these efforts to mean that Tropicana NFC Juice was more pure and more natural than Recon in a meaningful and significant way. What they received, however, was a heavily processed product that did not live up to the representations made by Tropicana.

### III.    The Complaint Satisfies Rule 9(b).

Tropicana argues that the CAC fails to satisfy the Rule 9(b) pleading standard. Def. Br. at 21. To satisfy Rule 9(b), a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* In other words, "[a] plaintiff must support allegations of fraud with all the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where and how of the events at issue." *Hemy*, 2011 WL 6002463, at *13. While Tropicana maintains that Rule 9(b) requires that each of the Plaintiffs detail the precise geographic location, date and time they purchased one of its NFC Juice products, courts have consistently rejected that

interpretation.  *See, e.g.*, *Smajlaj*, 782 F. Supp. 2d at 104 (internal quotes omitted).  In *Smaljaj*, the Court noted:

> Courts have made clear that the law does not require specificity just for specificity's sake.  The level of particularity required is sufficient details to put Defendants on notice of the precise misconduct with which they are charged.  In other words, to satisfy the specificity requirement of Fed. R. Civ. P. 9(b), the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss.

*Id.*

Tropicana mischaracterizes the CAC to imply that it fails to provide the "what, when and where" of Defendant's misconduct.  However, Plaintiffs allege exactly what is required by Rule 9(b).  *See* CAC ¶¶ 18-24.

First, Plaintiffs adequately allege **what** was purchased.  Each and every Plaintiff alleges they purchased one or more of Tropicana's NFC Juice products during the Class Period.  *See* CAC ¶¶ 18-24.  Tropicana's misrepresentations occurred uniformly in advertisements for its NFC Juice and on the labeling and packaging of all of Tropicana's NFC Juice products during the class period.  *See, e.g.*, CAC ¶¶ 1, 6, 12, 43, 45-52.  The additional details Tropicana demands, specifically requiring Plaintiffs to identify each and every purchase of an NFC Juice product they made during the class period, are not required by Rule 9(b), and would do nothing to enhance Tropicana's ability to respond to the allegations in the CAC because the same misrepresentations were made in connection with every one of its NFC Juice products.

Second, Plaintiffs adequately allege **when** they saw Tropicana's misrepresentations and purchased the NFC Juice products and the frequency of those purchases during the Class Period.  *See, e.g.*, CAC ¶ 19 ("Plaintiff Martinucci purchased Tropicana NFC Juice approximately once a week.").  Contrary to Defendant's overbroad interpretation of *Yumul v. Smart Balance, Inc.,* 733

F. Supp. 2d 1117 (C.D. Cal. 2010), courts have repeatedly held that Rule 9(b) does not require a plaintiff to plead the exact date of when an alleged misrepresentation occurred when the misrepresentation was made uniformly and repeatedly throughout the class period.  *See, e.g.*, *Lieberson v. Johnson & Johnson Consumer Cos.*, 2011 U.S. Dist. LEXIS 107596, at *22 (D.N.J. Sept. 21, 2011) ("[I]t is fair for the Court to infer that Plaintiff saw the labels, at the least, at the time she purchased the Products."); *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (holding Rule 9(b) was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained the alleged misrepresentations); *Astiana v. Ben & Jerry's Homemade, Inc.,* 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) ("The 'when' is alleged as 'since at least 2006,' and 'throughout the class period.'").  Moreover, in contrast to *Yumul*, the CAC alleges Tropicana's misrepresentations remain consistent during the class period.  *See, e.g.*, CAC ¶ 18 ("Throughout the Class Period, Tropicana labeled and advertised its NFC Juice as being '100% pure and natural orange juice.'").  Requiring Plaintiffs to specify each and every date they purchased NFC Juice during the class period is not required by Rule 9(b), and would do nothing to assist Tropicana's ability to respond to the allegations in the CAC because the same misrepresentations were made in connection with every one of its NFC Juice products that were sold to Plaintiffs and the Class.  It is simply impractical to require Plaintiffs to remember the exact dates of small purchases that occurred months or years ago.  Accordingly, Tropicana's argument that Plaintiffs must plead the exact dates of their purchases should be rejected.

