NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DENNIS LYNCH, et. al., | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : | **OPINION** |
| v. | : | Civil Action No. 2:11-cv-07382 (DMC) (JAD) |
| TROPICANA PRODUCTS, INC., a division of PepsiCo, Inc., and PEPISCO, INC., | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon the motion of Defendant Tropicana Products, Inc. ("Tropicana" or "Defendant") to dismiss the Consolidated Amended Complaint ("CAC") of Plaintiffs Bernadette Salerno, Michael Martinucci, Sandra Jablons, Yxia Olivares, Angela Lewis, Dezzi Rae Marshall, and Aleksander Simic, individually, collectively, and on behalf of all purchasers in the United States of Tropicana orange juice (collectively "Plaintiffs"), pursuant to FED. R. CIV. P. 12(b)(6).   (Def.'s Mot. to Dismiss, Sept. 25, 2012, ECF No. 37).   Oral arguments were heard in this matter on May 14, 2013.   After considering the submissions of the parties and the the parties' respective oral arguments, and based upon the following, it is the finding of this Court that Defendant's Motion to Dismiss is **granted in part,** and **denied in part**.

## I.    BACKGROUND[1]

      The named Plaintiffs in this action are seven purchasers of Tropicana's orange juice who

---

1 The facts contained herein are taken from the Complaint and the parties' respective moving papers.

assert that Tropicana has been falsely claiming that its modified "not-from-concentrate" orange juice ("NFC juice" or "the product") is 100% pure and natural orange juice.   Despite Tropicana's "100% pure and natural claim," Tropicana's NFC juice, according to Plaintiffs, is processed, colored, and flavored.

Plaintiffs take issue, specifically, with the processes used to create Tropicana's NFC juice, including that it is pasteurized, deaerated, stripped of flavor and aroma, stored for long periods of time before available to the public, and colored and flavored before being packaged.   (CAC ¶ 6). Some of the processes that Plaintiffs believe deviate from natural processing include:

> (1) the removal of naturally present air from the intercellular spaces of the juice through the deaeration process;
>
> (2) the reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization;
>
> (3) long-term storage of deaerated and pasteurized juices for a year or longer;
>
> (4) the addition of chemically engineered "flavor packs" derived from sources other than those used to make the juice, including oils from peels of oranges imported from Mexico, Brazil and other foreign countries to mimic the flavor that natural orange juice has;
>
> (5) the addition of chemically engineered coloring derived from the flavedo or outer section of the orange peels from oranges other than those used to make the juice to enhance the color; and
>
> (6) the mixing of numerous types of orange cultivars from Florida and Brazil that are then colored and/or flavored to cover up quality, varietal, seasonal, and geographic differences in the fruit used to make Tropicana orange juice.

(CAC ¶ 6).

Plaintiffs allege that they saw and read Tropicana's misrepresentations that the NFC juice was "100% pure and natural" and relied upon these representations in deciding to purchase the product.   (CAC ¶¶ 18-24).   Plaintiffs pinpoint what they allege to be a misrepresentative image

of an orange pierced by a straw on Tropicana's NFC juice container and representations made on

Tropicana's website, including the statement that:

> Tropicana Pure Premium is 100% pure and natural juice, with 16 fresh-picked
> oranges squeezed into every 59 oz. container.   No water, sugar, or preservatives
> are ever added and it is never from concentrate, so you can get only the freshest,
> most delicious straight-from-the-orange taste.

(CAC ¶ 49).   Tropicana also utilizes marketing phrases such as "Grove to Glass" and states there

is "absolutely no space" for anything but sixteen fresh-squeezed oranges.   (CAC ¶¶ 51-52).

Plaintiffs assert that Tropicana's use of such marketing strategies confuses and misleads

consumers and that Tropicana understands that such phrasing suggests or implies that their product

is unprocessed, in its raw state, and without additives.   (CAC ¶¶ 54-55).   Tropicana does not

disclose the use of flavor packing on its label nor is it mentioned in its advertising.   (CAC ¶¶

147-48).

