UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: TROPICANA ORANGE JUICE MARKETING AND SALES PRACTICES LITIGATION**<br><br>**MDL 2353**<br><br>**This Document Relates To:**<br>**ALL CASES** | Civ. No. 2:11-07382<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs bring this class action against Defendant Tropicana Products, Inc. ("Defendant"), alleging numerous violations of common law and state consumer protection laws, in connection with Defendant's sale of orange juice. This matter comes before the Court on the parties' motions to exclude the testimony of three proffered expert witnesses prior to the class certification phase of litigation. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the parties' motions are **DENIED**.

## I. BACKGROUND

The named plaintiffs ("Plaintiffs") are citizens from New Jersey, New York, California, and Wisconsin, who purchased Defendant's "not-from-concentrate" orange juice from December 2005 to the present. *See* Am. Compl. ("Compl.") ¶¶ 17–24, ECF No. 32. Defendant is a division of Pepsi Co., Inc., which is a Delaware corporation with its principal place of business in Purchase, New York. *Id.* at ¶ 25. The Court assumes the parties' familiarity with the claims, facts and procedural history of the case.

On September 16th, 2016, the Court dismissed without prejudice all of the parties' pending motions before the Court, including three motions to exclude expert testimony, except for Plaintiff's motion to compel discovery. *See* ECF No. 195. On December 19th, 2016, the Court denied Plaintiffs' motion to compel, thereby providing the parties' an opportunity to refile the instant motions. *See* ECF Nos. 205, 206. Notably, the Court ordered that all expert challenges be filed prior to Plaintiffs' motion for class certification.

Accordingly, on January 13, 2017, Defendant moved to exclude the expert testimony of Dr. Arvind Narayanan. *See* Mot. to Preclude the Test. of A. Narayanan ("Narayanan Mot."), ECF No. 209. On January 18th, 2017, Plaintiffs moved to exclude the expert testimonies of Dr. Keith Ugone and Dr. Ravi Dhar. *See* Mot. to Exclude the

Test. of K. Ugone ("Ugone Mot."), ECF No. 214; Mot. to Strike the Survey of and Exclude Ops. of R. Dhar ("Dhar Mot."), ECF No. 217. The parties timely filed oppositions and reply briefs. *See* Br. in Opp'n to Def.'s Mot. to Preclude Test. ("Narayanan Opp'n"), ECF No. 220; Reply to Pls.' Resp. to Def.'s Mot. to Preclude Test. ("Naryanan Reply"), ECF No. 224; Br. in Opp'n to Pls.' Mot. to Strike the Survey of and Exclude Ops. ("Dhar Opp'n"), ECF No. 227; Br. in Opp'n to Pls.' Mot. to Exclude Test. ("Ugone Opp'n"), ECF No. 230; Resp. in Supp. of Pls.' Mot. to Strike and Exclude ("Dhar Reply"), ECF No. 236; Resp. in Supp. of Pls.' Mot. to Exclude ("Ugone Reply"), ECF No. 238.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, therefore, expert testimony will be admissible only if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The proponent of expert evidence must demonstrate its admissibility by a preponderance of the evidence. *Id*. at 592 n. 10.

The Supreme Court has held that when determining whether expert testimony is reliable, courts may consider (1) whether a theory or technique "can be (and has been) tested;" (2) "whether the theory or technique has been subject to peer review or publication;" (3) "the known potential rate of error;" and (4) whether there is "general acceptance" in the methodology in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. Importantly, "[t]he factors drawn from *Daubert* . . . are neither exhaustive nor applicable in every case." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008) (citations and quotations omitted). The *Daubert* factors apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702).

In serving its "gatekeeper function" and assessing the reliability of an expert's methodology, the Court must be mindful that in order to be admissible, an expert's method need not be the "best" method or one that is demonstrably correct. "Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145–46 (3d Cir. 2000) (citation omitted). "Rule 702 . . . has a liberal policy of admissibility." *See Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). "Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

*Daubert* applies equally to the class certification phase of a class action as it does during trial. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) ("[A] plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*."). Critically, however, "[t]he main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious [expert] testimony." *See In re Zurn Pex Plumbing Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). The trial court's "gatekeeping function" is, therefore, reduced "'when the gatekeeper is keeping the gate only for himself.'" *See id*. (quoting *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) (noting that the "usual concerns" of *Daubert*—*i.e.*, "keeping unreliable expert testimony from the jury"—are not present during a bench trial). At class certification, the district court serves as the trier-of-fact and no jury is present. Accordingly, the Court will weigh the parties' expert challenges in light of this consideration.

