UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  TROPICANA ORANGE JUICE MARKETING AND SALES PRACTICES LITIGATION<br><br>MDL 2353<br><br><br>**This Document Relates To:**<br>**ALL CASES** | Civ. No. 2:11-07382<br><br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs bring this class action against Defendant Tropicana Products, Inc. ("Defendant"), alleging numerous violations of common law and state consumer protection laws, in connection with Defendant's sale of orange juice. This matter comes before the Court on Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion for class certification is **DENIED**.

### I. BACKGROUND

The Court assumes familiarity with the claims, facts and procedural history of the instant case and writes solely for the parties' benefit.[1] On June 22, 2017, Plaintiffs filed a motion to certify the class, appoint class representatives and appoint class counsel. *See* ECF No. 270. In their supporting memorandum of law, Plaintiffs argue that their claims "are the poster child for aggregate trial under Rule 23" because the conduct that they will prove is common to every potential class member. *See* Pls.' Mem. of Law in Supp. of Mot. ("Pls.' Mem.") 1, ECF No. 271. At its core, Plaintiffs' argument centers on the alleged mislabeling and misbranding of Defendant's orange juice product, Tropicana Pure Premium ("TPP"). Plaintiffs intend to prove the following: (1) Defendant adds ingredients, namely natural flavoring, to TPP in violation of the Food and Drug Administration's ("FDA") standard of identity for pasteurized orange juice; (2) Defendant's TPP labeling

---

[1] For a more complete recitation of recent procedural history, see the Court's opinion filed on December 19, 2016. ECF No. 205.

1

fails to disclose all ingredients, as required by law; (3) Defendant's marketing of TPP as "pure, natural and fresh from the grove" is "demonstrably false" given the added flavoring and is, therefore, uniformly misleading; and (4) Defendant's conduct entitles Plaintiffs and all other class members to damages. *See id*. at 2–3.

Plaintiffs define their proposed class (the "Class") as "[p]urchasers from California, New York, New Jersey, and Wisconsin of [TPP] from either Members Only clubs or Loyalty Card Stores from January 1, 2008 to June 22, 2017." Plaintiffs also "seek to certify four individual subclasses for California, New York, New Jersey and Wisconsin." *Id*. at 3. Plaintiffs submit that their theory of liability compels class treatment because "either TPP conforms to the standard of identity or it does not, either flavors are added or they are not." *Id*. at 2.

Defendant naturally opposes certification. Defendant advances four main points. First, Defendant argues that individual inquiries as to materiality, causation and loss are required to establish that a TPP consumer is in fact a member of the Class. *See* Def.'s Mem. of Law in Opp'n to Pls.' Mot. ("Def.'s Opp'n") 2, ECF No. 281. Second, the named Plaintiffs are neither typical nor adequate representatives of the Class because none of these individuals referenced the supposed regulatory infraction, which is now the primary theory of liability that they advance. *Id*. at 2–3. Third, Plaintiffs fail to meet Rule 23(b)(3) because the Class members are not ascertainable and Plaintiffs' damages model does not align with their new theory of liability. *Id*. at 3. Fourth, Plaintiffs' claim for injunctive relief under Rule 23(b)(2) fails because they lack standing to pursue such relief and because the primary relief sought is individualized monetary damages. *Id*. at 3–4. Plaintiffs also filed a reply (ECF No. 285), both parties filed sur-replies (ECF Nos. 292 & 295), and Plaintiffs filed a notice of supplemental authority (ECF No. 297).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides for class certification if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Courts commonly refer to these requirements as numerosity, commonality, typicality, and adequacy. *See In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009).

In addition to fulfilling Rule 23(a), a plaintiff must also meet one of the requirements set forth in Rule 23(b). *Id*. The requirements at issue here emanate from Rule 23(b)(2) and (b)(3). Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[.]" Fed. R. Civ. P. 23(b)(2). The rule "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Rule 23(b)(3) permits certification only if "questions of law or

2

fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *Id.* at 309 (footnote and quotation marks omitted). Each Rule 23 requirement must be established by a preponderance of the evidence. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores*, 564 U.S. at 351, courts consider merits questions only to the extent that they are relevant to determining whether Rule 23 prerequisites have been met. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (internal citations omitted).

## III.   DISCUSSION

The Court will first address the Rule 23(a) requirements before turning to Rule 23(b)(2) and (3). Ultimately, the Court finds that Plaintiffs meet Rule 23(a) but fall short of their obligations under Rule 23(b). The Court, therefore, denies class certification.

### A. Plaintiffs' Claims Satisfy Rule 23(a)

The Court finds that Plaintiffs' claims meet the four requirements under Rule 23(a). As an initial matter, the Court notes that Defendant does not address Plaintiffs' arguments concerning numerosity and commonality. Nonetheless, the rule requires the satisfaction of each requirement and the Court will consider each in turn.

#### i. Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Plaintiffs' class definition incorporates any person who purchased TPP within the four named states for a period of approximately nine years. *See* Pls.' Mem. at 3. Clearly, the number of potential class members could reach into the hundreds of thousands, if not millions, rendering joinder impracticable. Plaintiffs' claims satisfy numerosity.

