# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: TROPICANA ORANGE JUICE MARKETING AND SALES PRACTICES LITIGATION<br><br>MDL 2353<br><br>This Document Relates To:<br><br>ALL CASES | Civ. No. 2:11-07382<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is a case about orange juice. Defendant Tropicana is a manufacturer of products derived from citrus, including a category of products of pasteurized, not-from-concentrate orange juice marketed as Tropicana Pure Premium ("TPP"). Plaintiff Angelena Lewis ("Lewis" or "Plaintiff") is a purchaser of at least one TPP product. Plaintiff alleges that Tropicana deceptively markets TPP as "100% pure and natural orange juice," "100% pure orange juice," "100% orange juice," "pasteurized orange juice," "pasteurized," "pure," "natural," "fresh," and "grove to glass," when, in fact, it is none of those things. Instead, Plaintiff alleges that Defendant removes solids and oils from the extracted juice, treats the mixture, and then adds oils, colors, or flavoring in violation of FDA standards and consumer protection laws. Based on these allegations, Lewis, now proceeding as the sole named plaintiff, asserts claims under New York and California law on behalf of herself and all others similarly situated. *See* ECF No. [32].

Before the Court is Plaintiff's Motion for Certification of Modified Class, Appointment of Class Representatives, and Appointment of Class Counsel. ECF No. [320] ("Renewed Motion"). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Renewed Motion for Class Certification is **DENIED**.

## I.   PROCEDURAL BACKGROUND

The Renewed Motion is Plaintiff's third attempt to move for class certification. *See* ECF Nos. [144], [270] & [320]. On January 22, 2018, the Court denied certification in a written opinion. ECF No. [311] ("Opinion Denying Certification"). In the opinion, the Court found that the then-named plaintiffs had met the Rule 23(a) requirements for certification but failed to meet the requirements set forth under Rule 23(b)(2) and (b)(3).

Five months later, Plaintiff filed the Renewed Motion. ECF No. [320]. Although Defendant contested briefing the Renewed Motion prior to summary judgment, ECF Nos.

[323] & [325], on December 28, 2019, Court issued a written opinion finding that Plaintiff should be permitted to pursue class certification first. ECF No. [327]. The Renewed Motion is now ripe for decision. *See* ECF Nos. [330], [338], [341] & [344].

## II. LEGAL STANDARD

A class action may be certified if: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)).

In addition to Rule 23(a), a plaintiff must also meet one of the requirements set forth in Rule 23(b). *Id.* Lewis seeks certification under Rule 23(b)(3), which permits certification only if (1) questions of law or fact common to class members predominate over individual questions ("predominance"), and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). To determine predominance and superiority, the Court considers: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615–16 (1997).

Each Rule 23 requirement must be established by a preponderance of the evidence. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," the court considers merits questions only to the extent they are relevant to performing the "rigorous analysis" required to determine whether the Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

## III. ARGUMENTS OF THE PARTIES IN THE RENEWED MOTION

In the Renewed Motion, Lewis seeks certification under Rule 23(b)(3) of two classes that she argues correct the deficiencies found in the Opinion Denying Certification. Lewis, a California resident who purchased TPP at least once at a Costco Wholesale Store ("Costco") in California, sets forth the two modified classes as follows:

> All consumers who were or are members of a Costco Wholesale Store in the State of California and who purchased Tropicana Pure Premium Orange Juice at a Costco Wholesale store in the State of California between January 1, 2008 and the present ("California Class").

> All consumers who were or are members of a Costco Wholesale Store in the State of New York and who purchased Tropicana Pure Premium Orange Juice at a Costco Wholesale

store in the State of New York between January 1, 2008 and the present ("[New York] Class").

ECF No. [321] at 1, 4, 7, 7 n.8. Lewis seeks to represent both classes in four claims against Defendant:

1. Violation of New York General Business Law ("NYGBL") § 349;

2. Violation of NYGBL § 350;

3. Violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*; and

4. Violation of the Unfair Competition Law ("UCL") California Business & Professional Code §§ 17200 *et seq*.

*Id.*; *see also* ECF No. [32].[1]

In her brief, Plaintiff principally[2] argues that the proposed new classes cured the deficiencies the Court previously noted in the Opinion Denying Class Certification, and thus the Court implicitly "already found" that Rule 23(a) and 23(b) are satisfied for the new classes. ECF Nos. [321] at 5–11, 12–21; [338] at 1 n.1. Plaintiff separately argues that, even if the Court had not "already decided" that she complies with Rule 23(b), that there is an administratively feasible mechanism to ascertain the class, that her damages model reflects her theory of liability, and that Defendant waived contesting both her experts' conclusions and superiority. *Id.* at 33–38.

Defendant reads the Opinion Denying Certification quite differently. First, Defendant argues that the opinion is not susceptible to "law of the case" treatment because the new class definitions expand the class, the theories of liability, and the claims that this Court previously considered. Defendant further argues that the record is devoid of classwide evidence regarding the new Costco-based classes and only contains the analyses previously relied upon in the two prior class certification motions. Defendant also argues that Plaintiff fails ascertainability because she has not adequately addressed the issues previously highlighted by this Court in the Opinion Denying Certification. Separately, Defendant argues that some of the claims included in the new proposed classes are time barred under the tolling provisions outlined in *Am. Pipe & Const. Co. v.*

---

[1] Plaintiff in the alternative requests that the Court grant leave to amend to add a representative for the New York Class. ECF No. [321] at 39.

[2] Lewis states that she "hereby incorporates by reference the Plaintiff's previous motion for class certification, including the Plaintiff's statement of facts and arguments, except to the extent that motion concerns the claims other than those brought under the UCL, CLRA, and GBL §§ 349 & 350." ECF No. [321] at 2 n.1. The Court declines the invitation to analyze old arguments that sought certification of different classes with different class representatives "to the extent applicable." The Court limits its analysis to the arguments set forth in the Renewed Motion.

*Utah*, 414 U.S. 538 (1974), and that Lewis cannot adequately represent the New York Class because she is not a member of that class.