Finally, Plaintiffs adequately allege **where** Tropicana's misrepresentations are made. *See, e.g.*, CAC ¶ 24 ("Throughout the Class Period, Tropicana labeled and advertised its NFC Juice as being '100% pure and natural orange juice.'  Plaintiff Simic repeatedly saw and read

21

Tropicana's misrepresentations that Tropicana NFC Juice is '100% pure and natural orange juice.'").   The misrepresentations at issue here appeared on the labels, packaging and advertisements for Tropicana's NFC Juice throughout the Class Period.  The specific location of each and every store where Plaintiffs purchased one of the NFC Juice products has no effect on Tropicana's ability to respond to the allegations in the CAC because Tropicana made the same misrepresentations nationwide.

In some instances, the geographic location of a misrepresentation may be relevant.  *See*, *e.g., Federico,* 507 F.3d 188 (defendant's misrepresentations concerning plaintiff's return of rental equipment to a specific Home Depot location were made personally to the plaintiff by a Home Depot employee at that location).  That is not the case here.  When misrepresentations occur uniformly on product labeling and packaging sold in thousands of locations throughout the country, the *where* is on the labeling or packaging itself.  *See Astiana,* 2011 WL 2111796, at *6 ("The 'where' is on the ice cream package labels."); *Smajlaj,* 782 F. Supp. 2d at 104 (holding that for claims based on label content, plaintiffs were not required to specify the stores from which they bought the products).   Accordingly, the CAC adequately sets forth the misrepresentations at issue in the case and satisfies the Rule 9(b) pleading standard.

### A.    Plaintiffs Allege an Ascertainable Loss.

Tropicana argues that Plaintiffs have failed to establish that they suffered any ascertainable loss under New York and New Jersey consumer protection laws.  It is wrong on both counts.  First, Plaintiffs alleged that they did not receive the product that they bargained for, because they were deceived by Tropicana's representations.  *See, e.g*., CAC ¶ 172.  Second, Plaintiffs allege that Tropicana extracts a price premium based on these representations.  CAC ¶¶ 10-11, 19.  These allegations satisfy the injury requirement under the laws of both states.

22

The New Jersey Consumer Fraud Act does not require that a plaintiff prove actual out-of-pocket loss to be entitled to state a claim. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 36 (1994). An ascertainable loss may occur where a "consumer received less than what [he] was promised." *Union Ink Co. v. AT&T Wireless*, 352 N.J. Super. 617, 646 (App. Div. 2002). "That loss is ascertainable if it is measurable even though the precise amount of loss is not known[.]" *Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 564 (Law Div. 2001). Moreover, the payment of a price premium will satisfy the injury requirement. *See Smajlaj*, 782 F. Supp. 2d at 99.

New York GBL §§ 349 and 350 have a similar injury requirement. "To establish a cause of action pursuant to these two sections, a plaintiff is only required to demonstrate that the advertisement was misleading in a material respect and that he was injured, while an injured person has been defined as one who was misled or deceived by such an advertisement." *McDonald v. N. Shore Yacht Sales, Inc.*, 513 N.Y.S.2d 590, 593 (N.Y. Sup. Ct. 1987); *see also People v. Gagnon Bus Co., Inc.*, 30 Misc. 3d 1225A, 8-9 (N.Y. Sup. Ct. 2011) (Injury requirement of GBL § 350 was satisfied where defendant provided less than it had promised). New York also recognizes that the payment of a price premium satisfies the injury requirement. *See Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004).

Tropicana's reliance on *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (N.Y. 1999) is misplaced. While the CAC here alleges that Plaintiffs paid a premium based on the false representations at issue in the case, the plaintiffs in *Small* "d[id] not allege that the cost of cigarettes was affected by the alleged misrepresentation." *Id.* at 56. Thus, the CAC satisfies the injury and ascertainable loss requirements of both New York and New Jersey.