 Based on the foregoing factual allegations, along with the others contained in the

Complaint, Plaintiffs assert claims for: (1) unjust enrichment; (2) breach of express warranty; (3)

violation of the New Jersey Consumer Fraud Act; (4) violation of N.Y. GEN BUS. LAW § 349; (5)

violation of N.Y. GEN. BUS. LAW § 350; (5) violation of N.Y. GEN. BUS. LAW § 350; (6) violation

of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et. seq.*; (7) violation of

the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.;* (8) violation of the

California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (9) violation of the

Wisconsin Fraudulent Representations and Deceptive Trade Practices Law, WIS. STAT. §

100.18(1); (10) violation of the Wisconsin Unfair Methods of Competition and Trade Practices

Law, WIS. STAT. § 100.20(1); (11) punitive damages under Wisconsin Law; (12) violation of the

State Consumer Protection laws of various states; and (13) for injunctive relief and declaratory

relief pursuant to 28 U.S.C § 2201.

Oral arguments in this case were held on May 14, 2013.   The predominant focus of oral arguments was the parties' differing interpretations of the law concerning federal preemption of state labeling requirements, as it applies to pasteurized orange juice.

Aside from the preemption issue, several other claims are the subject of the instant motion: (a) whether Plaintiffs adequately allege a reasonable expectation that Tropicana NFC juice was "100% Pure and Natural; " (b) whether the Complaint satisfies Rule 9(b); (c) whether Plaintiffs' unjust enrichment claim is well pled; (d) whether Plaintiff Simic adequately states a claim for punitive damages; (e) whether Plaintiff Simic adequately states a claim for unfair trade practices under Wisconsin law; (f) whether Plaintiff Simic adequately states a claim for breach of express warranty under Wisconsin law.

## II.   LEGAL STANDARD

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).   However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).   "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).   Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to

4

relief above a speculative level." Twombly, 550 U.S. at 555.

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, Civ. No. 07-03129, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 129 S. Ct. at 1950). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950.

## III.   DISCUSSION

### A.   Preemption

The Food, Drug, and Cosmetic Act ("FDCA"), 21 § U.S.C. 301, as amended in 1990 by the Nutrition Labeling and Education Act ("NLEA"), provides that the FDA shall "promote the public health by promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner." 21 § U.S.C. 393(b)(2)(A). Encompassed within the FDA's mission is to ensure that "foods are safe, whole, sanitary, and properly labeled." 21 § U.S.C. 393(b)(2)(A).

Tropicana's motion focuses on the express preemption provision found in the Nutrition Labeling Education Act of 1990 ("NLEA"). During oral arguments, Tropicana's counsel asserted that the core claim made by Plaintiffs is that consumers were misled because Tropicana

5

did not disclose specific information about the production process for its pasteurized orange juice. (Oral Argument Tr. at 5:20-22).   Tropicana's counsel spoke of the six processing steps that Plaintiffs contend required disclosure and argued that each of those processing steps was contemplated by the FDA-established standard of identity in regulation of pasteurized orange juice.   (Oral Argument Tr. at 5:24-25, 6:2-4).   In Tropicana's view, the FDA standard requires only that the label identify that the product is pasteurized, a requirement that Tropicana has fulfilled.   (Oral Argument Tr. at 6:6-7).   Tropicana asserts, both in their briefings and during oral argument that, to ensure that federally-regulated foods like Tropicana's NFC juice would not be subject to a patchwork of state labeling requirements, Congress provided under the NLEA that the FDA's rule expressly and broadly preempts any state labeling rules that would impose requirements "not identical to" those imposed on such foods by the FDA.   (Def.'s Mot. Br. 12, Sept. 25, 2012, ECF No. 37-1; Oral Argument Tr. at 6:21-25).   Tropicana asserts that Plaintiffs improperly try to impose state labeling requirements, wherein FDA rules expressly preempt these alternative labeling rules.   (Def.'s Mot. Br. 14).   Therefore, according to Tropicana, Plaintiffs' claims are preempted because they would impose requirements not identical to the pasteurized orange juice standard of identity.

Plaintiffs, in turn, assert that the state law claims at issue here focus on the very thing that the federal regulations require: the truthful, complete, and accurate labeling of each ingredient contained in the product.   (Oral Argument Tr. at 20:9-12).   Plaintiffs argue that their state law claims are not preempted by federal law and could not be because they fall outside the NLEA's express preemption provision.   (Pls.' Opp'n Br.16, Nov. 13, 2012, ECF No. 41).   Aside from the clearly delineated areas specified by that legislation, Plaintiffs assert, the NLEA left in place the

state's ability to protect consumers from misleading labeling and deceptive advertising.   (Pls.'
Opp'n Br. 13).   Plaintiffs maintain that Tropicana is required to disclose its added flavoring in the
statement of ingredients on its label, regardless of whether the added flavorings are comprised of
orange oil, orange essence, orange peels, or any combination of orange by-products.   (Pls.' Opp'n
Br. 20).   Because Tropicana adds flavor packs to achieve a specific flavor in their NFC juice,
Plaintiffs argue that the flavor pack constitutes an ingredient.   (Pls.' Opp'n Br. 18-19).