### III. DISCUSSION

In general, the Court finds that the parties' motions are essentially premature arguments for and against class certification. Neither party presents a concerted challenge to the qualifications of the experts they would have this Court exclude. Instead, they make various arguments purportedly attacking the reliability and relevance of each expert's testimony; however, the Court is well equipped to consider any such deficiencies at class certification and afford them the appropriate weight in deciding whether Plaintiffs have met their Rule 23 burden. *See Brown*, 415 F.3d at 1269. For this reason, the Court will deny all three motions to exclude the expert testimonies. In the interest of completeness, the Court will briefly address each motion below.

#### A. Defendant's Motion to Exclude Dr. Narayanan

Dr. Narayanan is an Assistant Professor in the Department of Computer Science at Princeton University who specializes in "privacy, anonymity, and computer security research." *See* Walsh Decl., Ex. 1, Expert Decl. of A. Narayanan ¶¶ 1–2, ECF No. 211. He submits, and Defendant does not challenge, that he is "a recognized authority in de-anonymization, which is a strategy in data mining in which anonymous data is cross-referenced with other sources of data to re-identify the anonymous data source." *Id*. at ¶ 4. Plaintiffs retained Dr. Narayanan in this case to provide a method in which to verify claims submitted by purported consumers of Tropicana Pure Premium ("TPP") using data collected by retailers at the point of sale from loyalty card programs and member only clubs. *Id*. at ¶ 9. Dr. Narayanan proposes a five-step methodology, which includes the development of a computer software program, to verify whether individual claimants did in fact purchase TPP during the class period. *See id*. at ¶¶ 21–34.

Defendant primarily challenges the reliability of Dr. Narayanan's proposed verification methodology on the ground that it has never been tested on real point-of-sale data from any retailer of TPP. *See* Narayanan Mot. at 6–16. While this may be true, Defendant does not contest Dr. Narayanan's ability to perform his proposed methodology in the event that such data exists. Instead, Defendant focuses on the fact that Dr. Narayanan has not secured the requisite data and, therefore, does not know if it exists. *See id.* Defendant's arguments are clearly directed at Plaintiffs' ability to ascertain the class as required under Rule 23. It is true that Plaintiffs must do more than "merely propose a method of ascertaining a class without evidentiary support that the method will be successful" at class certification. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). But that is a question for certification, not for the admissibility of Dr. Narayanan's testimony.

Defendant also weakly argues that Dr. Narayanan's proposed methodology does not "fit" the case—*i.e.*, it is not relevant. *See* Narayanan Mot. at 16–18. Defendant repeats the same points about Dr. Narayanan's assumption that point-of-sale data exists and that he can properly incorporate it into his methodology. Again, this is an argument against ascertainability, which the Court will entertain at the proper time. The Court is persuaded that Dr. Narayanan is qualified and that his proposed methodology would be both reliable and relevant to class certification, assuming the availability of the requisite data. Defendant's motion is, therefore, **DENIED**.

### B. Plaintiffs' Motion to Exclude Dr. Ugone

Dr. Ugone is an economist who provides economic, financial, and/or damages-related consulting services to his clients. Ecklund Decl., Ex. 2, Decl. of K. Ugone ("Ugone Rep.") ¶¶ 1, 18, ECF No. 216. He specializes "in the application of economic principles to complex commercial disputes," and is "generally retained in cases requiring economic, financial, and/or damages-related analyses." *Id.* at ¶ 19. Defendant retained Dr. Ugone to perform economic analyses and criticisms of Plaintiffs' damages model, the expert opinions of Drs. Weir and Toubia, and the feasibility of Plaintiffs' proposed method of identifying putative class members. *See id.* at ¶ 5.

Plaintiffs first contend that Dr. Ugone is not qualified to offer opinions on Plaintiffs' proposed methodology of ascertaining putative class members because he is not a computer scientist and cannot credibly opine on computer databases or rebut Dr. Narayanan's opinions. *See* Ugone Mot. at 5–6. The Court is aware that Dr. Ugone is not a computer scientist; however, Dr. Ugone has extensive experience in commercial litigation, including numerous class actions, and he is well equipped to opine on several issues. *See* Ugone Rep. at ¶¶ 17-20. The Court is capable of weighing Dr. Ugone's opinions in light of the fact that he is not an expert in computers.