#### ii. Commonality

"Commonality is a consideration of whether there are 'questions of law common to the class[.]' Commonality is satisfied when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (quoting Fed. R. Civ. P. 23(a)(2)) (citation omitted). Plaintiffs identify four questions common to the Class: "(1) whether TPP conforms with the standard of identity for pasteurized orange juice; (2) whether TPP contains undisclosed flavors; (3) whether TPP's label is misleading; and (4) whether the conduct of Defendant is such that Plaintiffs and other members of the Classes are entitled

to damages." Pls.' Mem. at 26. Plaintiffs argue that the claims of each class member will universally turn on the answers to these questions because Defendant's conduct was the same to every member and, therefore, "the lawfulness of [Defendant's] conduct is not unique to any members of the Classes." *Id*. at 27. The Court agrees. Plaintiffs' claims satisfy commonality. *See Reyes*, 802 F. 3d at 486 ("A court's focus must be on whether the defendant's conduct [is] common as to all of the class members[.]") (quotation and citation omitted).

### iii. Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) (citation omitted). "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Id*. (quoting *Baby Neal*, 43 F.3d at 58. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Id*. at 227–28 (quotation and citation omitted).

Plaintiffs argue that the named Plaintiffs' claims "are *identical* to those of the Classes in all respects except for the amount of damages" because they "arise from the same events, the same course of Defendant's conduct, and are based on the same legal theories[.]" *See* Pls.' Mem. at 27–28. Defendants disagree, arguing that the named Plaintiffs' claims are atypical because none of the named Plaintiffs "testified that their decision to purchase TPP turned on the standard of identity or labeling regulations." *See* Def.'s Opp'n at 29. Individual purchasing decisions, however, do not make Plaintiffs' claims atypical. Each of the named Plaintiffs' claims arise from their individual purchases of TPP and the injuries alleged universally arise from Defendant's conduct—*i.e.*, the purported mislabeling of TPP. That Plaintiffs have shifted their theory of liability does not change the fact that the named Plaintiffs' claims and all potential claims by putative class members will hinge on that same theory of liability. Plaintiffs' claims, therefore, satisfy typicality. *See Baby Neal*, 43 F.3d at 57–58.

### iv. Adequacy

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). "First, [it] tests the qualifications of the counsel to represent the class." *Id*. (quotation omitted). "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.'" *Id*. (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

4

Plaintiffs submit that their claims satisfy adequacy because Plaintiffs retained competent counsel and the named Plaintiffs' interests directly align with those of all putative class members. *See* Pls.' Mem. at 29. Defendants counter that Plaintiffs failed to satisfy adequacy because their revised Class definition jettisoned most of the original class they sought to represent. *See* Def.'s Opp'n at 30. Defendant does not contest the competence of Plaintiffs' counsel and the Court finds that counsel is qualified.

It is true that Plaintiffs' new Class definition includes only those individuals who purchased TPP in "Members Only" clubs or "Loyalty Card" stores, but this does not defeat adequacy. Plaintiffs are entitled to define the Class as broadly or as narrowly as their evidence supports. *See In re Neurontin Antitrust Litig.*, No. 02-cv-1830, 2011 WL 286118, at *1 n.4 (D.N.J. Jan. 25, 2011) ("Because Plaintiffs are entitled to define the class period as broadly as their evidence supports, for purposes of this Motion, the Court will consider Plaintiffs' amended class definition." (internal quotation and citation omitted)). In their reply, Plaintiffs explained that they narrowed their Class definition to meet the existing Third Circuit precedent requiring a showing of "ascertainability." *See* Pls.' Reply at 20. Absent such a revision, Plaintiffs would likely fail to meet the ascertainability requirement and the Class would not be certifiable. Indeed, the Court would likely find counsel's representation *inadequate* in such a scenario. As it stands, the Court agrees with Plaintiffs that the named Plaintiffs' interests are directly in line with those of the proposed Class for the same reason that their claims are typical: their claims are identical and, therefore, their interests are identical. Plaintiffs' claims satisfy adequacy.

### B. Plaintiffs' Claims Fail to Satisfy Rule 23(b)(3) & (b)(2)

Plaintiffs' primarily seek relief in the form of monetary damages under Rule 23(b)(3). In the alternative, Plaintiffs seek injunctive relief under Rule 23(b)(2). The Court, therefore, will first address Plaintiffs' Rule 23(b)(3) arguments before turning to Rule 23(b)(2).

> i. <u>Plaintiffs' unjust enrichment, express warranty and NJCFA claims require individualized proof and, therefore, individual issues predominate.</u>

Rule 23(b)(3) requires that Plaintiffs satisfy both predominance and superiority. Predominance "is even more demanding than Rule 23(a)." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem*, 521 U.S. at 623). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id*. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (quotation omitted). Predominance is satisfied where "the common, aggregation-enabling, issues in

5

the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *See id*. (quotation omitted).

As a threshold matter, Plaintiffs' common law and New Jersey consumer fraud claims are plainly unsuitable for class certification because each of these claims requires individualized proof. The Court addresses each, beginning with unjust enrichment.