## IV. ANALYSIS

### A. The Import of the Opinion Denying Certification

Plaintiff argues that the "law of the case" precludes the Court from reviewing prior Rule 23(a) findings, an "implicit" Rule 23(b) predominance finding, and Defendant's "waiver" of any arguments contesting superiority. ECF Nos. [321], *passim*; [338] at 1. In sum, Plaintiff argues that "law of the case doctrine" allows her to preserve prior class certification rulings she likes, but revisit those she doesn't.

The Court disagrees. The "law of the case doctrine provides that a court should not re-examine an issue already decided in the same case." *Bridge v. U.S. Parole Com'n*, 981 F.2d 97, 103 (3d Cir. 1992). However, the Third Circuit has made clear that the doctrine is not applicable to class certification rulings because "[a]n order that grants or denies class certification may be altered or amended before final judgment." *Bayshore Ford Truck v. Ford Motor Co.*, No. CIV. A. 99-741 JLL, 2010 WL 415329, at *2 (D.N.J. Jan. 29, 2010) (citing Fed. R. Civ. P. 23(c)(1)(C) and *Zenith Labs. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (cited at ECF No. [338] at 4)).

The Court finds that the doctrine is further inapplicable here because Lewis seeks to certify two new classes not yet considered by this Court and to represent these classes as the sole named plaintiff. Defendant objects to certification of these classes with new arguments. The Court therefore is not "re-examin[ing] an issue already decided in this case," *Bridge*, 981 F.2d at 103, since it has not yet performed the "rigorous consideration of all the evidence and arguments offered by the parties" as to Plaintiff's new proposed classes, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3d Cir. 2008). The Court thus finds that the "law of the case" doctrine does not apply to the Renewed Motion and the Court will examine each of the Rule 23 requirements in turn.[3]

### B. The Rule 23(a) Requirements

#### a. Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Where the number of potential plaintiffs exceed forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, Defendant does not contest numerosity, and Plaintiff's two new proposed classes likely include tens, if not hundreds, of thousands of TPP

---

[3] Plaintiff argues Defendant is estopped from contesting the applicability of the law of the case doctrine because Defendant's summary of the Opinion Denying Certification to the Third Circuit amounted to a concession that Plaintiff meets Rule 23's requirements for the new classes. *Cf.* ECF Nos. [338] at 2 n.2, 3–4 *with* [345] at 3–7. This argument is plainly without merit.

customers over an eleven-year period. *See* ECF No. [321] at 3 n.6. The Court finds Plaintiff's claims satisfy numerosity.

### b. Commonality

Commonality considers whether there are "'questions of law common to the class[.]' Commonality is satisfied when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (quoting Fed. R. Civ. P. 23(a)(2) and citing *Dukes*, 564 U.S. at 350). Commonality requires that the class members have "suffered the same injury," and not merely that "they have all suffered a violation of the same provision of law." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 489–90 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 349). Thus, the members of the class must assert a common contention that is capable of classwide resolution such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (quoting *Dukes*, 564 U.S. at 350); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (noting that the "commonality requirement 'does not require identical claims or facts among class member[s]'" (citations omitted)).

Plaintiff argues that she seeks to represent a class on the theory that Defendant "concealed [the] addition of flavors to TPP (contrary to the regulations) and violat[ed] the standard of identity of pasteurized orange juice." ECF Nos. [271] at 1 and [321] at 6–7. Plaintiff submits that this theory can be summarized in the following questions: "(1) whether TPP conforms with the standard of identity for pasteurized orange juice; (2) whether TPP contains undisclosed flavors; (3) whether TPP's label is misleading; and (4) whether the conduct of Defendant is such that Plaintiff and other members of the Classes are entitled to damages." ECF No. [321] at 6–7. Plaintiff argues that because she seeks to represent a narrowed class on these four questions which the Court previously found satisfied commonality, the Court should again find commonality satisfied.

In opposition, Tropicana argues that Plaintiff has expanded her theory of liability by changing the complained-of labels and including claims sounding in violations of the FDA and common law labeling and advertising requirements. ECF No. [321] at 20–21; *see also* ECF No. [330] at 7–8. But the Court reads Plaintiff's arguments in her Renewed Motion not as an expanded or new theory of liability, but simply a restatement of the four questions on which the Court already found commonality to be satisfied. Plaintiff still seeks to resolve these four questions, and their common answers will resolve Plaintiff's claims classwide. Accordingly, the Court finds commonality satisfied.

### c. Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation

5

omitted). Thus, the typicality requirement ensures "that the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). " '[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.' " *Stewart*, 275 F.3d at 227 (quoting *Neal*, 43 F.3d at 58). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Id*. at 227–28 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992)).

A court thus compares "the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598. In so doing, the court considers:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Id.*

Plaintiff argues that her claims are typical because "they arise from the same course of conduct, namely, that Defendant acted deceptively by uniformly mislabeling TPP, and show injury due to paying a premium price for a product that was not as labeled." ECF No. [321] at 9. Defendant does not contest typicality except in a combined standing, adequacy, and typicality argument discussed *infra*. ECF No. [330] at 29.

The Court remains convinced that the typicality requirement is satisfied here. The Court previously found typicality satisfied, and Lewis' claims still "arise from [her] individual purchases of TPP and the injuries alleged universally arise from Defendant's conduct—*i.e.*, the purported mislabeling of TPP." *See* ECF No. [311]. Accordingly, Plaintiff again meets the requirements of typicality. *See Neal*, 43 F.3d at 57–58.

### d. Adequacy

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 312 (3d Cir. 1998). "First, [it] tests the qualifications of the counsel to represent the class." *Id*. "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.' " *Id*. (quoting *Amchem*, 521 U.S. at 625).

6

Defendant does not contest counsel's qualifications and this Court previously found counsel was competent to adequately represent the proposed classes. There is no reason to deviate from that ruling and the Court finds Plaintiff's counsel is qualified.

As to the second prong, the parties focus their arguments on Plaintiff's ability to represent the New York Class. Plaintiff argues that the Court should analyze this question as a matter of adequacy and find that she is an adequate representative of the New York Class because her interests are "directly in line" with that class. ECF No. [321] at 10–11. Defendant mounts several attacks to Plaintiff's ability to represent the New York Class that implicate interrelated inquiries of standing, adequacy, and typicality. ECF No. [330] at 27–29. The Court addresses these arguments together.