### B.      Plaintiffs' Omnibus Claim Is Well Pled.

Tropicana argues that Count XII brought under the consumer protection laws of the various states should be dismissed because Plaintiffs lack standing to bring those claims. This argument is misplaced and premature and thus fails because the issue is not one of constitutional standing, but rather one of predominance under Rule 23.

As explained in *Ramirez v. STI Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D.N.J. 2009), the standing question is not material to the inquiry. "The issue Defendants raise is one of predominance – whether questions of law or fact common to class members predominate over any questions affecting only individual members. This is an issue to be resolved at the class certification stage of the litigation." *Id*. at 505; *see also In re Bayer Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 2010 WL 1268196, at *15 (E.D.N.Y. Mar. 30, 2010) (denying motion to dismiss nearly identical 50-state claim, and noting: "Plaintiffs have outlined only the broad contours of the state law causes of action for states other than those in which they reside. That, however, is sufficient at this preliminary stage . . . .").

Tropicana cites *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir. 1987) in support of its standing argument, but that case is inapposite. In *Zimmerman*, the Third Circuit affirmed the district court's decision to dismiss plaintiff's complaint for lack of standing, where the plaintiff lacked federal subject matter jurisdiction. *Id*. at 1171.

In this case, federal subject matter jurisdiction is based on the Class Action Fairness Act ("CAFA"). CAC ¶ 26. Tropicana does not challenge the Court's jurisdiction under CAFA. Moreover, each of the Plaintiffs' state claims are brought pursuant to their home state's consumer fraud laws, while Count XII asserts claims under the consumer fraud statutes of the various states and the District of Columbia. CAC ¶¶ 199-320. Each of those statutes generally prohibits deceptive labeling and provides remedies to consumers affected thereby. Thus, the

detailed allegations concerning violations of the Plaintiffs' home state consumer fraud laws establish every element required to state a claim under the similar statutes referenced in Count XII.  Tellingly, Tropicana's motion does not identify any state statute that would ***permit*** the false labeling scheme alleged in the CAC.

## IV.     Plaintiffs' Unjust Enrichment Claim Is Well Pled.

Tropicana argues that Plaintiffs' unjust enrichment claim fails because "Plaintiffs have not—and cannot—plead that a direct relationship exists between themselves and Tropicana." *See* Def. Br. at 27.  In this context, Tropicana maintains that each Plaintiff must establish privity of contract with Tropicana.  *Id.*  Tropicana is wrong.  To establish a claim for unjust enrichment, "a plaintiff must show that defendant received a benefit and that retention of that benefit would be unjust."  *Fuller v. Pepsico, Inc.*, 2012 U.S. Dist. LEXIS 129119 (D.N.J. Sept. 11, 2012). Contrary to Tropicana's assertion, the direct relationship requirement "does not . . . preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer."  *Stewart v. Beam Global Spirits & Wine, Inc.*, 2012 WL 2523039, at *6-7 (D.N.J. June 29, 2012) ("where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationship between the parties under New Jersey law.")

Tropicana's reliance on *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994) and *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super 105, 108 (App. Div. 1966) is misplaced. Indeed, *Stewart* addressed both of these cases directly:

> The Court finds that *Callano* and *VRG Corp.* are factually distinguishable from the present case because they involved defendants who were innocent third parties . . . who did not unjustly retain a benefit, did not engage in allegedly fraudulent conduct, and had little to no dealings with the plaintiffs who sought relief against them . . . Here, the Beam Defendants are alleged to be something other than innocent third-parties. Plaintiffs allege that the Beam Defendants engaged in fraudulent conduct and misrepresented the "all-natural" nature of Skinny Girl Margarita through a direct nationwide advertising and marketing scheme which included the use of product packaging, taxi cab signboards, billboards, the Internet, and print publications specifically designed to entice consumers to buy Skinny Girl Margarita.

*Stewart*, 2012 WL 2523039, at *8.