      The NLEA provides the basis for FDA regulation of nutrition labels and expressly
preempts state laws that are narrowly directed at nutrition labeling and health claims only and
"explicitly forecloses the possibility that state law would be impliedly preempted."   (Pls.' Opp'n
Br. 13).   The Supremacy Clause, U.S. CONST., Art. VI, may entail pre-emption of state law either
by express provision, by implication, or by a conflict between federal and state law.   New York
State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 635, 654
(1995) (citing Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development
Comm'n, 461 U.S. 190, 203-204 (1947)).   Despite this, the Supreme Court has "never assumed
lightly that Congress has derogated state regulation, but instead has addressed claims of
pre-emption with the starting presumption that Congress does not intend to supplant state law."
Id. (citing Maryland v. 655 Louisiana, 451 U.S. 725, 746 (1981)).   The presumption that Congress
does not supplant state law is especially strong in areas which the states have traditionally
occupied.   Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947); see also Wyeth v. Levine,
555 U.S. 555, 565 (2009).   It may, however, not be applicable "where the interests at stake are
'uniquely federal' in nature."   Fellner v. Tri-Union Seafoods, LLC, 539 F.3d 237, 248 (3d Cir.
2008) (citing Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 348 (2001)).   The

preliminary presumption that Congress does not intend to supplant state law is overcome only by "clear and manifest" congressional intent to the contrary.   Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1995).   Therefore, a party seeking preemption of state law bears the burden of proving such intent.   See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317 (1981).

The FDCA authorizes the FDA to establish "definitions and standards of identity for foods."   Am. Frozen Food Institute v. Mathews, 413 F. Supp. 548, 550 (D.D.C. 1976), aff'd on other grounds, 555 F.2d 1059 (D.C. Cir. 1977).   The FDA has established the standards of identity for pasteurized orange juice, canned orange juice, orange juice from concentrate, along with several other juice products.   See 21 C.F.R. § 146.140(a)-(c).   Each standard of identity is unique.   The standard for pasteurized orange juice provides for the adjustment of orange oil and pulp in accordance with good manufacturing practices, and the inclusion of two optional ingredients: concentrated orange juice and certain sweetening ingredients.   21 C.F.R. 146.140(a)-(c).   If an optional ingredient is added, the standard requires that the label shall bear a statement that the given ingredient has been added.   21 C.F.R. § 146.140(e)(1)-(2).

The NLEA provides the basis for FDA regulation of nutrition labels and expressly preempts state laws narrowly directed at nutrition labeling and health claims only and "explicitly forecloses the possibility that state law would be impliedly preempted."   N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 509 F. Supp. 2d 351, 355 (S.D.N.Y. 2007).   Under the express preemption section, states may not impose a standard of identity on a food that is subject to the FDA standard of identity, unless the state standard is identical to the federal standard.   21 U.S.C. § 343-1(a)(1),(4)-(5).   However, the NLEA allows for state regulation designed to protect consumers from misleading labeling and deceptive advertising, provided it falls outside of the

8

aforementioned delineated areas.   Plaintiffs argue that none of their claims are foreclosed by, or fun afoul of, the NLEA because they are not inconsistent with and do not add a requirement distinct from the NLEA.

In order to resolve this dispute, the Court must first analyze the FDA's labeling requirements for NFC juice meeting the standard of identify for "pasteurized orange juice" and then determine whether the state law causes of action asserted by Plaintiffs impose any "requirement . . . that is not identical to" federal regulations.   21 U.S.C. § 343-1(a)(1).   Plaintiffs' state law causes of action are preempted if they are found to "impose[ ] a broader obligation than [federal law]."   In re PepsiCo, Inc., Bottled Water Marketing and Sales Practices Litigation, 588 F.Supp.2d 527, 534 (S.D.N.Y. 2008) (citing Bates v. Dow Agrosciences LLC, 544 U.S. 431, 453 (2012)).   While undergoing a preemption analysis, courts recognize a strong presumption against preemption that may be overcome only by a "clear and manifest" congressional intent to the contrary.   Medtronic, Inc. v. Lohr, 518 U.S. 470, 487 (1996).   Here, the Court finds that Tropicana has not overcome the starting presumption that Congress does not intend to supplant state law for purposes of this motion to dismiss.   See N.Y. State Conf. of Blue Cross & Blue Shield v. Traveler's Ins. Co., 514 U.S. 645, 654 (1995).   Plaintiffs allege Tropicana has not complied with the labeling requirements set forth in the standard of identity established by the FDA.   Tropicana acknowledges that state laws are not preempted when identical to federal requirements.   (Oral Argument Tr. at 8:23-25).   Case law relied upon by Defendants to the contrary is not applicable to the extent that it involves an attempt to impose additional labeling requirements on manufacturers or product labeling that is in conformity with the standard of identity, as such regulations would fall within the parameters of federal preemption.   See In re