Plaintiffs next argue that Dr. Ugone's testimony should be barred because his opinions are contrary to law and, therefore, do not "fit" the case. *See* Ugone Mot. at 6–11. Dr. Ugone's primary criticism of Plaintiffs' damages model is that it fails to account for individualized factors in the purchasing decisions of potential putative class members. *See*

4

Ugone Rep. at ¶¶ 24–40. Plaintiffs contend that the "law is unequivocal; one who makes a false statement to another is liable." *See* Ugone Mot. at 7. The multiple state and common laws at issue in this case are far from unequivocal and their meanings are clearly in dispute. *See* Ugone Opp'n at 11–12. If Plaintiffs prove to be correct, then the Court is capable of disregarding those portions of Dr. Ugone's opinions, if any, that contradict the law; however, any such portions do not negate his *economic* analyses and criticisms of Plaintiffs' damages model, which are squarely within his expertise.

Finally, Plaintiffs argue that Dr. Ugone improperly narrates the evidence and that his opinions would be unfairly prejudicial to the jury, which warrants exclusion under Rule 403. *See* Ugone Mot. at 11–13. As noted above, there is no jury present at class certification. The Court's "gatekeeping function" is, therefore, less of a concern and these arguments are easily rejected. *See Brown*, 415 F.3d at 1269. Accordingly, Plaintiffs' motion to exclude Dr. Ugone is **DENIED**.

### C. Plaintiffs' Motion to Exclude Dr. Dhar

Dr. Dhar is a professor at the Yale School of Management with expertise in "consumer behavior, consumer psychology, branding, marketing management, marketing strategy, survey methodology and evaluation." *See* Ecklund Decl., Ex. 2, Expert Rebuttal Report of Prof. R. Dhar ("Dhar Rep.") ¶¶ 1, 4, ECF No. 219. Defendant retained Dr. Dhar to "evaluate the reasons that putative class members purchase [TPP]," to rebut certain conclusions reached in the Toubia report, "to opine on whether putative class members demonstrate a common perception of [TPP]," and to opine on "whether preferences of putative class members vary." *See* Dhar Rep. at ¶¶ 8–10.

A large portion of Dr. Dhar's report focuses on criticism of Plaintiffs' expert, Dr. Olivier Toubia. *See id.* at ¶¶ 24–40. Dr. Toubia was retained by Plaintiffs to conduct a survey determining consumers' perceptions of TPP and estimate the impact of those preferences when consumers learned that TPP contained added natural flavoring and had been in storage for more than one month and up to one year. *See* Ecklund Decl., Ex. 3, Expert Report of Dr. O. Toubia ("Toubia Rep.") ¶ 7. According to Dr. Dhar, the Toubia survey's use of "leading" questions was problematic because it "provide[d] a specific understanding of a product attribute that respondents might not ordinarily attend to in the marketplace," thereby inflating the percentage of respondents who purported to believe that TPP does not contain added flavoring or is stored for a certain period of time. *See id.* at ¶ 36. As part of his response, Dr. Dhar performed his own survey, incorporating open-ended questions, as a counterweight to the leading questions used in Dr. Toubia's survey. *See* Dhar Rep. at ¶¶ 41–49.

Plaintiffs first move to strike the Dhar survey on the basis that it is improper rebuttal evidence, which Dr. Dhar should have produced in an initial expert report. *See* Dhar Mot. at 7–11. Defendant counters, in part, by arguing that the Dhar Report is a "responding" report and, therefore, not held to the same standard as other rebuttal reports. *See* Dhar Opp'n at 4–6. Defendant's argument is ridiculous. Defendant entitled Dr. Dhar's report "Expert **Rebuttal** Report of Professor Ravi Dhar." It was clearly intended to rebut the

5

methodology of the Toubia survey and the Court will hold it to the standard of rebuttal evidence. *See* Fed. R. Civ. P. 26(a)(2)(C).

Nonetheless, Plaintiffs' argument also fails. "The admissibility of evidence in rebuttal is committed to the discretion of the trial judge." *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974). "The proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party." *Id*. In the Third Circuit, there is no "bright-line rule that every opinion by an expert must be preliminarily stated in [an initial] report, or forever be precluded." *See Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006). Thus, Dr. Dhar's survey is admissible if it was conducted "to explain, repel, counteract or disprove" Dr. Toubia's survey, which the Court finds to be the case. *See Chrzanowski*, 502 F.2d at 576; *Crowley v. Chait*, 322 F. Supp. 2d 530, 550–52 (D.N.J. 2004).

Plaintiffs also argue that Dr. Dhar's opinions should be excluded because they are contrary to law and do not "fit" the case. *See* Dhar Mot. at 11–15. This argument mirrors Plaintiffs' last challenge to Dr. Ugone and the Court rejects it for the same reasons. The Court finds Dr. Dhar's report and testimony to be reliable and relevant to the issue of class certification. Accordingly, Plaintiffs' motion to exclude Dr. Dhar is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, the parties' motions to exclude the expert testimonies of Drs. Narayanan, Ugone and Dhar are **DENIED**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 31, 2017**