### 1. *Unjust Enrichment*

In New Jersey, unjust enrichment is a quasi-contract claim, which requires a plaintiff to show "both that the defendant received a benefit and that retention of that benefit without payment would be unjust." *See VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994). It further requires that "plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *See id*. California, New York and Wisconsin similarly define unjust enrichment. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[Unjust enrichment] describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request. The return of that benefit is the remedy typically sought in a quasi-contract cause of action." (quotations omitted)); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." (quotation omitted)); *Watts v. Watts*, 405 N.W.2d 303, 313 (Wisc. 1987) ("[A]n action for recovery based upon unjust enrichment is grounded on the moral principle that one who received a benefit has a duty to make restitution where retaining such a benefit would be unjust.").

"Plaintiffs' theory of liability on unjust enrichment is that all consumers have either not received what they paid for or have overpaid for what they received – a misbranded food – and that Defendant, aware of the governing standard, added flavors that are not permitted." Pls.' Mem. at 31. Plaintiffs submit their unjust enrichment claims are uniform because the focus of each claim "places a spotlight directly on Defendant's conduct and TPP's label." *See id*. Plaintiffs' theory also assumes a critical fact: "Defendant labeled TPP as the standardized food pasteurized orange juice, but TPP does not conform to the standard and is therefore illegally sold." *Id*. In other words, Plaintiffs uniformly paid for pasteurized orange juice but they did not receive it and Defendant, therefore, was unjustly enriched.

Defendant argues that unjust enrichment is unsuitable for class-wide proof because it requires the Court to consider the reasons behind each individual's purchase of TPP. *See* Def.'s Opp'n at 23–24. According to Defendant, the record reflects that purchasers bought TPP for a variety of reasons and that "many purchasers indisputably received the benefits that they sought from their purchases of TPP." *See id*. at 24. Consequently, common questions do not predominate over individualized concerns.

The Court agrees with Defendant. Plaintiffs' theory misapprehends the quasi-contract nature of an unjust enrichment claim. A defendant is only unjustly enriched if a plaintiff does not receive the benefit of the bargain for which he or she paid. Logic compels an inquiry as to what exactly was the benefit of the bargain in a given transaction. In the instant case, common questions would predominate Plaintiffs' unjust enrichment claims if Plaintiffs showed, beyond a preponderance of the evidence, that each of the named Plaintiffs and the putative class members bought TPP because they believed it to be pasteurized orange juice. The record does not so reflect. In fact, the named Plaintiffs' own testimony shows quite the opposite: they each testified that they purchased TPP for various reasons, only one of whom mentioned its pasteurized quality. *See* Decl. of L. Walsh in Supp. of Def.'s Opp'n ("Walsh Decl."), ECF Nos. 281-1–281-4, Ex. 1, Lewis Dep. 24:2–6, 56:18–57:8 (price point, vitamin and calcium content, and pasteurized quality); Ex. 2, Martinucci Dep. 69:5–20 (taste and vitamin content); Ex. 3, Marshall Dep. 31:6–34:8 (taste and folic acid content due to pregnancy); Ex. 4, Olivares Dep. 100:4–24 (taste and vitamin content); Ex. 5, Salerno Dep. 36:17–22 (name recognition); Ex. 6, Simic Dep. 31:16–32:19, 40:7–41:25 (promotional offering); *see also id.*, Ex. 8, Ugone Decl., App'x C (summarizing deposition testimony of the named Plaintiffs and Defendant); Decl. of D. Ecklund ("Ecklund Decl."), Ex. D, ECF No. 153-9, Lewis Dep. 23:1–5, 63:20–24 (freshness quality and reduced sugar content); Marshall Dep. 86:2–87:4 (extra source of calcium and Vitamin D).

Consequently, Plaintiffs cannot credibly show that common questions predominate their unjust enrichment claims over individual questions because the benefit of the bargain for which each of the named Plaintiffs and putative class members purchased TPP requires an individualized showing of proof. Indeed, case law emanating from each of the four states at issue supports such a conclusion. *See Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 185 (3d Cir. 2014) ("the District Court properly found that individual inquiries would be required to determine whether an alleged overbilling constituted unjust enrichment for each class member"); *Ono v. Head Racquet Sports USA, Inc.*, No. 13-cv-4222, 2016 WL 6647949, at *15 (C.D. Cal. Mar. 8, 2016) ("determining whether retaining the funds was unjust would require determinations as to materiality and the degree of reliance on the alleged misrepresentations"); *Wyatt v. Philip Morris USA, Inc.*, No. 09-cv-597, 2013 WL 4046334, at *6 (D. Wisc. Aug. 8, 2013) ("plaintiff's unjust enrichment claim will require individualized inquiries into each class member's beliefs at the time of each purchase and therefore is not maintainable as a class action"); *Weiner v. Snapple Beverage Corp.*, No. 07-cv-8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (finding that individual issues such as knowledge of ingredients and belief that defendant's product was natural "dwarf any issues of law or fact common to the class"). Plaintiffs' unjust enrichment claims, therefore, fail to satisfy predominance and certification is **DENIED**. Additionally, the Court notes that unjust enrichment was the sole remaining claim of the Wisconsin subclass. Certification of the Wisconsin subclass, therefore, is also **DENIED**.