"[I]t is axiomatic that the lead plaintiff must fit the class definition," and a plaintiff cannot represent a class of which he or she is not a part. *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013) (citing *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962)); *see also* WRIGHT & MILLER, 7A FED. PRAC. & PROC. CIV. § 1761 (3d ed.). This rule is generally analyzed as a matter of standing when a class representative lacks injury or as a matter of Rule 23(a) adequacy if the class representative sustained injury but does not meet other requirements of the class definition. *Hayes*, 725 F.3d at 360–61; *see also Morris v. BMW of N. Am., LLC*, No. CIV.A. 13-4980 JLL, 2014 WL 793550, at *12 (D.N.J. Feb. 26, 2014) (finding plaintiff who only purchased vehicle in Arizona could not represent Nevada class); *but see Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (analyzing under predominance).

The Court first sets aside the parties' arguments regarding standing. It is uncontested that Lewis purchased TPP in a Costco in California, and thus standing is not the proper lens through which to view Lewis' ability to represent the New York Class. However, the Court finds that Plaintiff is not an adequate representative of the New York Class under Rule 23. There is no evidence in the record that Plaintiff ever purchased TPP at a Costco in New York at any time from January 1, 2008 to the present. ECF No. [338] at 21. Plaintiff cannot adequately represent a class to which she does not belong. Accordingly, certification of the New York Class must be **DENIED**.

As to the California Class, the Court finds that Plaintiff is an adequate representative. Plaintiff is a member of the California Class, does not have any apparent conflicts of interest with that class, and the record demonstrates she can adequately represent California class members. *In re Prudential*, 148 F.3d at 312.

### e. Leave to Identify a New York Plaintiff and File a Fourth Motion for Class Certification

Plaintiff argues that should the Court find that Lewis is not an adequate representative of the New York Class, it should grant leave to amend for her to identify a New York plaintiff and brief class certification for the fourth time. Defendant objects, citing Plaintiff's opportunity to identify a New York plaintiff before filing the Renewed Motion and the prejudice and cost to Defendant to brief class certification again.

Leave to file a fourth motion for class certification must be denied. Plaintiff filed the Renewed Motion on her own accord, argued for its consideration when Defendant opposed briefing the Renewed Motion prior to summary judgment (*see* ECF No. [324]), and chose to proceed without a New York plaintiff. But class certification is not an iterative process through which a plaintiff may file successive certification motions, each time narrowing or adjusting the potential class based on the Court's rulings in hopes of eventual success. Plaintiff has had ample chances to litigate class certification three times prior to summary judgment. Defendant would be unduly prejudiced by the expense of another "re-do" at this juncture. *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (discussing court's authority in matters of docket control). Accordingly, the request to amend to add a New York representative and file a fourth motion for class certification prior to summary judgment is **DENIED**.

### C. The Rule 23(b)(3) Requirements

In the Renewed Motion, Plaintiff seeks certification under Rule 23(b)(3). Having found that Plaintiff has satisfied the Rule 23(a) factors as to the California Class only, the Court now examines Rule 23(b)'s requirements focusing on the California Class and the two California state law claims.

#### a. Predominance

Before certifying a Rule 23(b)(3) class, a district court evaluates whether "questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* The inquiry, while similar to the considerations under Rule 23(a)'s commonality requirement, is a "far more demanding" standard that requires the Court to determine if the proposed class is sufficiently cohesive that members of the class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to classwide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (finding predominance in "broad-based" campaign to deceive providers and patients regarding a generic equivalent).

The Court must examine through the prism of Rule 23(b)(3) the elements of each of the causes of action for certification and ask whether proof of the essential elements require individual treatment. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)); *see also Neal*, 794 F.3d at 370–71. The mere existence of individual questions does not preclude a finding of predominance, nor does the possibility that some individualized inquiry as to damages may be required. *Neal*, 794 F.3d at 371. Rather, the Court engages in a qualitative examination of both common and individual issues. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)). In this inquiry the Court appropriately "delve[s] beyond the pleadings to determine whether the

requirements for class certification are satisfied," but does not make a merits determination as to the ultimate success of plaintiff's claims. *Hydrogen*, 552 F.3d at 311; *see also Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305 (3d Cir. 2016).

As a representative of the California Class, Plaintiff seeks certification of consumer fraud claims under the UCL and CLRA. Relevant to the allegations here, the CLRA proscribes representing goods as having characteristics or ingredients that they do not; advertising goods to have a particular standard, quality, or grade when they do not; or advertising goods or services with intent to sell them not as advertised. Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), 1770(a)(9); *see also* ECF No. [32] ¶¶ 221–23. The Unfair Competition Law proscribes "any . . . fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

Because Plaintiff only proceeds under the "fraud" prong of the UCL, ECF No. [32] at 232, the Court may address Plaintiff's misrepresentation-based CLRA claims and fraud-based UCL claims "in tandem" given that "the standard for deceptive practices . . . applies equally" to both." *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *11 (N.D. Cal. June 1, 2018) (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) and *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *3 (C.D. Cal. Jan. 23, 2012)). For CLRA and UCL fraud claims based on product labeling, each statute allows Plaintiff to establish the required elements of reliance, causation, and damages by proving that Defendant made what a reasonable person would consider a material misrepresentation. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534–35 (C.D. Cal. 2011); *see also Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

However, while a plaintiff need not demonstrate individualized proof of deception, reliance, and injury, "courts typically require that plaintiffs demonstrate that reliance and causation are subject to common proof." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615, at *6 (C.D. Cal. June 7, 2017) (citing *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 576 (C.D. Cal. 2014)). For UCL and CLRA claims, this means Plaintiff must demonstrate "(1) that uniform misrepresentations were made to the class[] and (2) that the misrepresentations were material." *Id.* at 6–7; *see also Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014). Importantly, where, as here, the state consumer laws follow a reasonable consumer standard, "a class-wide inference of reliance and causation is available to" a plaintiff if she can demonstrate that the statements in question were material to the class. *5-Hour Energy*, 2017 WL 2559615, at *7 (citing *Cole v. Asurion Corp.*, 267 F.R.D. 322, 328 (C.D. Cal. 2010)); *see also Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010), *as modified on denial of reh'g* (Feb. 8, 2010) ("if [plaintiff] can show that " 'material misrepresentations were made to the class members, at least an inference of reliance [i.e., causation/injury] would arise as to the entire class.' "). However, "[i]f the misrepresentation . . . is not material as to all class members, the issue of reliance would vary from consumer to consumer and the class

should not be certified." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011) ("[W]here individual issues as to materiality predominate, the record will not permit [an inference of reliance as to the entire class].").