Like the defendants in *Stewart* and unlike those in *Callano* and *VRG Corp.*, Tropicana is alleged "to be something other than an innocent third party." *Id.* Indeed, the CAC alleges that like the Beam defendants in *Stewart*, Tropicana launched a fraudulent nationwide advertising and marketing scheme on everything from product labels to the internet and print publications. CAC ¶¶ 43-60. Certainly, it is beyond argument that Tropicana receives the benefit of remuneration with every sale of its product to an unsuspecting consumer. And, it would be inequitable to permit Tropicana to retain this benefit where Plaintiffs have alleged that they would not have purchased Tropicana NFC Juice if they had known the truth about the product. Accordingly, the instant matter falls squarely within the New Jersey precedent of *Callano* and *VGR* and the facts of *Stewart*. Thus, Plaintiffs' claim for unjust enrichment should be upheld.

## V.    Plaintiff Simic Adequately Pleads a Claim for Punitive Damages.

Tropicana asserts that Plaintiff Simic's claim for punitive damages under Wis. Stat. § 895.043(3) (Count XI) should be dismissed because that statute "does not provide a separate cause of action for punitive damages." Def. Br. at 29. Yet, Tropicana fails to cite any authority for this proposition. In addition, Tropicana misconstrues Count XI as a "cause of action" when it is a separate claim for relief, which is permissible under Wisconsin law. Plaintiff Simic's claim

for punitive damages is predicated on Tropicana's egregious conduct in intentionally defrauding consumers like himself.  *See Dorr v. Sacred Heart Hosp.*, 597 N.W.2d 462, 477 (Wis. Ct. App. 1999) ("Because there are sufficient credible facts to allow a jury to find that Sacred Heart acted with intentional disregard for the Dorrs' rights, we conclude the trial court erred when it dismissed the Dorrs' claim for punitive damages.").  Tellingly, Tropicana does not argue that its alleged misconduct is not of a type that can support an award of punitive damages under Wisconsin law.[7]  Furthermore, as set forth above, Plaintiff Simic's consumer fraud claims are not preempted, have been adequately pled, and should not be dismissed.  Therefore, Count XI should not be dismissed.

## VI.    Plaintiff Simic Adequately States a Claim for Unfair Trade Practices Under Wisconsin Law.

Under Wisconsin Statute § 100.20(1) "methods of competition in business and trade practices in business shall be fair.  Unfair methods of competition in business and unfair trade practices in business are hereby prohibited" and allows for a private right of action.  *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 546 (Wis. Ct. App. 2005).  The Wisconsin Administrative Code prohibits the false, deceptive or misleading identification of food products.  Wis. Admin. Code ATCP § 90.02(3).  Tropicana violated the Wisconsin Administrative Code by misleadingly labeling its NFC juice and failing to disclose flavor packs as an ingredient.

Tropicana argues that the identification of the NFC Juice is not false, deceptive or misleading under Wisconsin Law because it satisfies the standard of identity for pasteurized

---

[7] *See Unified Catholic Sch. of Beaver Dam Educ. Ass'n v. Universal Card Services Corp.*, 34 F. Supp. 2d 714, 719 (E.D. Wis. 1999) ("Under Wisconsin law, plaintiff's right to punitive damages is not based on the plaintiff's theory of liability, but rather on the character of the defendant's conduct.").

orange juice.  Def. Br. at 25.  While a declaration of the commodity is required that "shall identify the commodity by its common or usual name," this declaration cannot be false, deceptive or misleading.  Wis. Admin. Code ATCP § 90.02(1).  By proactively identifying the NFC Juice as "100% pure and natural," Tropicana has falsely represented to consumers that the product is natural, when it is actually extensively processed and flavored.  This represents an identification that is false and misleading to consumers.  Thus, Plaintiff Simic's claim for unfair trade practices under Wisconsin law should not be dismissed because a valid cause of action exists.