9

PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig., 588 F. Supp. 2d 527 (S.D.N.Y. 2008) (involving a label on a bottle of water that was subject to preemption as it was in conformity with the FDA's standard of identity); Mills v. Giants of Md., LLC, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) (finding state law was preempted because it applied disclosures on milk products that would "exceed the labeling requirements mandated by the standard of identity"); Hairston v. S. Beach Beverage Co., Civ. No. 12–1429, 2012 WL 1893818 (C.D. Cal. May 12, 2012) (determining "[p]laintiff's argument would effectively allow [p]laintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards which includes avoiding a patchwork of different state standards").   The FDA has determined that a state requirement is not identical if it directly or indirectly imposes obligations or provides provisions concerning the labeling of foods that are "not imposed by," or "differ from those specifically imposed by" applicable federal law.   See 21 C.F.R. 100.1

Of the five of the six processing steps discussed in the amended complaint, Plaintiffs narrow in on one in particular, the addition of flavor packs into Tropicana orange juice.   Plaintiffs allege that Tropicana adds flavors and colors to its orange juice with flavor packs, but fails to disclose these added ingredients.   Plaintiffs assert that their state law claims are premised on Tropicana's false and misleading labeling and a failure to disclose added ingredients, thereby making them identical to federal regulations.   (Oral Argument Tr. at 20:5-7).   The state regulations focus on the same requirement contained in the federal regulations, i.e. accurate and complete labeling of a product's ingredients.   The standard of identity of pasteurized orange juice requires the disclosure of the added flavoring in a product's statement of ingredients.   See 21 C.F.R. § 101.22(h).   Because Plaintiffs' claims involve an alleged failure to meet the

requirements of federal law, and not a standard that deviates from or adds to such requirements, these claims are not preempted.

Tropicana next argues that Plaintiff's state law claims also fail for another reason, namely that the manufacturing processes and labeling practices Plaintiffs challenge are permitted by the FDA regulations and therefore these claims are precluded under the safe harbor doctrine. (Def.'s Mot. Br. 25). Tropicana contends that, as it has complied with the FDA's regulations on processing for its juice, the safe harbor doctrine serves to bar Plaintiffs' claims. (Def.'s Mot. Br. 25). This issue is interconnected with the federal preemption question. As Plaintiffs acknowledge, the safe harbor doctrine may be applicable in instances where a defendant is recognized to follow applicable federal regulations, however here, as discussed above, Plaintiffs have alleged that Tropicana has failed to follow FDA regulations by not declaring ingredients in the juice labels and making false and misleading claims regarding the content of the orange juice. Under such circumstances, Plaintiffs claims are not barred by this doctrine for purposes of the instant motion.

**B.    Whether Plaintiffs Sufficiently Plead Reasonable Expectations**

Tropicana argues that even if the Court does not find Plaintiffs' claims are preempted, they should still be dismissed because Plaintiffs fail to allege facts supporting essential elements of their claims. Firstly, Tropicana cites to Plaintiffs' failure to allege facts demonstrating a reasonable expectation that the processing of NFC juice was all-natural that was "induced by a misrepresentation, and that this expectation was not met." Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011).