## 2. *Breach of Express Warranty*

"Under New Jersey law, to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 324 (D.N.J. 2014) (quotation and citation omitted). California applies a similar construction to breach of express warranty claims. *In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015). In New York, however, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015) (quotation and citation omitted).

Plaintiffs argue that Defendant breached the warranty on TPP's label, which provided "that TPP conforms to the standard of identity [for pasteurized orange juice] – which it does not – and contains no flavoring – which is false." *See* Pls.' Mem. at 32. Plaintiffs contend, "Factual resolution of these claims will all be the same for all class members – either essence or flavoring was added or it was not." *Id*. Defendant counters that Plaintiffs ignore key differences in each state's warranty law and that individualized issues of injury, reliance and causation predominate. *See* Def.'s Opp'n at 20–22.

New York's incorporation of a reliance element clearly establishes that individualized issues predominate. As with unjust enrichment, Plaintiffs failed to demonstrate by a preponderance of the evidence that the named Plaintiffs and putative class members purchased TPP in reliance of the statement on its label claiming it to be pasteurized orange juice. *See supra* Part III.B.i.1. In fact, at least one named Plaintiff admitted that she did not look at the label at all when purchasing TPP. Walsh Decl., Ex. 5, Salerno Dep. 71:3–5 ("Q. When you bought Tropicana with Calcium, did you look at the packaging? A. No."). Another named Plaintiff could not recall whether he had ever seen the word "pasteurized" on the label when purchasing TPP. *Id*., Ex. 6, Simic Dep. 126:5–7 ("Q. Did you ever see the word 'pasteurized' on any of the labels of the orange juice that you purchased? A. I do not recall."). Thus, "it is clear that plaintiffs' purported reliance on [Defendant's] label cannot be the subject of generalized proof." *See Weiner*, 2010 WL 3119452, at *11 (finding that express warranty claim concerning beverage company's "All Natural" label failed to satisfy predominance).

California courts are conflicted about whether a showing of reliance is required to establish an express warranty claim in the class action context. *Compare ConAgra Foods*, 90 F. Supp. 3d at 984 ("Proof of reliance on specific promises or representations is not required."), *with Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) ("reliance *is* a necessary element of a claim for breach of express warranty" (emphasis original)). What is indisputable, however, is that the statement in question must have been

8

"part of the basis of the bargain." *See Keith v. Buchanan*, 220 Cal. Rptr. 392, 395 (Cal. Ct. App. 1985). In *Keith v. Buchanan*, the California Court of Appeal explained a then recent revision to Section 2313 of the California Commercial Code, which modified "both the degree of reliance and the burden of proof" in express warranty claims. *See id.* at 397–98. The court concluded that the statement "need only be part of the basis of the bargain, or merely a factor or consideration inducing the buyer to enter into the bargain." *See id.* at 398. "If, however, the resulting bargain does not rest at all on the representations of the seller, those representations cannot be considered as becoming any part of the basis of the bargain." *See id.* at 397 (quotation and citation omitted). Thus, "the burden is on the seller to prove that the resulting bargain does not rest at all on the representation." *Id.* at 398.

In light of the above, reason commands that an individual must actually see or hear a misrepresentation for it to become part of that individual's basis of the bargain. As noted above, Plaintiff Salerno admitted that she never saw the alleged misrepresentation when she purchased TPP and it, therefore, could not have been part of the basis of her bargain with Defendant. Walsh Decl., Ex. 5, Salerno Dep. 71:3–5. Furthermore, Plaintiff Simic testified that he recalled specific characteristics of TPP's label but the statement in question was not one of them, which raises serious doubt as to whether it was part of his bargain with Defendant. *See id.*, Ex. 6, Simic Dep. 127:22–128:2 ("Q. What do you remember seeing on that label? A. Remember seeing the logo for Tropicana. It says, 'Tropicana Pure Premium,' then there's an orange with a straw stuck into it. And then it also states that it's 'not from concentrate.' That's pretty much it on the label."). These admissions clearly show that individualized proof is necessary to determine whether putative class members actually saw the statement when purchasing TPP and, therefore, individualized issues predominate Plaintiffs' California express warranty claims.[2]

New Jersey express warranty law also incorporates the "part of the basis of the bargain" requirement. In interpreting this language, the Third Circuit held "that once the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be part of the 'basis of the bargain' unless the defendant, by 'clear affirmative proof,' shows that the buyer knew that the affirmation of fact or promise was untrue." *See Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 568 (3d Cir. 1990), *rev'd on other grounds*, 505 U.S. 504 (1992). The critical portion of this standard to the instant case is "once the buyer has become aware," which clearly requires that a plaintiff have seen or heard the representation at issue to be considered part of the basis of the bargain. As the Third Circuit noted, "It strains the language to say that a statement is part of the 'basis' of the buyer's 'bargain,' when that buyer had no knowledge of the statement's existence." *Cipollone*, 893 F.2d at 567; *see In re: Elk Cross Timbers Decking Mktg.*, No. 15-cv-18, 2015 WL

---

[2] The Court is aware that Plaintiffs Salerno and Simic do not represent the California subclass. Nonetheless, their testimony sufficiently shows that individuals behave differently when purchasing TPP, including when deciding whether to review or ignore the product's label. That notion certainly applies to individuals residing in California, the nation's most populous state.