In addition to materiality, a plaintiff must show that damages are capable of measurement on a classwide basis to satisfy Rule 23(b)(3). *Townsend*, 303 F. Supp. 3d at 1043. "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case," and "courts must conduct a rigorous analysis to determine whether that is so." *Comcast*, 569 U.S. at 35. "A model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the plaintiff's] theory [of liability]." *Id.* In other words, to satisfy predominance, the model must measure damages resulting from the particular injury alleged by plaintiff. *Comcast*, 569 U.S. at 36.

Based on this standard, the Court now addresses whether Plaintiff has demonstrated by a preponderance Rule 23(b)(3)'s predominance requirement.

### 1. Uniformity of the Misrepresentations

Plaintiff argues that Defendant uniformly mislabeled TPP with material statements that deceived reasonable customers regarding TPP's ingredients, processing, and shelf life. Plaintiff submits that she has presented "classwide proof of the materiality of Defendant's deception (i.e., reasonable consumers were misled by its labeling of TPP), including the product packaging of TPP, reports of Drs. Kessler and Toubia, and a survey performed by Dr. Toubia." ECF No. [321] at 13–14. While Plaintiff alleges in her complaint that TPP products were labeled as "100% pure and natural orange juice," "100% pure," "100% natural," "100% juice" "fresh," "grove to glass," "squeezed from fresh oranges," "straight-from-the-orange," and contained an image of a straw sticking out of an orange ("Orange/Straw Image"), in the Renewed Motion Plaintiff appears to summarize these deceptive phrases to simply "pasteurized orange juice" and "100% pure, natural, and fresh from grove." *Cf.* ECF Nos. [32], Am. Compl., ¶¶ 1, 6, 12, 17–24, 31, 43, 46, 47–49, 90, 147–49, 162, 171 *with* [321] at 20–21. According to Plaintiff, the question of materiality as to these statements is susceptible to classwide proof and does not require individual inquiry. *Id.* at 14–33. Plaintiff does not articulate which representations were "uniformly" found on Costco-sold TPP products during the class period.

In opposition, Defendant attaches the declaration of Ruth Spudic, Tropicana's Director of Packaging, Promotions, Development, and Execution. ECF No. [330-2] ("Spudic Declaration").[4] In the declaration, Spudic avers that TPP products sold at

---

[4] Plaintiff argues that the Court should exclude the Spudic Declaration because it violates Rules 26(a) & 26(e), which delineate the requirements for initial disclosures and supplementing those disclosures during litigation. Plaintiff cites to two cases, neither of which support the "extreme"

10

Costco during the class period included different labels and packaging, including the terms "fresh," "grove," "natural," "pure," "100% pure orange juice," "100% pure Florida orange juice," and "100% orange juice." ECF No. [330-2] ¶¶ 4, 7–9. Spudic also declares that the packaging at Costco varied from other non-wholesale retailers because individual units of TPP would often (but not always) be "bundled" into sets, sometimes in packaging that was transparent and sometimes in packaging completely or partially covered the labeling of the bundled carafes or cartons. *Id.* ¶¶ 5–6. The labeling on the packaging "often varied" from the labeling on the TPP units contained within the bundle. *Id.* ¶ 6. Spudic declares that "[o]ver the time period 2008 to present, Tropicana's sales to Costco involved TPP products that were fortified with Calcium and Vitamin D." *Id.* ¶ 11. Those products contained the disclosure that the fortifying ingredients are "not found in regular orange juice." *Id.* ¶ 12. Finally, Spudic states that the size and placement of the word "pasteurized" varied during the class period.

In response, Plaintiff makes three arguments that the Spudic Declaration does not impact Plaintiff's required preponderance showing. First, Plaintiff argues that Spudic "cannot serve as a declarant because she does not have personal knowledge of the facts" in the declaration. Plaintiff bases this argument on one sentence in the declaration which is prefaced with the words "I understand": "I understand that, in many cases, the additional packaging for these bundles would be part of the sellable unit that Costco members would take to the register and purchase." ECF No. [330-2] ¶ 6. No other sentence in the declaration is preceded by that phrase. *Id.* Looking at the declaration as a whole, even if the Court finds that this sentence is not based on personal knowledge, a single sentence prefaced with the words "I understand" is not sufficient to exclude from consideration the entire three-page declaration as Plaintiff requests. *See Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978).

Plaintiff then argues that the labeling variations highlighted in the Spudic Declaration are immaterial to her CLRA and UCL claims. Specifically, Plaintiff states: "TPP's core messaging was always the same: TPP is 100% pure orange juice with nothing added to it." ECF No. [388] at 9, 14. Plaintiff also argues that the variations of size and placement of the term "pasteurized orange juice" on each TPP product sold at Costco are immaterial variations that do not preclude certification. *Id.*

---

sanction of exclusion of a late-produced document. ECF No. [338] at 8 (citing *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997) and *Kinney v. Trustees of Princeton Univ.*, No. CIV A 04-5252 MLC, 2007 WL 700874, at *7 (D.N.J. Mar. 1, 2007)). Moreover, there is no Rule 26(a) or 26(e) violation since Defendant disclosed Spudic in its initial disclosures and in response to interrogatories nearly six years ago, and Plaintiff deposed Spudic in 2015. *Townsend*, 303 F. Supp. 3d at 1041; *see also* ECF Nos. [330-4] at 18, [334-1] at 16, & [341-1] at 16. And, even if the declaration did violate Rule 26, it may not be excluded absent a showing of "willful deception" or "flagrant disregard" of a court order or discovery obligation. Plaintiff falls woefully short of that finding. *Kinney*, 2007 WL 700874, at *7.