**VII.   Plaintiff Simic Adequately States a Claim for Breach of Express Warranty Under Wisconsin Law.**

Plaintiff Simic has alleged that privity for his breach of express warranty claim exists in this case because "Tropicana . . .  expressly warranted that the NFC Juice was 100% pure and natural orange juice."  CAC at ¶ 196.  In addition, Plaintiff Simic has alleged that he "repeatedly saw and read Tropicana's misrepresentations . . .  [and that he] purchased Tropicana NFC Juice instead of less costly Minute Maid Recon because he believed and relied on Tropicana's misrepresentations that its NFC Juice is '100% pure and natural' in deciding to purchase Tropicana NFC Juice."  *Id*. ¶ 24.  Such allegations are sufficient to establish privity under Wisconsin law.  The court in *Ball v. Sony Electronics Inc.*, 2005 WL 2406145, at *5 (W.D. Wis. Sept. 28, 2005) explained:

> In *Paulson v. Olson Implement,* 107 Wis.2d at 517, 319 N.W.2d 855, a manufacturer not a party to the sales contract was held liable for breach of its express warranty under a theory that a distinct unilateral contract arose between the ultimate purchaser and the manufacturer providing the express warranty.  In subsequent cases where the buyer was aware of the manufacturer's warranty and relied on it at the time of purchase the courts have held it bound to

the warranty even though the manufacturer was not party to the sales contract.

In these cases the warranty was disclosed to and relied upon by the purchaser so as to become part of the basis of the bargain as required by Wisconsin Statute § 402.313. The warranty at issue here is directly between Tropicana and the consumer. That Plaintiffs purchased the product from third-party retailers does not change the privity of the parties to warranty. Plaintiffs do not plead, and Tropicana does not assert, that the warranty at issue is between the retailer and Plaintiffs, which is the only way privity between Plaintiffs and Tropicana could be extinguished.

In contrast, Tropicana does not cite a single case where a court dismissed a breach of warranty claim by a consumer of a food product against the manufacturer of said product for lack of privity.[8] Thus, Plaintiff Simic's breach of warranty claim should not be dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that Tropicana's motion to dismiss should be denied in its entirety.

---

[8] The two cases cited by Tropicana are easily distinguishable. First, *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208 (E.D. Wis. 1984) involved a tractor manufacturer ("Big Bud") who attempted to sue a manufacturer who made component parts ("Grad-Line") that were included in the transmission that Big Bud purchased from Twin Disc. That no privity between Big Bud and Grad-Line was found to exist is unsurprising because Big Bud was not purchasing parts from Grad-Line, it was purchasing a complete transmission from Twin Disc. In addition, unlike a retailer simply selling Tropicana's NFC Juice, Twin Disc used the parts made by Grad-Line and incorporated it into its finished product (*i.e.* the transmission) that it sold. Second, *Van's Realty & Const. of Appleton, Inc. v. Blount Heating and Air Conditioning, Inc.*, 134 Wis. 2d 452, 397 N.W.2d 156 (Wis. Ct. App. 1986) is an unpublished opinion "of no precedential value." In that case, no privity existed because Van's Realty purchased the heat pumps from Blount, the party that decided to sell and install the Lennox manufactured heat pumps that were not designed for use in Wisconsin's climate. Thus, Van's Realty could not assert that it received and relied on any warranty from Lennox.

29

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
*Attorneys for Plaintiffs*


By:   /s/ James E. Cecchi
      JAMES E. CECCHI

Dated:  November 13, 2012

Stephen A. Weiss
Jonathan Shub
Scott A. George
Parvin K. Aminolroaya
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, New York 10005
(212) 584-0700

Paul M. Weiss
Jamie E. Saltzman Weiss
Jeffrey A. Leon
Julie D. Miller
COMPLEX LITIGATION GROUP LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Scott A. Bursor
L. Timothy Fisher
Sarah N. Westcot
BURSOR & FISHER, P.A.
1990 North California Blvd, Suite 940
Walnut Creek, California
(925) 300-4455

Antonio Vozzolo
Christopher Marlborough
Jamie Mogil
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 983-9330

30

Michael R. Reese
Kim E. Richman
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York 10001
(212) 643-0500

Guri Ademi
Shpetim Ademi
ADEMI & O'REILLY LLP
3620 E Layton Ave
Cudahy, Wisconsin 53110
(414) 482-8000