For a statement to be deemed "deceptive or misleading, consumers must have held

11

expectations about the matter in question" and those expectations must be defeated.   In re Sony HDTV Television Litig., 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010).   Specifically, Tropicana contends that, as the NFC juice states in all capital letters "pasteurized" on the front of the label, it is not reasonable for a consumer to claim that she was misled into believing the statement, "100% pure and natural orange juice" meant it was akin to fresh-squeezed orange juice.   (Oral Argument Tr. at 14:23-25, 15:1-4).   Plaintiffs counter by asserting that the failure to disclose the flavor packs, coupled with the marketing campaign for the product as "100% pure and natural" create an impression in consumers' minds that the product in question is not highly processed, flavored, and colored.   (Oral Argument Tr. at 21: 19-25).   While this Court has recognized that "[a] consumer has not experienced any injury if the consumer merely has some expectation about a product that is not met[,]" it has found the prerequisite reasonable expectation where it was "induced by a misrepresentation, and [plaintiffs'] expectation was not met."   Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011).   Plaintiffs have alleged that they relied on Tropicana's representation that the NFC juice sold was "100% pure and natural orange juice" in deciding to purchase the product.   (CAC   ¶¶ 18-24).   This Court finds truth in Plaintiffs' assertion that many of the cases relied on by Tropicana to refute Plaintiffs' claim of reasonable expectations involve representations that rise to a level beyond those made by Tropicana.   See In re Sony HDTV Television Litig., 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (wherein defendants claims that its televisions were of "superior" or "high" quality were considered "mere puffery" and did not create a reasonable expectation); Hemy v. Perdue Farms, Inc., Civ. No. 11–888, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) (finding Plaintiffs could not claim a reasonable expectation that they believed that defendant's chickens were humanly slaughtered based on defendants'

representations they were "humanely raised"); In re Toshiba Am. HD DVD Mktg. & Sales

Practices Litig., Civ. No. 08–939, 2009 WL 294008, at *9   (D.N.J. Sept. 11, 2009) (finding

defendant's representations that HD DVD was format for today, tomorrow, and beyond" to be

"mere puffery," insufficient to establish plaintiffs reasonable expectation that defendants would

continue to manufacture the product indefinitely); Rooney v. Cumberland Packing Crop., Civ. No.

12-0033, 2012 WL 1512106, at *4 (S.D. Cal. Apr. 16, 2012) (plaintiffs were not reasonable in

their expectations that defendant's product contained unprocessed, unrefined sugar, where the box

"repetitively and clearly indicate[d] that the product contain[ed] pure natural cane turbinado

sugar").

      In addressing FDA regulations, courts have ruled that "reasonable consumers should [not]

be expected to look beyond misleading representations on the front of the box to discover the

truth."   Williams v. Gerber Products Co., 552 F.3d 934, 939 (9th Cir. 2008) ("We do not think that

the FDA requires an ingredient list to correct those misinterpretations and provide a shield for

liability for the deception.").   That Tropicana has labeled its juice "pasteurized" does not

inherently "provide a shield for liability for the deception" that its product has no added flavoring

or is 100% pure and natural orange juice.   See Williams, 552 F.3d at 939.   Similarly, this Court

agrees that there is no supporting evidence for the proposition that consumers of Tropicana's NFC

juice, including Plaintiffs, understood the intricacies relating to the shelf life and processing of the

orange juice so as to destroy a reasonable expectation of the product's freshness.   As this Court

touched on during oral arguments, allowing this matter to progress to the discovery phase will

provide the court with a more detailed answer to the question of whether the named Plaintiffs

believed they were getting fresh, as opposed to pasteurized orange juice.   (Oral Argument Tr. at

13

13:13-15).

### C.   Alleged Pleading Deficiencies in Individual Causes of Action

#### 1.   Satisfaction of Rule 9(b)

Tropicana next argues that Plaintiffs fail to satisfy the Rule 9(b) pleading standard.   For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity.   FED. R. CIV. P. 9(b) ("Rule 9(b)").   Plaintiffs must satisfy the heightened pleading requirements of Rule 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."   FED. R. CIV. P. 9(b).   The heightened pleading standard gives defendants "notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."   In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3d Cir. 1996).   Essentially, "[a] plaintiff must support allegations of fraud with all the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where, and how of the events at issue."   Hemy v. Perdue Farms, Inc., Civ. No. 11–888, 2011 WL 6002463, at *13 (D.N.J. Nov. 30, 2011) (internal citations omitted).