9

6467730, at *28–29 (D.N.J. Oct. 26, 2015) ("Plaintiffs do not cite relevant law demonstrating that a plaintiff can state a breach of express warranty claim based on representations that they were not even aware of."); *Hammer v. Vital Pharm., Inc.*, No. 11-cv-4124, 2015 WL 12844442, at *9 (D.N.J. Mar. 31, 2015) (finding predominance issues "as to whether the proposed class members ever 'became aware of the promise'" and denying class certification). As noted above, Plaintiffs Salerno and Simic's own testimony raises serious doubt as to whether they ever saw the statement about pasteurization. Plaintiffs, therefore, failed to show by a preponderance of the evidence that common issues predominate over individualized ones as to all breach of express warranty claims and class certification is **DENIED**.

### 3. *New Jersey Consumer Fraud Act*

The New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1–20, "affords broad protections to New Jersey consumers." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 743 (N.J. 2009). Under its private right of action, "there are only three elements required for prima facie proofs: (1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Id*. at 749. The alleged unlawful conduct in the instant case is the labeling of TPP as pasteurized orange juice, which Plaintiffs claim amounts to a regulatory violation. *See* Pls.' Mem. at 32–33. "[A] plaintiff who cannot prove the causal link between the asserted regulatory violation and his loss cannot find relief within the [NJ]CFA." *Bosland*, 964 A.2d at 751. In establishing a causal link, the relevant issue is "whether class members got less than what they expected." *See Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 607 (3d Cir. 2012). "[C]ertification of a NJCFA class is not proper when class members do not react to misrepresentations or omissions in a sufficiently similar manner." *Id*. at 609.

Plaintiffs would have this Court apply a presumption of causation to all putative class members by accepting that "each consumer of TPP suffered an ascertainable loss because they paid for TPP but did not receive pasteurized orange juice." *See* Pls.' Mem. at 33. In the Rule 23 context, however, "a presumption may not be automatically used to eliminate a particular element," particularly with regard to the causal nexus element of a NJCFA claim. *See Demmick v. Cellco P'ship*, No. 06-cv-2163, 2010 WL 3636216, at *16 (D.N.J. Sept. 8, 2010). Plaintiffs' theory would erroneously eliminate the required causal nexus of each individual class member's loss—*i.e.*, price premium paid—to Defendant's pasteurization statement.

The record does not reflect that New Jersey putative subclass members reacted to the pasteurization statement in a sufficiently similar manner. First, and most telling, Plaintiff Salerno, the lead representative of the New Jersey subclass, testified that she was not focused on the label when purchasing TPP and, in fact, did not even look at it. *See* Walsh Decl., Ex. 5, Salerno Dep. 36:21–22 ("I was just going to by [*sic*] Tropicana, the name."), 71:3–5 ("Q. . . . did you look at the packaging. A. No."). Consequently, Plaintiff

10

Salerno cannot credibly claim to have bought TPP with the expectation that it conformed to the FDA's standard of identity of pasteurized orange juice. Second, Plaintiffs' own expert conducted a survey that suggests a great variation in how putative subclass members would react to the knowledge that TPP did conform to the standard of identity. When told to assume that TPP contained added natural flavoring made by flavor and fragrance companies, over twenty percent of respondents indicated that they would still purchase TPP at any of the given price points. *See* Ecklund Decl., Ex. 75, Toubia Rprt. ¶¶ 44, 91. Hence, the survey results suggest that an individual consumer in New Jersey might purchase TPP even with the knowledge that it did not conform to the FDA's standard of identity. Consequently, Plaintiffs failed to show predominance beyond a preponderance of the evidence and certification is **DENIED**. *See Marcus*, 687 F.3d at 610. Certification of the New Jersey subclass is also **DENIED**.

> ii. Plaintiffs have not demonstrated that the proposed Class is ascertainable under the Third Circuit standard.

Plaintiffs remaining claims emanate from California and New York consumer protection laws. California's Unfair Competition Law and Consumer Legal Remedies Act apply an objective "reasonable consumer" standard, which requires that Plaintiffs "show that members of the public are likely to be deceived" by Defendant's alleged misconduct. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation and citation omitted). Similarly, Sections 349 and 350 of the New York General Business Law apply "an objective definition of deceptive acts and practices" that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). In light of this objective standard, individual issues cannot predominate over common ones as they did with Plaintiffs' common law and NJCFA claims. *See Scotts EZ Seed*, 304 F.R.D. at 409–10 (finding class certification proper for UCL, CLRA and GBL §§ 349 and 350 claims because the objective standard only requires generalized proof). Nonetheless, Plaintiffs must still satisfy the Third Circuit's standard of "ascertainability" to meet the requirements of Rule 23(b)(3).