But this is a case about mislabeling, and Plaintiff's pursuit of her CLRA and UCL claims depend on whether the labels at issue were uniformly deceptive or misleading to reasonable consumers. *5-Hour Energy*, 2017 WL 2559615, at *6–7; *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at *7 (N.D. Cal. May 30, 2014). During the class period individual TPP carafes or cartons were labeled "100% pure and natural orange juice," "100% pure," "100% natural," "100% juice" "fresh," "grove to glass," "squeezed from fresh oranges," or "straight-from-the-orange," ECF No. [32] ¶¶ 17–23, 46–49, 147–49, 162, and some contained the Orange/Straw Image. *Id.* ¶ 47 & n.2. Some carafes and cartons were labeled "100% pure and natural orange juice," while others were labeled "100% orange juice."[5] The terms "pure," "natural," "fresh" and "grove to glass" sometimes appeared on individual packaging, and sometimes did not. The Straw/Orange appeared during a portion of the class period, was removed, and then was reintroduced. The record does not reflect on what products and during what time frames these variations appeared.

The individual cartons and carafes could also be "bundled" into sets for purchase at Costco. ECF No. [330-2]. The labeling on the inner cartons or carafes may have been visible to the purchasing consumer and the bundles may have contained their own labeling with any combination of the complained-of phrases or images. *See, e.g.*, ECF Nos. [345], Exhibit F at 40–43 (depicting images dated February 20, 2019 of bundled 59 oz. TPP No Pulp Calcium + Vitamin D containing the phrase "100% pure orange juice with calcium and vitamin D" on the containing carton); [341-1], Exhibit 1 at 4–12 (depicting images dated March 4, 2019 4 "bundled" 59 ounce TPP No Pulp Calcium + Vitamin D labeled "100% pure orange juice with calcium and vitamin D" on the individual carafe; 12 "bundled" 12 ounce TPP No Pulp containing the phrase "100% orange juice" on the individual carafe and the opaque bundling shrink wrap; 4 "bundled" 59 ounce bottles shrink wrapped to partially cover labeling of containing carafes labeled "100% orange juice"). While Plaintiff attaches several images to the Renewed Motion that depict three products available for purchase through Costco's online store on February 20, 2019, and March 4, 2019, the record does not reflect whether these three products with this labeling were ever sold at Costco "brick-and-mortar" stores during the class period. In fact, it appears that TPP was sold nationally in at least nine different formulations with up to nine different sizes during this time. *See* ECF No. [330-4], Ex. 6, at 139–66; *see also id.* at Ex. 9, List of Challenged Products Jan 5, 2009 to Feb. 16, 2014, at 169–81. It is thus unclear which products were sold at Costco during the class period, how TPP was bundled, and what allegedly deceiving labeling may have been visible to a

---

[5] For example, Plaintiff's expert Dr. Toubia relied on an image of a 59-ounce carafe of "Some Pulp Tropicana Pure Premium" which bore the Orange/Straw image and the labels "100% pure Florida orange juice" and appears to contain the illegible word "pasteurized." He did not perform his survey with any other label combinations or using any other product types or sizes. *See* ECF No. [330-3], Toubia Expert Report at 22; *see also* ECF No. [330-7] at 31–32, 36–39, 64–70, 99–101, 146-148, 196, 209, 222–24, 232–34, 243–46.

reasonable consumer.  *Cf.* images submitted by both parties at ECF Nos. [345], Exhibit F at 40–43 ("100% pure orange juice with calcium and vitamin D"); [341-1], Exhibit 1 at 4–12 ("100% orange juice"); [330-3] at 23 ("100% pure Florida orange juice"); [330-4] at 191 ("100% pure Florida orange juice"); ECF No. [32], Am. Compl. ¶¶ 45–48 ("100% pure and natural orange juice"); *see also* [330-8], Lewis Tr., at 26–27, 31 (testifying cartons were labeled "pure and natural").

In addition, at least some of the products sold at Costco were not marketed as "100% pure orange juice with nothing added to it" as Plaintiff argues, but rather as fortified products which contained certain vitamins and minerals or as modified products which contained variations in pulp, antioxidant, or acid levels.  Plaintiff testified that she purchased TPP No Pulp Calcium + Vitamin D or TPP Some Pulp Calcium + Vitamin D in 59 oz. or 89 oz. carafes at Costco specifically because she sought out TPP products which had vitamins and minerals added.  *See* ECF Nos. [330-8] & [330-2].  Some products, including those bought by Lewis, may have been marked with the phrase "not found in regular orange juice."  ECF No. [330-2].

Plaintiff has not demonstrated that a uniform misrepresentation was made to the class sufficient to satisfy predominance as to the "100% pure and natural orange juice," "100% pure," "100% natural," "100% juice" "fresh," "grove to glass," "squeezed from fresh oranges," "straight-from-the-orange," and Orange/Straw labels.  Even with the objective "reasonable consumer" standard under the UCL and CLRA, the Court would be required to perform an individualized inquiry into each product purchased to determine what combinations of labels were visible before determining whether that combination is deceiving to a reasonable consumer.  These variations are the poster child for lack of predominance.  *See Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014) (finding no predominance based on variations in "All Natural" labeling).  The Court finds that the "100% pure and natural orange juice," "100% pure," "100% natural," "100% juice" "fresh," "grove to glass," "squeezed from fresh oranges," "straight-from-the-orange," and Orange/Straw labeling claims fail predominance.[6]

Plaintiff has, however, demonstrated by a preponderance that the "pasteurized" or "pasteurized orange juice" labels uniformly appeared on TPP products during the class period.  Defendant labeled TPP products "pasteurized" or "pasteurized orange juice" and uniformly did not disclose the addition of orange oil flavoring (the so-called "flavor packs") into TPP.  Plaintiff argues that by labeling TPP "pasteurized orange juice" and failing to disclose added natural flavoring, Defendant violated the FDA's standard of identity—essentially a statutory recipe—for "pasteurized orange juice."  *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 471 (9th Cir. 2017) (approving liability theory under UCL and CLRA based on predicate violation of FDA regulations).  Based on the record before the Court, this is sufficient to establish uniformity.  *See Mirakay v. Dakota*

---

[6] Although Lewis cannot represent the New York Class, the same analysis applies, and the New York Class would also fail predominance as to these labeling claims.