For purposes of the instant motion, Plaintiffs have satisfied Rule 9(b).   Plaintiffs have alleged the specifics of what was purchased, i.e. each Plaintiff alleges they have purchased one or more of Tropicana's NFC juice cartons during the Class Period.   (CAC ¶¶ 18-24).   Plaintiffs further allege that misrepresentations by Tropicana occurred uniformly in advertisements for its NFC juice and on the labeling and packaging of all Tropicana's NFC juice.   (CAC ¶¶ 1, 6, 12, 43, 45-52).   Plaintiffs assert, and this Court agrees, that had Plaintiffs identified each individual

14

purchase of NFC juice, it would have no significant impact on Tropicana's ability to respond to the allegations in the CAC.   Plaintiffs sufficiently allege when they viewed Tropicana's advertisements, that those advertisements were misrepresentations which incited them to purchase Tropicana's orange juice, and the frequency with which they purchased the NFC juice. Moreover, courts in this District have recognized that even where a plaintiff has not specifically alleged when she viewed a product's label, the Court may reasonably infer that Plaintiff saw the labels at the time of the product's purchase, in instances where the plaintiff has alleged that the labels "reinforced" her decision to purchase the products.   See Lieberson v. Johnson & Johnson Consumer Companies, Inc., 865 F. Supp. 2d 529, 540 (D.N.J. 2011).   In this case, Plaintiffs allege that "[t]hroughout the Class Period, Tropicana labeled and advertised its NFC Juice as being '100% pure and natural orange juice.'"   (CAC ¶ 18).   Further, Plaintiffs assert that the alleged misrepresentations appeared on the labels, packaging, and advertisements for Tropicana's orange juice throughout the Class Period.   Therefore, the "where" requirement may be satisfied by the misrepresentations allegedly contained on Tropicana's labels or packages; there need not be strict identification of one particular store location where it is alleged that the labeling and packaging in question was sold in thousands of locations throughout the country.   See Astiana v. Ben & Jerry's Homemade, Inc., Civ. No. 10–4387, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011); Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 104 (D.N.J. 2011).   Plaintiffs have alleged they have paid a price premium to Tropicana due to the alleged mislabeling.   (CAC ¶ 172).   For purposes of the instant motion, Plaintiffs have satisfied the Rule 9(b) pleading standard.

## 2.  Ascertainable Loss or Injury

Tropicana argues that Plaintiffs have failed to establish that they suffered an ascertainable loss in accordance with New York and New Jersey consumer protection laws (Counts III, IV, and V).   Plaintiffs allege that they did not receive the product for which they bargained as a result of Tropicana's misrepresentations.   (See, e.g., CAC ¶ 172).   Plaintiffs contend that Tropicana extracts a premium price for the product in question, based on the fact that the product is represented as fresh-squeezed.   (See, e.g., CAC ¶¶ 10-11, 19).

The New Jersey Consumer Fraud Act ("NJCFA") does not require a plaintiff to prove actual out-of-pocket loss in order to successfully state a claim.   Cox v. Sears Roebuck & Co., 138 N.J. 2, 36 (1994).   An ascertainable loss may occur where a "consumer received less than what [he] was promised."   Union Ink Co. v. AT&T Wireless, 352 N.J. Super. 617, 646 (App. Div. 2002).   The payment of a price premium may satisfy the injury requirement.   See Smajlaj, 782 F. Supp. 2d at 99.

New York law poses a similar requirement.   See N.Y. G.B.L. §§ 349 and 350.   New York law requires that "[t]o establish a cause of action pursuant to [Sections 349 and 350] a plaintiff is only required to demonstrate that the advertisement was misleading in a material respect and that he was injured, while an injured person has been defined as one who was misled or deceived by such an advertisement."   McDonald v. N. Shore Yacht Sales, Inc., 513 N.Y.S. 2d 590, 593 (N.Y. Sup. Ct. 1987).   Courts in New York have also recognized that the payment of a heightened price in reliance on a misrepresentation may satisfy the injury requirement.   See Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 416 (S.D.N.Y. 2004).   Therefore, for purposes of a motion to dismiss, Plaintiffs have satisfied the injury and ascertainable loss requirements of both New York and New Jersey.   Therefore, Defendants' Motion to Dismiss in

16

regards to Counts III, IV, and V is denied.

### 3.   Unfair Trade Practices and Punitive Damages Claims Under Wisconsin Law

Plaintiff Simic, the Wisconsin Plaintiff, asserts claims under two Wisconsin statutes: (1) Wisconsin Statute § 100.18 (Count IX), which prohibits false and deceptive advertising for "merchandise;" and (2) Wisconsin Statute § 100.20 (Count X), which prohibits "unfair trade practices" that violate orders from the Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP").   Tropicana alleges that Plaintiff Simic has failed to state a claim under either statute.   This Court agrees as to Count IX, but disagrees as to Count X.