"A Rule 23(b)(3) class must also be 'currently and readily ascertainable based on objective criteria.'" *City Select Auto Sales Inc. v. BMW Bank of N.A., Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (quoting *Marcus*, 687 F.3d at 593). The Third Circuit provides three principal rationales for the ascertainability requirement. "First, 'ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of the class.'" *Id.* (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)). "Second, it ensures that a defendant's rights are protected by the class action mechanism,' [] and that 'those persons who will be bound by the final judgment are clearly identifiable." *Id.* (quoting *Carrera*, 727 F.3d at 306; *Marcus*, 687 F.3d at 593). "Finally, 'it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.'" *Id.* (quoting *Carrera*, 727 F.3d at 307).

11

"A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). "The rigorous analysis requirement applies equally to the ascertainability inquiry." *Id*. Plaintiffs must "show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id*. (quotation and citation omitted). Importantly, the requirement "does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified.'" *Id*. (quoting *Carrera*, 727 F.3d at 308 (emphasis original)). "[A] party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements." *Id*. at 164. "Nor may a party 'merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.'" *Id*. (quoting *Carrera*, 727 F.3d at 306–07, 311). "The type of challenge to the reliability of evidence that is required will vary based on the nature of the evidence." *Carrera*, 727 F.3d at 308.

Plaintiffs claim that they satisfy ascertainability because the proposed Class and subclasses are objectively defined, class members are easily identifiable using existing business records and any further inquiry is premature in light the Supreme Court's recent holding in *Tyson Foods, Inc. v. Bouaphakeo*. *See* Pls.' Mem. at 14–16. Defendant argues that *Tyson Foods* is irrelevant to the instant case because it does not address ascertainability. *See* Def.'s Opp'n at 31–33. Furthermore, Defendant asserts that nothing in the record reflects that the business records referenced by Plaintiffs can identify putative class members. *See id*. at 33–41. Defendant does not challenge Plaintiffs' proposed Class definition and the Court accepts that their definition satisfies the first prong of the ascertainability inquiry.

The Court agrees with Defendant that the holding from *Tyson Foods* does not affect the Third Circuit's ascertainability requirement. The central question in *Tyson Foods* concerned the use of representative or statistical samples of evidence as a means to establish class-wide liability at the certification stage. *See* 136 S. Ct. at 1046–47. The Supreme Court did not address ascertainability and certainly did not overrule any of the Third Circuit precedent upon which this Court must rely.

The critical question, then, is whether Plaintiffs have shown that putative class members *can* be identified by employing "a reliable and administratively feasible mechanism." Plaintiffs submit that their expert, Dr. Arvind Narayanan, can create a computer program that will reliably identify all putative class members. Dr. Narayanan's proposed methodology requires a putative class member to submit an electronic claim form that includes a loyalty card or member ID number and other personal identifying information such as a home address and telephone number. He further proposes that he will collect the various retailer data, convert all of it into a standard digital format and draft a program that will "(1) look up the ID number in the retailer's customer records, and (2) should a match exist, cross-check the individual's available personal information against

the corresponding fields in the retailer's customer record." *See* Ecklund Decl., Ex. 93, Expert Decl. of A. Narayanan ("Narayanan Decl.") ¶¶ 25–27. Dr. Narayanan will then write a second program "to verify that claimants did in fact purchase the products of interest." *Id*. at ¶ 32.

Dr. Narayanan's methodology assumes that the retailer data exists and contains the necessary information required to properly "cross-check" against putative class members' claim forms. *See id*., Ex. 94, Narayanan Dep. 58:23–59:10, 127:10–17. It further assumes that all retailers will produce their consumer data to him in a usable electronic format. *See id*., Narayanan Dep. 204:6–12. By his own admission, Dr. Narayanan has not seen any of the data in question, has never conducted the type of project he now proposes, has not tested or even drafted the programs he asserts will ascertain class members, and has never heard of anyone else successfully implementing such a proposal. *See id*., Narayanan Dep. 23:4–13, 43:5–12, 72:7–74:9.

Plaintiffs contend that ample evidence in the record supports the existence of the requisite retailer data to implement Dr. Narayanan's proposal. With respect to Members Only clubs, Costco appears able to retrieve a member's purchasing history if given the membership number and a range of dates. *See id*., Ex. 83, Costco Resp. at 2. BJ's Wholesale Club also appears able to track purchasing history, although it is unclear for how long it maintains its data. *See id*., Ex. 84, BJ's Resp. at Doc. No. 1. Wal-Mart and Sam's Club, on the other hand, estimate that they only have "some identifying information" for approximately twenty percent of all TPP units purchased for a three-year period between 2011 and 2014. *See id*., Ex. 85, Wal-Mart Resp. at 1–2.