*Growers Pasta Co.*, No. 13-CV-4429 JAP, 2014 WL 5358987, at \*\*1, 6 (D.N.J. Oct. 20, 2014) (finding predominance satisfied when "Defendant's labels . . . contain[ed] uniform and nationally disseminated messages [regarding pasta's low glycemic index]"); *Brazil*, 2014 WL 2466559, at \*8 (finding predominance for purchasers of ten products which bore the uniform statement "All Natural Fruit"), *decertifying*, 2014 WL 5794873 (based on damages model's failure to meet predominance); *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 249 (D.N.J. 2008) (finding predominance for uniform fat and calorie misrepresentations on four Dr. Praeger's products). Mere variations in the "size and placement of the 'pasteurized' statement" are immaterial variations that do not defeat predominance. *See* ECF No. [330-2] at ¶ 10. Accordingly, Plaintiff's CLRA and UCL claims based on labeling TPP products "pasteurized" or "pasteurized orange juice" meet the uniformity requirement.

### 2. Materiality

Because only Plaintiff's theory of liability based on Defendant's representation that TPP products were "pasteurized orange juice" survives the Rule 23 thus far, the Court need only examine whether Plaintiff has presented evidence of materiality this alleged mislabeling. Defendant argues that Plaintiff has failed to demonstrate materiality and causation because her experts have submitted methodologically flawed reports and have failed to account for variations in products, consumer preference, pricing, labeling, geographic regions, and wholesalers or retailers.[7] ECF No. [330] at 10–19. Plaintiff counters that the expert reports of Drs. Toubia, Weir, and Kessler fulfill Plaintiff's burden as to materiality. ECF Nos. [321] at 12–16.

As outlined above, the reasonable consumer standard allows Lewis a class-wide inference of reliance and causation if she can demonstrate that the statements in question were material to the class. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015) (analyzing CLRA and UCL requirements) (citation omitted); *see also Steroid*, 181 Cal. App. 4th at 157 ("if [plaintiff] can show that " 'material misrepresentations were made to the class members, at least an inference of reliance [i.e., causation/injury] would arise as to the entire class.' "). A representation is material if a reasonable consumer would attach importance to its existence or nonexistence in determining what action to take in a particular transaction. *Steroid*, 181 Cal. at 157.

However, while the classwide inference of reliance is available to Plaintiff, the record of materiality of the "pasteurized orange juice" label is sparse at best. Lewis testified that she understood that "pasteurized" meant the TPP was "gently processed" and "ha[d] been given a little bit of help to get . . . from the grove to the shelf to [the

---

[7] Plaintiff argues that because Defendant did not move to exclude Plaintiff's expert reports under *Daubert*, it cannot challenge Plaintiff's experts *at all*. ECF No. [321] at 18–20. This is simply not the law. A party may make arguments as to the weight of the expert(s) conclusions to "satisf[y]" or "persuade[]" the Court that the requirements of class certification are met or that the party seeking certification has failed to meet its burden. *Hydrogen*, 552 F.3d at 322–23.

consumers]." ECF No. [330-8] at 23-25. She testified that she did not know whether other products found in the grocery store such as milk were generally pasteurized, but she further stated that she knew TPP "has to go through that pasteurization process to get to the shelf." *Id.* at 24-25, 27. Lewis did not testify that the "pasteurized" label influenced her decision to purchase TPP or mislead her regarding what ingredients were added to TPP or how it was processed.

Nor does the record reflect any evidence that the "pasteurized" label misled a reasonable consumer. To demonstrate materiality, Plaintiff points to the survey conducted by Dr. Toubia which collected data based on the following "Assignment":

> I was asked by counsel for Plaintiff[] to design and conduct a survey to: (i) determine consumers' perceptions of whether Tropicana Pure Premium orange juice is 100% pure orange juice, whether it contains added natural flavoring made by flavor and fragrance companies, and whether it includes juice that has been place in storage for more than one month and up to one year prior to being available in stores; (ii) estimate the impact on consumer' preferences of instructing them to assume that Tropicana Pure Premium Orange Juice contains added natural flavoring made by flavor companies, and that it includes juice that has been place in storage for more than one month and up to one year.

ECF No. [330-3] at 4. Dr. Toubia surveyed a "representative online panel of the US population" which consisted of 324 individuals using Qualtrics, a survey and market research firm. *Id.* at 5, 13. Dr. Toubia presented respondents with a photo of a 59 oz. carafe of TTP Some Pulp with the Orange/Straw image and the phrase "100% pure Florida orange juice."[8] He then asked the following three questions: "Do you think that this product is 100% orange juice?" "Do you think this product contains added natural flavoring made by flavor and fragrance companies?" and "Do you think this product includes juice that has been place in storage for more than one month and up to one year prior to being available in stores?" *Id.* at 8, 23-24

After these questions, half of participants were instructed to make two simultaneous assumptions: (1) "assume that Tropicana Pure Premium Orange Juice contains added natural flavoring made by flavor and fragrant companies" and (2) "that it includes juice that has been placed in storage for more than one month and up to one year." *Id.* at 23. Dr. Toubia then conducted a "willingness-to-pay" analysis. *Id.* at 7, 9. He concluded that those customers made these two assumptions decreased the amount

---

[8] It appears that the word "pasteurized" may have also been present on the image. However, the "screenshot" of the survey included in the record before the Court is reproduced with insufficient resolution to read the word "pasteurized." ECF No. [330-3] at 23. It is unclear whether the word "pasteurized" was legible to survey participants.