As it pertains to the first statute, § 100.18, the Wisconsin Court of Appeals has held that the statute is not applicable to "articles of food."   See Gallego v. Wal-Mart Stores, Inc., 707 N.W.2d 539, 544 (Wis. Ct. App. 2005) ("When the 'statutory background' of §§ 100.18 and 100.183 is considered, it becomes clear that the legislature does not intend 'merchandise' in § 100.18 to include 'articles of food'").   That Court recognized another Wisconsin statute, § 100.83, to be applicable to advertising involving "articles of food," and that that statute did not provide for a private right of action.   Id.   Therefore, Plaintiff Simic's Wisconsin Statute § 100.18 (Count IX) claim must be dismissed.

Wisconsin Statute § 100.20(2)(a) gives the DATCP authority to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair."   Section 100.20 also authorizes a private right of action:

> Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

WIS. STAT. § 100.20(5).   The Complaint alleges that Plaintiff Simic suffered a pecuniary loss due

17

to Tropicana's violation of WIS. ADMIN. CODE § ATCP 90.02.   (CAC ¶¶ 259-60).   ATCP 902

requires clear and conspicuous labeling as to a product's identity and requires that the

aforementioned declaration of identity from being false, deceptive, or misleading.   WIS. ADMIN.

CODE § ATCP 90.02.   Tropicana argues disclosure is not required; rather it notes that WIS. STAT.

§ 100.20(5) grants a private right of action only for the violation of an "order issued under this

section." (Def.'s Mot. Br. 33).   The Court of Appeals of Wisconsin has rejected that argument,

finding that:

> The clear import of this note is that the DATCP views its authority for all of the regulations
> included within ch. ATCP 90 as flowing from numerous, overlapping statutory directives,
> one of which is the legislature's directive under Wis. Stat. § 100.20(2)(a) that the
> department may enact rules forbidding unfair trade practices. Moreover, the department
> plainly expresses its position in the introductory note that violations of any of the
> provisions in ch. ATCP 90 may be pursued by private parties under § 100.20(5).

Gallego v. Wal-Mart Stores, Inc., 707 N.W.2d 539, 547 (Wis. Ct. App. 2005) (affirming

the circuit court's dismissal of plaintiff's claim under WIS. STAT. § 100.18 but reversing the

dismissal of plaintiff's WIS. STAT. § 100.20(5) claim for the aforementioned reasons).   This Court

thus similarly finds that, here, Plaintiff Simic's WIS. STAT. § 100.20 claim survives, while dismissal

is appropriate for the § 100.18 claim.

   Plaintiff Simic further seeks punitive damages under WIS. STAT. § 895.043(3) (Count XI).

(CAC at ¶ 60).   Simic alleges that Tropicana intentionally pursued and continues to pursue a

fraudulent course of action intended to profit at the expense of consumers.   (CAC ¶ 60).   Tropicana

asserts that Simic may not successfully state such a claim as his consumer fraud claims, detailed

above, are the only arguable basis for which he may seek punitive damages.   This Court agrees that

the punitive damage claim is inappropriate here as an independent count for punitive damages;

"boilerplate allegation[s] that a defendant acted in intentional disregard of plaintiff's rights [are] not

sufficient." <u>Unified Catholic Sch. of Beaver Dam Educ. Ass'n v. Universal Card Servs. Corp.</u>, 34 F. Supp. 2d 714, 719 (E.D. Wis. 1999).   Thus, Plaintiff Simic's claim for punitive damages under Wisconsin law is also dismissed.

### 4.  Plaintiff Simic's Breach of Express Warranty Claim

Finally, Tropicana argues that dismissal is also appropriate for Simic's breach of express warranty claim (Count II) due to a lack of privity between the parties.   Simic asserts that privity has been established due to the factual allegation contained in the Complaint that "Tropicana . . . expressly warranted that the [not-from-concentrate] Juice was 100% pure and natural orange juice."  (CAC ¶ 196).   In addition, Simic has alleged that he "repeatedly saw and read Tropicana's misrepresentations . . . [and that he] purchased Tropicana [not-from-concentrate "NFC"] Juice instead of the less costly Minute Maid Recon because he believed and relied on Tropicana's misrepresentations that its NFC Juice is '100% pure and natural' in deciding to purchase Tropicana NFC Juice."  (CAC ¶ 24).