With respect to Loyalty Card retailers, Plaintiffs submit that Catalina Marketing Corporation ("Catalina") maintains a consumer database, which can track the purchases of consumers who use loyalty cards at more than 31,000 supermarkets and drugstores throughout the United States. *See* Pls.' Mem. at 20–23. Dr. Narayanan, for his part, expects that he will need to use "a lot" of consumer data produced by Catalina to perform his methodology. *See* Ecklund Decl., Ex. 94, Narayanan Dep. 282:15–20. Catalina confirmed that it receives certain transactional information at the point of sale (*i.e.*, when a loyalty card is scanned), including date, time, product code and pricing. *See id*., Ex. 82, Carrigan Dep. 59:2–60:11, 64:22–65:5. Notably, however, all information it receives is anonymous and contains no personal identifying information of any kind. *See id*., Ex. 82, Carrigan Dep. 66:19–67:25. Consequently, all available personal identifying information resides with the individual retailers in Catalina's network. Dr. Narayanan's methodology, therefore, is inoperable without the inclusion of the retailers' consumer data. *See id*., Ex. 94, Naraynana Dep. 58:23–59:10 (testifying that "the most typical case" would have "records across the two databases that have matching I.D. fields as well as multiple fields of personal information").

The scant information in the record as to Catalina retailers' data calls into question what is, in fact, available. In responding to Plaintiffs' subpoena, Wakefern Food Corp.

13

indicated that it requests a customer's name, address and sometimes an email address or telephone number when that customer joins its loyalty program. It does not validate the accuracy of the personal identifiers and it only maintains a customer's purchasing history for approximately thirty months. *See id.*, Ex. 86, Wakefern Resp. at 1–2. Stop & Shop Supermarket Company maintains data, which can identify purchases from a product code and a customer's card number, but that data is not readily available and would require customized searching to acquire the desired information. It is unclear what personal information, if any, Stop & Shop retains in its database. *See id.*, Ex. 87, Stop & Shop Resp. at 1. The Court presumes that there are dozens of similar corporations within Catalina's vast network of 31,000 stores, for which there is no evidence in the record identifying available consumer data.

As Wakefern's response exhibits, the personal identifying information each retailer possesses is only as good as the accuracy with which each customer provided it. Plaintiffs' own testimony shows that customers rarely update their personal information connected with various loyalty card programs. *See* Walsh Decl., Ex. 2, Martinucci Dep. 156:7–11, 159:16–21; Ex. 4, Olivares Dep. 131:24–132:15, 135:24–136:7, 140:16–23, 146:3–9; Ex. 5, Salerno Dep. 84:18–85:4, 89:13–90:5, 94:6–14, 98:8–20. Thus, if putative class members have moved or changed their telephone numbers or email addresses since opening their loyalty accounts, then the personal identifying information they provide on the claim forms likely would not match the information in the retailer's database. Additionally, one named Plaintiff attempted to acquire his purchasing history from a Catalina retailer, to which the retailer responded that it did not retain the requisite data. *See id.*, Ex. 6, Simic Dep. 63:10–64:21.

To be clear, the Court is mindful that "there is no records requirement" with respect to ascertainability. *See Byrd*, 784 F.3d at 164. In *City Select*, the Third Circuit confirmed that affidavits from putative class members combined with business records or other data that verify class members' statements is an acceptable "mechanism" in some instances. *See City Select*, 867 F.3d at 440–42. It also cautioned, however, "The determination whether there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition must be tailored to the facts of the particular case." *Id.* at 442. In that case, one defendant maintained a database that contained all putative class members' contact information and other details about their relationship to the defendant. *See id.* at 437. Plaintiff timely moved during open discovery for the production of the database but the district court denied its request. *Id.* The district court later concluded that the evidence in the record did not sufficiently show that the class was ascertainable. *Id.* at 438. The Third Circuit remanded, compelling the production of the database. It concluded, "Without further information about [defendant's] database, there was not an adequate record on which to base the conclusion that the class was not ascertainable based on a 'reliable and administratively feasible mechanism.'" *Id.* at 442 (quoting *Byrd*, 784 F.3d at 163).

14

The case at bar presents a similar, but more complicated, issue about Plaintiff's proposed mechanism and is a closer comparison to an earlier Third Circuit case addressing ascertainability, *Carrera v. Bayer Corp*. In *Carrera*, plaintiff brought a false advertising claim about a dietary supplement sold by defendant. *See* 727 F.3d at 304. As here, defendant never directly sold the product to putative class members; instead, it distributed the product through retail stores. *Id*. Consequently, defendant did not possess its own database of purchasers. Plaintiff proposed to use a nearly identical ascertainability method to the one now before this Court: "'retailer records of online sales and sales made with store loyalty or rewards cards' combined with affidavits from potential class members." *See City Select*, 867 F.3d at 440 (quoting *Carrera*, 727 F.3d at 304 and characterizing its decision). Notably, however, "plaintiff had not sought, nor obtained, the proposed records during class discovery." *Id*. (citing *Carrera*, 727 F.3d at 308–09). The Third Circuit "determined that it was inappropriate to certify the class without further inquiry into the nature and extent of the available records, and remanded in part for this purpose." *Id*. "In addition, [it] noted that, even if the proposed records did exist, there was no evidence that a 'single purchaser,' let alone the whole class, could be identified using them." *Id*.