15

they were willing to pay for a 59 oz. carafe of Tropicana Pure Premium Some Pulp by $0.20 or 6.99% of the purchase prices used in the survey. Plaintiff's second damages expert Mr. Weir then used a regression model to determine the total price premium damages for the California Class by multiplying the gross sales in the state of California during the class period by the 6.99%.

Plaintiff's damages expert, Dr. Toubia, was not instructed to, and did not, perform any analysis specific to the word "pasteurized" or "pasteurized orange juice" label. In fact, Dr. Toubia testified that his survey was not designed to test the impact of *any* label found on any TPP products, including the Orange/Straw Image or the phrase "100 percent pure Florida orange juice" found on the 59 oz. carafe of TPP Some Pulp he tested.[9] ECF No. [330-7] at 148–49. Rather, Dr. Toubia only sought to determine consumer perceptions regarding the purity, flavorings, and shelf life of 59 oz carafe of TPP Some Pulp, and whether consumers would pay less if they knew TPP had added flavoring and was placed in storage for up to a year. ECF No. [330-3] at 4; *see also* ECF No. [330-7] at 72–77, 146–47. Plaintiffs other damages expert, Dr. Weir, extrapolates classwide damages from Dr. Toubia's data, but again, since Dr. Toubia did not assess the "pasteurized" label, Dr. Weir's report cannot demonstrate materiality as to that label either. ECF No. [330-9].

The only evidence in the record as to materiality comes from Dr. Kessler, a former FDA Commissioner. Kessler opines that "use of an ingredient (essence) that is not part of the standard of identity for pasteurized orange juice in a product that is labeled 'pasteurized orange juice' makes the product not conform to the standard of identity for pasteurized orange juice and is misleading. During the time that I was FDA Commissioner, such use of an ingredient that is not a component of the standard of identity would make the product misbranded under the FDCA." ECF No. [153], Exhibit 51 ¶¶ 95–96 (under seal). However, beyond this conclusion that the "pasteurized" label is "mislead[s]" and "misbrand[s]" TPP under the FDCA, Dr. Kessler does not opine on whether reasonable consumers would have considered the "pasteurized" label at all or what meaning, if any, a reasonable consumer would have attached to it. ECF No. [153], Exhibit 51 (under seal).

This evidence, without more, is insufficient to carry Plaintiff's burden as to materiality. *ConAgra*, 302 F.R.D. at 576–77 (finding no predominance where plaintiff failed to demonstrate materiality on CLRA and UCL claims based on "100% natural" label); *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) (same based on "all natural" label); *5-Hour Energy*, 2017 WL 2559615, at *7 (same based on "five hour energy"); *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at

---

[9] Again, it is unclear whether the survey participants viewed an image that legibly bore the word "pasteurized." ECF No. [330-3] at 23. Although Dr. Toubia confirmed in his deposition that he did not test the Orange/Straw Image or the phrase "100 percent pure Florida orange juice," he was not asked whether he tested the "pasteurized" label. ECF No. [330-7] at 148–49.

*14 (N.D. Cal. June 13, 2014) (same based on "100% natural" label).[10] There is scant evidence in the record regarding reasonable customers' understanding of the "pasteurized" label and whether it was likely to deceive a reasonable consumer. Even Lewis during her deposition had difficulty articulating what she understood "pasteurized" to mean. "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*, 655 F.3d at 1022–23 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)). Because Plaintiff has not shown materiality as to the "pasteurized" or "pasteurized orange juice" labels, Plaintiff has not demonstrated that common issues predominate over individual ones as to those labels.[11]

### 3. Class-Wide Damages

Although the Court has found that Plaintiff's claims fail predominance, the Court now examines Plaintiff's damages model. "[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case," and "courts must conduct a rigorous analysis to determine whether that is so." *Comcast*, 569 U.S. at 35. "A model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 261 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (quoting *Comcast*, 569 U.S. at 35). To fit her theory of liability, Lewis must show she has "suffered some harm traceable" to labeling TPP products sold in Costco in California as "pasteurized orange juice." *Harnish*, 833 F.3d at 305; *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *16 (C.D. Cal. July 1, 2013) (finding plaintiff's damages model did not demonstrate predominance as to her UCL and CLRA claims). While the Court is cognizant that Plaintiff need not prove damages at the class certification stage, what is required is some cognizable theory linking the complained-of conduct and her alleged damages. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd and remanded on other grounds*, 139 S. Ct. 710 (2019).

Defendant argues that Plaintiff has failed to demonstrate damages because her experts have submitted methodologically flawed reports and have failed to account for

---

[10] Plaintiff's reliance on *Amgen*, 568 U.S. 455 (2013), is inapposite. The Court in *Amgen* found in a securities class action where an element of the claim required a showing of materiality that a plaintiff need not *prove* materiality at the class certification stage. *Id.* at 459–60. Here, "materiality" is not an element of Plaintiff's claims, but a showing under Plaintiff's CLRA and UCL claims at class certification to demonstrate that injury and causation are subject to classwide proofs.

[11] As with the previous predominance analysis, assuming Lewis had been a proper representative of the New York Class, this conclusion also applies to the "pasteurized" and "pasteurized orange juice" labeling claims as to that class.

variations in products, consumer preference, pricing, labeling, geographic regions, and wholesaler practices.[12] Defendant further states that Plaintiff's damages model does not fit her theory of liability because it does not account for the new classes she seeks to certify. ECF No. [330]. Plaintiff counters that the expert reports of Drs. Toubia, Weir, and Kessler fit her theory of liability and new class definition. ECF No. [338].