Wisconsin courts have recognized that, in certain instances, a manufacturer who is not a party to the sales contract may be held liable for a breach of express warranty, under the theory that a unilateral contract arose between the ultimate purchaser and the manufacturer.   <u>Ball v. Sony Electronics, Inc.</u>, Civ. No. 05-307, 2005 WL 2406145, at *5 (W.D. Wis. Sept. 28, 2005) (citing <u>Paulson v. Olson Implement</u>, 107 Wis. 2d 510, 517 (Wis. 1982)).   Plaintiffs do not plead a warranty between the retailer and Plaintiffs and plead such a relationship between them and the manufacturer, Tropicana.   Thus, Plaintiffs' breach of express warranty claim must survive this stage.

### 5.  Unjust Enrichment Claim

Tropicana also alleges that Plaintiffs' unjust enrichment claim, contained in Count I, should be dismissed because Plaintiffs have not, and are unable, to plead a direct relationship exists between Tropicana and themselves.   (Def.'s Br. 25).   Plaintiffs, in turn, argue that Tropicana overstates the requirements of unjust enrichment under New Jersey law.   (Pls.' Br. 33).

Under New Jersey law, to establish a claim for unjust enrichment, "a plaintiff must show that defendant received a benefit and that retention of that benefit would be unjust."   Fuller v. PepsiCo, Inc., Civ. No. 11–4989, 2012 WL 3990635, at *4 (D.N.J. Sept. 11, 2012) (citing VRG Corp. v. GKN Realty Corp., 641 A.2d 519 (N.J. 1994)).   The requirement that a direct relationship between plaintiff and defendant be established "does not . . . preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer."   Stewart v. Beam Global Spirits Wine, Inc., Civ. No. 11–5149, 2012 WL 2523039, at *6-7 (D.N.J. June 29, 2012) (recognizing "where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retail sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationships between the parties under New Jersey law.").   In determining whether a claim for unjust enrichment has been sufficiently plead, a distinction has been made between defendants who were alleged to have misrepresented the product at the heart of litigation and defendants who were innocent third parties "who did not unjustly retain a benefit, did not engage in allegedly fraudulent conduct, and had little to no dealings with the plaintiffs who sought relief from them."   Id.   Plaintiffs allege, and for the purposes of the instant motion the Court must accept as true, that Tropicana launched a marketing campaign in which it misrepresented its juice as "100%

20

pure and natural orange juice," when it was the product of extensive processing, coloring, and flavoring.   (CAC ¶¶ 43-60).   Further, Plaintiffs allege that "Tropicana unscrupulously capitalizes on consumers' heightened demand for natural products by deceptively marketing its NFC juice." (CAC ¶ 60).   Accordingly, Plaintiffs' unjust enrichment claim may proceed and the motion to dismiss Count II of the CAC is denied.

### D.    Alleged Violations of State Consumer Protection Laws of Various States

In Count XII of the Complaint, Plaintiffs allege a purported claim for "Violation of the State Consumer Protection Laws of Various States."   (CAC ¶¶ 266-320).   As Tropicana points out, Plaintiffs do not assert these claims on behalf of any plaintiff in particular, stating only that they are made on behalf of "Plaintiffs in the Consumer Protection Subclass."   (CAC ¶ 267).   The Complaint contains no definition for the "Subclass," however, states that Count XII pertains specifically to states for which there is no named Plaintiff—i.e. Alaska, Arizona, Delaware.   (See CAC ¶¶ 272-317).   Plaintiffs are not permitted to bypass the pleading requirements through bare bones allegations on behalf of a putative class containing no named Plaintiffs.   See Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992) (finding no plead facts that demonstrated how the harm in question would produce imminent injury to the named plaintiffs); Lewis v. Casey, 518 U.S. 343, 357 (1996) (examining whether named inmate plaintiff in the litigation suffered from the inadequacy in which the suit empowered the court to remedy); O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see also Zimmerman v. HBO Affiliate Grp., 834 F.2d 1163, 1169 (3d Cir, 1987) ("It is well settled that to be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim.").   Based on the foregoing, this Court finds that Plaintiffs have not sufficiently alleged factual allegations to sustain Count XII.   That Count is accordingly dismissed.

21

## IV.    CONCLUSION

For the foregoing reasons, Tropicana's motion is **granted in part** and **denied in part**.    An

appropriate Order accompanies this Opinion.

6/12/13

cc:            All Counsel of Record
               Joseph A. Dickson, U.S.M.J.

Dennis M. Cavanaugh, U.S.D.J.

22