With these decisions at the forefront, this Court now returns to two rationales underlying the ascertainability requirement, which were not present in *City Select* but very present in *Carrera*: "facilitating opt-outs and identifying persons bound by the final judgment." *See City Select*, 867 F.3d at 441; *Carrera*, 727 F.3d at 307–09. The record before the Court does not show by a preponderance of the evidence that Plaintiffs *can* identify all, or even a majority, of putative class members. Dr. Narayanan has never conducted a project like the one he now proposes, nor has he even looked at a sample of the data that he will need to perform it. He does not know anyone in his field who has attempted, successfully or unsuccessfully, to do what he proposes. Ecklund Dec., Ex. 94, Narayanan Dep. 72:6–74:9. The Court does not doubt his ability to write computer programs, but even he admits that the performance of his program will only be as good as the consumer data he puts into it. *Id*., Narayanan Dep. 127:10–17. Catalina, the consumer database upon which Dr. Narayanan expects to rely, does not maintain any of the requisite personal identifiers that he needs to verify claims. Ecklund Decl., Ex. 82, Carrigan Dep. 66:19–67:25.

Thus, the retailer data is the critical component in determining whether putative class members can be ascertained and that data is not in the record.[3] Of the dozens, if not

---

[3] The Court acknowledges that Plaintiffs belatedly sought production of the databases maintained by Catalina, BJ's Wholesale and Wal-Mart, which this Court denied on December 19, 2016. *See* Op., ECF No. 205. Unlike plaintiff in *City Select*, the Court denied Plaintiffs' request in the instant case because they made it nine months after the closure of discovery, which was open for almost three years. The Court found that Plaintiffs knew of these databases and made a strategic decision not to pursue them until confronted with Defendant's ascertainability argument. If the Federal Rules of Civil Procedure, particularly Rules 16 and 26, are to have any meaning and effect on federal practice, then a court cannot allow a party to circumvent them by conduct such as that exhibited by Plaintiffs here. The Court decided that Plaintiffs' strategy in prosecuting their case caused the moment in which they found themselves then. The Court stands by that decision today. Furthermore, given Catalina's statements in the record, the Court doubts that

hundreds, of retailers at issue here, only Costco has expressed any degree of certainty that it can provide the requisite data for the entire class period. Most of the Catalina retailers have made no expression about their consumer data because Plaintiff did not ask them. Plaintiff Simic admitted that one of his retailers, Pick 'N Save, maintains no consumer data whatsoever. Walsh Decl., Ex. 6, Simic Dep. 63:10–64:3. The Court has no way of knowing from the record how many Catalina retailers are like Pick 'N Save and how many are like Costco. More importantly, any putative class member who shops at a retailer like Pick 'N Save will be excluded from the Class because there will be no way to verify his or her claim; and yet, that class member will still be bound by any judgment on the merits emanating from this Court. That defies one of the principal rationales of ascertainability— "identifying persons bound by the final judgment"—and simply cannot be permitted. *See City Select*, 867 F.3d at 441.

The Third Circuit obligates Plaintiffs to propose a method of ascertaining the class with evidentiary support that the method will be successful. *See Byrd*, 784 F.3d at 164. For the reasons stated above, Plaintiffs failed to show by a preponderance of the evidence that Dr. Narayanan's methodology will be successful and, therefore, they failed to satisfy the ascertainability requirement. Accordingly, certification of the California and New York consumer law claims is **DENIED**. Certification of the California and New York subclasses is also **DENIED**.[4]

### iii. Plaintiffs lack standing to pursue injunctive relief under 23(b)(2).

Plaintiffs move alternatively for class-wide injunctive relief under Rule 23(b)(2). *See* Pls.' Mem. at 45–47. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores*, 564 U.S. at 360. "When, as in this case, prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). "In the class action context, that requirement must be satisfied by at least one named plaintiff." *Id.* (citations omitted). "The threat of injury must be sufficiently real and immediate, and, as a result of the immediacy requirement, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *See id.* (quoting *O'Shea v. Littleton*, 414 U.S. 490, 502 (1975)) (internal quotation and citation omitted).

None of the named Plaintiffs expressed with any certainty that they intend to purchase TPP in the future. Walsh Decl., Ex. 1, Lewis Dep. 30:13–31:22 (responding "I don't know" when asked about changes to TPP's label that would enable future purchases);

---

the production of its database would change the outcome of the Court's ascertainability analysis without the additional production of the retailers' databases.

[4] The Court need not reach the parties' arguments addressing Plaintiffs' damages model.

Ex. 2, Martinucci Dep. 63:9–23 (no future purchases); Ex. 3, Marshall Dep. 61:11–23 (no future purchases); Ex. 4, Olivares Dep. 76:17–19 (no future purchases); Ex. 5, Salerno Dep. 17:16–22 (responding "probably not" when asked about future purchases); Ex. 6, Simic Dep. 116:4–12 (responding "unlikely" when asked about future purchases). Consequently, Plaintiffs failed to show a "sufficiently real and immediate" threat of future injury by a preponderance of the evidence and, therefore, lack standing to pursue injunctive relief. *See McNair*, 672 F.3d at 223. Certification under Rule 23(b)(2) is **DENIED**.

### IV.   CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification is **DENIED**. An appropriate order follows.

>    */s/ William J. Martini*
>    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 22, 2018**