As noted above, Dr. Toubia did not perform any analysis specific to the classes Plaintiff now seeks to certify: customers purchasing TPP at Costco in California who were allegedly mislead by TPP's labeling. He did not analyze the varieties of TPP sold and/or bundled at Costco during the class period. ECF No. [330-3] at 4; *see also* ECF No. [330-7] at 72–77, 146–47. Nor did he analyze the variety of phrases and images that appeared on those products. ECF No. [330-7] at 148–49. For example, Lewis averred that she purchased 59 oz and 89 oz TPP No Pulp Calcium + Vitamin D and TPP Some Pulp Calcium + Vitamin D, which were labeled "pure and natural" and with the phrase "not found in regular orange juice," ECF No. [330-8], Lewis Tr., at 26–27, but no surveys were conducted on these products. ECF No. [330-7]. At his deposition, Dr. Toubia noted that his survey only tested 59 oz. TPP Some Pulp and was not designed to test the varieties of TPP, the various labels found on Costco-sold TPP during the class period, the market price of TPP, or consumers general understanding of how orange juice is processed or stored. ECF No. [330-3] at 4; ECF No. [330-7] at 72–77, 97-107, 137, 146–47, 217–25. In coming to his willingness-to-pay conclusion where he offered participants either 59 oz. bottle of TPP or a cash equivalent, Dr. Toubia stated that he did have any data regarding which of the nine varieties of TPP was contemplated by the survey takers or whether consumers might be willing to pay more or less for different varieties of TPP. *Id.* at 234-37. He further testified that designing a survey to test other TPP products or the labels found on those products could produce willingness-to-pay results that were higher, lower, the same from the conclusions in the report. *Id.* at 97-107, 137, 146–47, 217–25, 234–37.

While the Court does not doubt Dr. Toubia's credentials or ability to design a survey based on the "Assignment" articulated in his report, the Assignment—and thus its conclusions—do not match Plaintiff's theory of liability related to Costco-sold and bundled TPP products and the allegedly misleading labels they contained. *Comcast*, 569 U.S. at 35. Thus, the classwide damages analysis of Mr. Weir, which bases its estimate on Dr. Toubia's $0.20 willingness-to-pay conclusion, similarly cannot demonstrate damages consistent with Plaintiff's liability theory. ECF No. [330-9]; *see also* ECF No. [330] at 19–26.

---

[12] Plaintiff argues that because Defendant did not move to exclude Plaintiff's expert reports under *Daubert*, it cannot challenge Plaintiff's experts *at all*. ECF No. [321] at 18–20. This is simply not the law. A party may make arguments as to the weight of the expert(s) conclusions to "satisf[y]" or "persuade[]" the Court that the requirements of class certification are met or that the party seeking certification has failed to meet its burden. *Hydrogen*, 552 F.3d at 322–23.

### b. Superiority

To satisfy superiority, a plaintiff must demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) (citation omitted).

Tropicana does not challenge superiority, and the Court finds Plaintiff has satisfied this requirement. This case has thousands of potential class members who likely have little interest in controlling their individual claims. *Warfarin*, 391 F.3d at 534. Litigating these claims separately would further unduly burden the judicial system. *Id.* Fairness and efficiency weigh in favor of a finding that a class action is the superior method of adjudicating these claims. *Danvers*, 543 F.3d at 149.

### D. Ascertainability

Finally, the Court examines the additional requirement of ascertainability. "A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). To do so, a plaintiff must "show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (quotation and citation omitted). Importantly, the requirement "does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified.'" *Id.* (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013) (emphasis in original)).

As to the first prong, Defendant does not dispute that the class is objectively defined, and the Court finds that Plaintiff has defined the class based on objective criteria. Defendant argues instead that Plaintiff has failed to demonstrate that there is a reliable and administratively feasible way to determine whether putative class members fall into the class definition. ECF No. [330] at 22–29.

Plaintiff submits that the new proposed classes satisfy ascertainability because they are limited to Costco customers, and Costco has represented that it maintains purchase data linked to customer membership numbers. ECF No. [321] at 33–36. Costco has represented that "[i]f a class member identified him or herself as a Costco member, including his/her membership number and date ranges for purchase, Costco generally has the ability to retrieve a member's purchase history." ECF No. [330-11] at 3. This data would include "identification of the item(s) purchased by the Costco item number, the warehouse location, the date and membership number used to make the purchase. The UPC code is not consistently captured in the [] data. Costco has some [] transaction data dating back to its Fiscal Year 2000." *Id.*

For the "pasteurized" or "pasteurized orange juice," claims, Plaintiff has demonstrated by a preponderance that each TPP product sold at Costco contained a "pasteurized" statement. *See* ECF No. [330-2]. Thus, to ascertain the class, Plaintiff need only secure data that demonstrates putative class members' past purchases at Costco, and the Court need not resort to individualized fact-finding to determine membership in the class. *Byrd*, 784 F.3d at 164. Costco has represented that it maintains such data. ECF No. [330-11]. The Court finds this is sufficient to demonstrate ascertainability as to the "pasteurized" or "pasteurized orange juice" claims.

However, the claims based on the phrases "100% pure and natural orange juice," "100% pure," "100% natural," "100% juice" "fresh," "grove to glass," "squeezed from fresh oranges," "straight-from-the-orange," and the Orange/Straw Image cannot satisfy ascertainability. Although Costco represented it can look up TPP purchases using a consumer membership numbers, there is no evidence in the record that Costco would be able to determine what combinations of these representations, if any, were visible to the reasonable TPP-purchasing consumer. On this record there is no administratively feasible way to determine membership of the class based on these labels. Thus, unlike the "pasteurized" claims, the Court finds that these claims cannot satisfy ascertainability.

## V. CONCLUSION

Plaintiff's Renewed Motion for Class Certification must be denied. First, Plaintiff is not an adequate representative of the New York Class. Second, Plaintiff's claims based on the phrases "100% pure and natural orange juice," "100% pure," "100% natural," "100% juice" "fresh," "grove to glass," "squeezed from fresh oranges," "straight-from-the-orange," and the Orange/Straw Image do not satisfy predominance or ascertainability. Third, while the claims based on the "pasteurized" or "pasteurized orange juice" labels satisfy ascertainability and predominance as to uniformity, those claims fail predominance as to materiality. Fourth, Plaintiff's damages model does not match her theory of liability as to any of the challenged labels. Accordingly, the new proposed classes cannot be certified, and Plaintiff's Motion for Certification of Modified Class, Appointment of Class Representatives, and Appointment of Class Counsel, ECF No. [320], is **DENIED.** An appropriate order follows.

**Dated: June 18, 2019**

                                                                   */s/ William J. Martini*
                                                            **WILLIAM J. MARTINI, U.S.D.J.**